**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MALIBU MEDIA, LLC,**<br>                    **Plaintiff,**<br><br>           **v.**<br><br>**JOHN DOES 1, 6, 13, 14, and 16**<br>              **Defendants.** | **CIVIL ACTION NO. 12-2078** |

Baylson, J.                                                                 January 3, 2013

<u>**MEMORANDUM RE: MOTIONS TO DISMISS**</u>

The Amended Complaints in these consolidated cases allege Copyright Act violations by Defendants for downloading pornographic movies produced by Plaintiff, Malibu Media, Inc.  Defendant John Doe 6 in civil action 12-2084 and Defendants John Doe 1, 13 and 14 in civil action 12-2088 collectively move to dismiss the Amended Complaints under Fed. R. Civ. P. 12(b)(6), Fed. R. Civ. P. 12(b)(1), and Fed. R. Civ. P. 12(b)(7).[1]  For the reasons set forth below, the motions were DENIED by order on December 26th, 2012. (ECF 58 in 12-2084).

**I.        Factual and Procedural History**

Malibu filed initial Complaints against three groups of fourteen to twenty-two John Doe Defendants on April 19, 2012. It designated the Defendants as "John Does" because it was not in possession of their identities – Malibu knew only the internet protocol (IP) addresses that were associated with illegal downloads of its copyrighted

---

[1] Defendant John Doe 16 in civil action 12-2078 filed an Answer and Counterclaims to Malibu's Amended Complaint (ECF 34 in 12-2078), rather than a motion to dismiss. Malibu filed a Motion to Dismiss Defendant's Counterclaims (ECF 42 in 12-2078) and a Motion to Strike or Summarily Dismiss Defendant's Affirmative Defenses (ECF 43 in 12-2078).  Doe 16 filed corresponding Motions in Opposition. (ECF 44 & 45 in 12-2078).  This Memorandum of Law and the related Order of December 26, 2012, do not resolve Malibu's motions regarding Doe 16's counterclaims and affirmative defenses.

videos through BitTorrent websites. Shortly after filing the Complaints, Malibu filed subpoenas under Fed. R. Civ. P. 45 on the Internet Service Providers (ISPs) that had assigned the IP addresses to the Defendants. Five John Does – Doe 16 from civil action 12-2078, Doe 6 from civil action 12-2084, and Does 1, 13 and 14 from civil action 12-2088 – filed motions to dismiss and/or sever the complaint, quash the subpoenas, and for a protective order. The Court held a hearing on September 18, 2012.

On October 3, 2012, the Court issued an Order resolving Defendants' motions as follows. First, the Court denied the motions to squash the third-party subpoenas.  Second, it denied Defendants' motions for severance without prejudice.  The Court held that because the Complaints alleged the John Doe Defendants had infringed Plaintiff's copyrights through participating in "swarms" of computer-users who downloaded and shared pieces of motion pictures with each other, permissive joinder under Fed. R. Civ. P. 20(a) was proper. Third, the Court granted Defendants' request for a protective order, directing that their anonymity be preserved in all matters filed of record. Finally, the Court ordered there be a "bellwether trial," in which Malibu would proceed against the five moving John Does. All proceedings against the remaining John Does were stayed until further order. Additionally, Malibu was ordered to effectuate service on the five John Doe Defendants within ten days, or to file a memorandum advising the Court as to why service had not been made. (Order for Expedited Proceedings Leading to Bellwether Trial, ECF 21 & 22 in 12-2078).

Plaintiff moved for an extension of time within which to effectuate service. Defendants opposed. On October 17, 2012, the Court issued an Order granting Plaintiff until October 26, 2012 to effectuate service on each Defendant, but stating that no further

extensions would be forthcoming. (Order, ECF 28 in 12-2078). Malibu filed notices of service on the Defendants on October 26, 2012.

On November 2, 2012, Plaintiff filed Amended Complaints in each civil action. (Amended Complaint, ECF 32 in 12-2078; ECF 39 in 12-2084; ECF 27 in 12-2088). The Amended Complaints are identical to one another except for the identities of the parties and the specific allegations of copyright infringement as to each Defendant.[2] As was the case in the initial Complaints, the Amended Complaints accuse Defendants of using BitTorrent, "one of the most common peer-to-peer file sharing protocols . . . for distributing large amounts of data," to download Plaintiff's copyrighted works. (Amended Complaint ¶¶ 9-13, ECF 32 in 12-2078).   Specifically, the Amended Complaints aver Defendants participated in "BitTorrent Swarms." (Id. ¶¶ 24-29). A swarm is initiated when a computer-user known as an "initial seeder" obtains a target computer file, divides it into pieces, gives a unique identifier known as a "hash" to each piece, and uploads the broken-down file onto a torrent website.   Other computer-users then access the website, upload the pieces of the file on their computers, and share these pieces with each other. "In this way, all of the peers and seeders are working together in what is called a 'swarm.'" (Id. ¶ 27). Once a peer has downloaded every piece of the original file, a software program on his computer will reassemble them into a video that can be viewed. (Id. ¶ 28).

---

[2] In civil action 12-2078, Malibu is the sole Plaintiff; John Doe 16 is the sole Defendant; and over thirty illegal download transactions are alleged, involving eight copyrighted works.  In civil action 12-2084, Malibu and Patrick Collins, Inc. are the Plaintiffs; John Doe 6 is the sole Defendant; and eighteen illegal download transactions are alleged, involving six copyrighted works.  In civil action 12-2088, Malibu is the sole Plaintiff; John Does 1, 13 and 14 are the Defendants; and each Defendant is accused of engaging in dozens of illegal download transactions involving multiple copyrighted works.

The Amended Complaints allege each John Doe Defendant is the owner of an IP address that was used to connect to a torrent website and illegally download "a full copy or a portion thereof, of a digital media file" containing a copyrighted work produced by Malibu Media. (Id. ¶ 34).  Accordingly, each Doe is charged with one Count of Direct Infringement under the Copyrighted Act, 17 U.S.C. § 106 et seq. (Id. ¶¶ 39-43). As to relief, Plaintiff requests the Court enjoin each Defendant "and all other persons who are in active concert or participation with Defendant from continuing to infringe Plaintiff's copyrighted Works"; order each Defendant "to permanently remove the torrent file relating to Plaintiffs' copyrighted Works from each of the computers under each such Defendant's possession"; and award Plaintiff statutory damages in the amount of $150,000 per infringed work. (Id. ¶ 44).[3]

---

[3] Both Plaintiff and Defendants have changed their legal theories to some degree since the filing and adjudicating of the initial Complaints.

    As is explained further in Section III.C infra, Plaintiff originally sued groups of fourteen to twenty-two John Doe Defendants in each civil action, alleging all Defendants in each case had been members of a swarm that downloaded one of its copyrighted videos. For instance, in civil action 12-2088, Plaintiff sued twenty-two John Doe Defendants for participating in a swarm that downloaded "Tiffany – Sex with a Supermodel." (Complaint ¶¶ 11, 39-42 & Ex. A, ECF 1 in 12-2088). In civil action 12-2078, Plaintiff sued sixteen John Doe Defendants for participating in a swarm that downloaded "Anneli Leila Menage a Trois." (Complaint, ECF 1 in 12-2078).  In civil action 12-2084, Plaintiff sued fourteen John Does for participating in a swarm that downloaded "Tiffany Teenagers in Love." (Complaint, ECF 1 in 12-2084). Malibu also included a "Joinder" paragraph in each original Complaint, contending joinder of the Defendants was proper because "(a) each Defendant is jointly and severally liable for the infringing activities of each of the other Defendants, and (b) the infringement complained of herein by each of the Defendants was part of a series of transactions, involving the exact same torrent file containing of Plaintiff's copyrighted Works, and was accomplished by the Defendants acting in concert with each other, and (c) there are common questions of law and fact . . ." (Complaint ¶ 10, ECF 1 in 12-2078).

    The Amended Complaints bear important differences. They name only one or three Defendants in each case, and they accuse each Defendant of being a member of multiple swarms and of downloading multiple copyrighted works. Furthermore, the "Joinder" paragraph has been dropped.  Plaintiff appears to have abandoned its theory of joint and several liability and is proceeding against each Defendant as a singular bad actor, liable for direct copyright infringement.

    Meanwhile, Defendants – at least Defendant John Doe 13 in civil action 12-2088 – also have changed their legal theories. Doe 13 originally joined a Motion to Dismiss the initial Complaint, arguing joinder of the twenty-two Defendants accused of downloading "Tiffany-Sex With a Supermodel" was improper. (Motion to Dismiss Filed by John Does 1-22, at 2-8, ECF 9 in 12-2088). Doe 13 now concedes joinder of those Defendants had been appropriate, given that they were all alleged to be members of the same swarm. (John Doe 13's Motion to Dismiss at 17 n.23 & 19, ECF 55 in 12-2088) ("Doe 13's motion to sever [the initial Complaint] was prepared by his previous counsel. Current counsel believe that the motion

## II.     Standard of Review

Defendants move to dismiss the Amended Complaints in these consolidated actions under Fed. R. Civ. P. 12(b)(6), 12(b)(1) and 12(b)(7).   These motions demand different standards of review.

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual allegations that "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A complaint will satisfy this threshold test for facial plausibility if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. While all factual allegations must be accepted as true, Erickson v. Pardus, 551 U.S. 89, 94 (2007), this requirement does not apply to legal conclusions, which may be disregarded, Iqbal, 556 U.S. at 678.

When presented with a motion to dismiss under Rule 12(b)(6), a district court should conduct a two part analysis.  First, it should separate the factual and legal elements of a claim and accept all of the well-pleaded facts as true. Second, it should determine whether the factual allegations are sufficient to show that the plaintiff has a "plausible claim for relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

Motions to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction are reviewed through a different lens. Such motions will present either a

___

was inapt, and the court's decision that joinder is proper is absolutely correct."). Doe 13 argues that because the Amended Complaints name selective Defendants from swarms and do not seek to join all of the members of any one swarm, the Amended Complaints run afoul of Rule 19.

facial or factual attack. A facial attack "concerns an alleged pleading deficiency, whereas a factual attack concerns the actual failure of a plaintiff's claim to comport with the jurisdictional prerequisites." CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008). Here, Defendants' 12(b)(1) motion mounts a factual attack, given that Defendants contend Plaintiff lacks standing even under its own factual averments.

When a party moves to dismiss under Rule 12(b)(1) through a factual attack, three consequences follow. First, the plaintiff bears the burden of proof of subject matter jurisdiction. Second, there is no a presumption of truthfulness. Third, the district court is authorized to make factual findings and to review documents outside of the pleadings in doing such. Id. at 145; Gould Electr. Inc. v. United States, 220 F.3d 169, 176-77 (3d Cir. 2000). "If the defendant contests any allegations in the pleadings, by presenting evidence, the court must permit the plaintiff to respond with evidence supporting jurisdiction. The court may then determine jurisdiction by weighing the evidence presented by the parties. However, if there is a dispute of a material fact, the court must conduct a plenary trial on the contested facts prior to making a jurisdictional determination." Gould Electr., 220 F.3d at 177 (internal citations omitted).

Finally, motions to dismiss under Fed. R. Civ. P. 12(b)(7) for "failure to join a party under Rule 19" require the district court to apply the standards set forth by Fed. R. Civ. P. R. 19(a) and (b). See Gen. Refractories Co v. First State Ins. Co., 500 F.3d 306, 312 (3d Cir. 2007). Rule 19(a), in turn, provides that certain parties are necessary to a lawsuit and "must be joined":

> A person who is subject to service of process and whose joinder will not deprive the court of subject matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject

> of the action and is so situated that disposing of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to substantial risk of incurring double, multiple or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1)(A)&(B).  If a party "must be joined" under Rule 19(a) but joinder is not feasible for one reason or another, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). There are a host of factors a court considers in making this determination, such as whether judgment rendered in the necessary party's absence would be adequate. <u>See</u> Fed. R. Civ. P. 19(b). If the court determines a party is indispensible under Rule 19(b), it should dismiss the lawsuit. <u>Gen. Refractories Co.</u>, 500 F.3d at 312 ("If they should be joined, but their joinder is not feasible . . . we must next determine whether the absent parties are 'indispensible' under Rule 19(b). Should we answer this question in the affirmative, the action cannot go forward.").

## III.    Discussion

### A.  Motion to Dismiss Under Rule 12(b)(6) for Failure to State a Claim

Does 1 and 14 move to dismiss under Fed. R. Civ. P. 12(b)(6), claiming that "[b]y failing to identify and serve the entire swarm, Plaintiff has [] failed to state a claim under Fed. R. Civ. 12(b)(6)."  (<u>See</u> John Doe 1's Motion to Dismiss at 7, ECF 57 in 12-2088). They argue that because the Amended Complaints continue to aver that Defendants used BitTorrent to work together in swarms and to download Plaintiff's works, Malibu was required to join the entirety of each swarm involved. Otherwise, the Doe Defendants would be accused of "shar[ing] movies with just [themselves]." (<u>Id.</u>).  Neither Doe 1 nor 14 attaches new factual materials to their motions to dismiss.

Accepting all factual allegations in the Amended Complaints as true, Iqbal, 556 at 678, the Court concludes Plaintiff has stated a claim upon which relief can be granted under the Copyright Act. In the Amended Complaints, Malibu accuses five separate John Doe Defendants of direct copyright infringement. It avers that it owns copyrights to erotic videos; that each Defendant downloaded its copyrighted videos without authorization; and that the manner in which Defendants operated was through using BitTorrent, a technology that enables "swarms" of computer-users to download pieces of digital media and share them with each other. It attaches exhibits to each Amended Complaint showing the dates and times Defendants allegedly downloaded its copyrighted works, as well as the hash tags associated with each unauthorized download. These averments state a plausible claim of direct infringement under the Copyright Act. E.g. Sony BMG Music Entm't v. Tenenbaum, 660 F.3d 487, 497-99 (1st Cir. 2011) (holding defendant was liable for infringement under the Copyright Act when he used peer-to-peer file-sharing to obtain and distribute recordings); UMG Recordings Inc. v. Alburger, 2009 WL3152153, at *3 (E.D. Pa. Sept. 29, 2009) ("District courts in the Third Circuit (and elsewhere) agree . . . that downloading music from the internet, without paying for it or acquiring any rights to it, is a direct violation of the Copyright Act."). Malibu did not need to identify and join each member of the swarms involved in Defendants' downloads to make its claims "plausible" under Iqbal, because the facts pled by Malibu, if true, would show each Defendant was liable of direct copyright infringement.

### B. Motion to Dismiss under Rule 12(b)(1) for Lack of Standing

Does 6 and 13 argue for dismissal under Fed. R. Civ. P. 12(b)(1) because they contend Malibu lacks standing to bring several of the infringement claims in the

Amended Complaints. They assert the Assignment Agreement between Brigham Field, the initial creator and copyright holder of some of the erotic videos downloaded by Defendants, and Malibu Media, LLC, the assignee, failed to transfer exclusive copyright ownership to Malibu and failed to mention the right to sue for past infringement.  As a result, Defendants claim, Malibu has no standing to sue for infringement of works that were originally created by Brigham Field.

### i.  Relevant Factual History

Brigham Field was a photographer living in California with his wife, Colette Field, who worked as a real estate agent. When the real estate market "went south," the Fields decided to start an unincorporated partnership that would produce and circulate erotic content. They created the internet website, X-art.com. In 2010 and early 2011, Brigham Field authored and produced erotic videos, for which he obtained copyrights.[4] (Plaintiff's Memorandum in Opposition to John Doe 13's Motion to Dismiss, Ex. A at 1-3, ECF 65 in 12-2088).

On February 8, 2011, the Fields founded Malibu Media, LLC. (John Doe 6's Motion to Dismiss, Ex. A, ECF 43 in 12-2084). Brigham Field agreed to transfer all of his copyrights to the company. In an Affidavit, Colette Field attests that her and her husband's intentions were always for Malibu Media to acquire "every single right associated with" Brigham Field's copyrights. (Plaintiff's Memorandum in Opposition to John Doe 13's Motion to Dismiss, Ex. A at 2, ECF 65 in 12-2088). On September 13,

---

[4] No party has submitted evidence showing that Brigham Field obtained copyrights from the federal Copyright Office. In his Motion to Dismiss, Doe 6 alleges Brigham Field did not register his works and that a search of Copyright Office records reveals that Brigham Field is not the registered owner of any copyrights. (John Doe 6's Motion to Dismiss at 4 & n.2, ECF 44 in 12-2084). However, the Copyright Act creates protection for "original works of authorship," 17 U.S.C. § 102(a), and such protection begins on creation. For that reason, "registration is not a condition for copyright protection." 17 U.S.C. § 408(a).

2012, the Fields and Malibu filed a written Assignment memorializing their earlier oral agreement. It stated:

> This Copyright Assignment is entered into by and between Brigham Field ("Assignor") and Malibu Media, LLC ("Assignee"). Now, therefore, for good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the Assignor hereby sells, assigns, transfers, conveys, and delivers to the Assignee all of the Assignor's right, title and interest in and to the copyrights for the motion pictures listed below (the "Works") including all registrations and applications covering the Works.

(John Doe 13's Motion to Dismiss, Ex. E, ECF 55 in 12-2088).

At some time in 2011 and later in 2012, Malibu Media filed basic copyright registrations for its videos with the federal Copyright Office. (Plaintiff's Memorandum in Opposition to John Doe 13's Motion to Dismiss, Ex. D, ECF 65 in 12-2088). In 2012, when Malibu was enmeshed in litigation in the Eastern District of Michigan, a dispute arose regarding the validity of its copyrights. Malibu Media, LLC v. John Does 1-13, 12-CV-12586 (E.D. Mich. 2012). This prompted Malibu to file a "Form CA" with the Copyright Office – a form to "Correct and Amplify" registrations of a copyright – on September 13, 2012. In the Form CA filing, Malibu stated that for fourteen of its copyrighted works, it had made an error when filing the basic registration documents. Malibu had indicated that each of the videos was a "work[] made for hire" for Malibu Media, LLC, when in fact, they were works authored by Brigham Field and assigned to Malibu. (Plaintiff's Memorandum in Opposition to John Doe 13's Motion to Dismiss, Ex. D, ECF 65 in 12-2088).

On December 5, 2012, as litigation in this case was unfolding, the Fields and Malibu signed a Clarification of Assignment Agreement. It states:

> I, Brigham Field . . . affirm that on February 8, 2011, I did sell, assign, transfer, convey, and deliver all of my right, title and interest in and to the

> copyrights for the motion pictures listed below exclusively to Malibu Media, LLC . . . . This assignment includes . . . each and every one of the exclusive rights set forth in 17 U.S.C. § 106 . . . and all other rights I did then have, including . . . the right to sue for past, present and future infringement.

(Plaintiff's Memorandum in Opposition to John Doe 13's Motion to Dismiss, Ex. B, ECF 65 in 12-2088).

### ii.  Defendants' Contentions

Defendants argue that Malibu lacks standing to bring several of the infringement claims in the Amended Complaints because the works covered by those claims were initially registered to Brigham Field, and the Assignment never transferred exclusive ownership in the copyrights to Malibu.  The Copyright Act enumerates six bundles of rights that a copyright holder possesses, such as the right to reproduce or to prepare derivative works. 17 U.S.C. § 106. To have standing to bring an infringement claim under Section 501(b) of the Act, a plaintiff must own at least one bundle of rights set forth in Section 106, exclusively. <u>See</u> 17 U.S.C. § 501(b) (stating "[t]he legal or beneficial owner of *an exclusive right* under a copyright is entitled . . .  to institute an action for any infringement of that particular right committed while he or she is the owner of it") (emphasis added); <u>see HyperQuest, Inc. v. N'Site Solutions, Inc</u>, 632 F.3d 377, 382 (7th Cir. 2011) ("HyperQuest's right to recover for N'Site's alleged infringement therefore hinges on its ability to prove that it was an exclusive licensee of at least one of the divisible rights recognized by the Act."); <u>Sybersound Records, Inc. v. UAV Corp</u>., 517 F.3d 1137, 1144 (9th Cir. 2008) ("Under copyright law, only copyright owners and exclusive licensees of copyright may enforce a copyright or a license.").

Defendants claim that because the Assignment of September 13, 2012 did not use the word "exclusive" to describe any of the rights being transferred, Malibu lacks

standing under Section 501(b) to sue for infringements of works originally created by and registered to Brigham Field.  The Assignment only stated: "[T]he Assignor hereby sells, assigns, transfers, conveys, and delivers to the Assignee all of Assignor's right, title, and interest in and to the copyrights for the motion pictures listed below (the "Works") including all registrations and applications covering the Works."  (John Doe 13's Motion to Dismiss, Ex. E, ECF 55 in 12-2088). According to Does 6 and 13, the omission of the word "exclusive" is fatal to Malibu's standing.

Furthermore, Does 6 and 13 contend, the Assignment was deficient because it never transferred to Malibu the right to sue for past infringements. Courts have held the right to sue for past infringements must be expressly set forth in an assignment in order to be transferred. See ABKCO Music Inc. v. Harrisongs Music, Ltd., 944 F.2d 971, 980 (2d Cir. 1991) ("[A] copyright owner can assign its copyright but, if the accrued causes of action are not expressly included in the assignment, the assignee will not be able to prosecute them."); Wellness Publ'g v. Barefoot, 2008 WL 108889, at *8 (D.N.J. Jan. 8, 2008) ("[A]n assignor need not expressly reserve its right in a legal action that accrued during its ownership as Wellness did. An assignor retains such a right unless it is expressly assigned to the assignee along with the copyright."). Defendants argue Malibu needed to have been granted the right to sue for past infringements because its Amended Complaints allege infringements that occurred at times when Malibu did not yet hold the copyrights to Brigham Field's works. That is, Defendants claim the written Assignment was executed on September 13, 2012 and the oral assignment was executed on or after August 25, 2012, given that it refers to a video produced on that date. (See John Doe 13's Motion to Dismiss, Ex. E, ECF 55 in 12-2088). This means the transfer of ownership of

the Brigham Field copyrights could not have occurred before August 25, 2012. Given that the Amended Complaints aver illegal downloads of original Brigham Field videos prior to August 25, 2012, and given that the Assignment lacked explicit language on the right to sue for past infringements, Defendants contend at least some of Malibu's claims must be dismissed for lack of standing.

### iii.  Plaintiff's Contentions

Malibu refutes Defendants' objections to its standing for two reasons.

First, Malibu claims that Defendants *themselves* lack standing to contest the validity of the Assignment between Brigham Field and Malibu Media.  Under Section 204(a) of the Copyright Act, assignments of copyrights must be put in writing. 17 U.S.C. § 204(a).  But when the parties to an assignment have no dispute over the transfer, third-party infringers lack standing to invoke Section 204's writing requirement to avoid suit. Billy-Bob Teeth, Inc. v. Novelty, Inc., 329 F.3d 586, 592-93 (7th Cir. 2003) (holding if there is "no dispute between the copyright owner and the transferee about the status of the copyright," it is "unwarranted to permit a third-party infringer to invoke section 204(a) to avoid suit for copyright infringement") (internal quotation marks and citation omitted); Basketball Mktg. Co., Inc. v. Steve & Barry's Univ. Sportswear, 2008 WL 5586141, at *1 (E.D. Pa. June 30, 2008) (holding "it would be anomalous to permit a third party infringer to invoke [Section 204] against the licensee" where "the copyright holder appears to have no dispute with its licensee on the matter") (internal quotation marks and citation omitted).

Here, Brigham Field and Malibu Media have no dispute regarding the oral assignment they entered into on February 8, 2011, when Malibu was formed. As Colette

Field's Affidavit avers, the parties' intentions were always that "every single right associated with" Brigham Field's copyrights would be transferred to Malibu. (Plaintiff's Memorandum in Opposition to John Doe 13's Motion to Dismiss, Ex. A at 2, ECF 65 in 12-2088). The Clarification of Assignment Agreement signed by Malibu Media and Brigham Field on December 5, 2012 underscores that the parties have no dispute as to the oral assignment's validity or meaning. The Clarification states:

> I, Brigham Field . . . affirm that on February 8, 2011, I did sell, assign, transfer, convey, and deliver all of my right, title and interest in and to the copyrights for the motion pictures listed below exclusively to Malibu Media, LLC . . . . This assignment includes all right[s], title and interest in and to the copyrights, including, but not limited to, each and every one of the exclusive rights set forth in 17 U.S.C. § 106 . . . and all other rights I did then have, including . . . the right to sue for past, present and future infringement. The forgoing assignment clarifies and more accurately memorializes the terms of the February 8, 2011 oral assignment and supersedes and replaces the existing written assignment recorded with the United States Copyright Office on September 13, 2012.

(Id. at Ex. B).

Second, Malibu argues, even if Defendants did have standing to contest the validity of the Assignment, the background facts and the text of the written Assignment from September 13, 2012 show that Brigham Field fully transferred all of his rights in his copyrighted works to Malibu.  Brigham Field produced erotic films in 2010 and 2011 and became a copyright holder for those films. When the Fields founded Malibu Media, LLC on February 8, 2011, a company in which they are and always have been sole co-owners, they naturally sought to acquire all of the copyrights held by Field. There is no reason Brigham Field would have intended to reserve any rights for himself – for it was his decision in the first place to cofound a new company with his wife. The Fields made oral arrangements for the transfer of Field's copyrights, and they filed a written Assignment

14

on September 13, 2012 memorializing their agreement. The written Assignment stated Field was transferring "all his right, title and interest" in the videos to Malibu, without any limits or conditions.  Given these facts, Plaintiff argues, a reasonable person would conclude Malibu acquired exclusive rights in Field's works on February 8, 2011, and certainly by September 13, 2012.  E.g. Nat'l Ass'n for Stock Car Auto Racing, Inc. v. Scharle, 356 F. Supp. 2d 515, 522 .D. Pa. 2005), aff'd 184 Fed. Appx. 270 (3d Cir. 2006) (holding that the Third Circuit has "yet to address the issue" of the writing requirement under Section 204(a) for a transfer of copyright ownership but other circuits have held the "requirement is a rather lax one," does not require any "magic words," and can be accomplished even with a "one-line pro forma statement").

Finally, Malibu contends any argument about the transfer of the right to sue for past infringement is irrelevant because Malibu owned Brigham Field's copyrights as of February 8, 2011 and all of the alleged infringements occurred thereafter.  Courts have held that oral assignments later memorialized should be deemed *valid ab initio* – especially when the transfer of rights is from an author to his own company. Billy-Bob Teeth., 329 F.3d at 91-93 (explaining "17 U.S.C. § 204(a) can be satisfied by an oral assignment later ratified or confirmed by a written memorandum of the transfer" and when the creator of a product formed a company and orally assigned his copyright to the company, his testimony was sufficient evidence from which a jury could find an oral assignment occurred); Eden Toys, Inc. v. Florelee Undergarment Co., Inc., 697 F.2d 27, 36 (2d Cir. 1982), superseded by statute on other grounds ("[S]ince the purpose of the provision is to protect copyright holders from persons mistakenly or fraudulently claiming oral licenses, the "note or memorandum of the transfer" need not be made at the

time when the license is initiated; the requirement is satisfied by the copyright owner's later execution of a writing which confirms the agreement."). Here, Plaintiff asserts, the oral assignment between a creator and his own company was executed on February 8, 2011 and memorialized on September 13, 2012.  It should be deemed *valid ab initio* – meaning Malibu was the copyright holder as of February 8, 2011.

### iv.  Analysis

The Court concludes Plaintiff has the requisite standing to bring the claims in the Amended Complaints.  Even if Defendants themselves had standing to contest the validity of the Assignment – which it appears they do not, given the lack of disagreement regarding the Assignment among the original parties – the background context of Malibu's formation, the Affidavit of Colette Field, the text of the Written Assignment from September 13, 2012, and the text of the Clarification Agreement from December 5, 2012, all demonstrate that Brigham Field intended to transfer and did transfer complete and exclusive rights in his copyrighted works to Malibu when the company was formed on February 8, 2011.  Malibu was the "exclusive" owner of the Brigham Field copyrights as of that time, and it has standing to sue for infringement of those works presently.

### C.  Motion to Dismiss under Rule 12(b)(7) for Failure to Join Necessary and Indispensible Parties

Doe 13 argues that the Amended Complaints should be dismissed under Fed. R. Civ. P. 12(b)(7) for failure to join necessary and indispensable parties under Fed. R. Civ. P. 19.

### i.  Relevant Factual History

As explained supra, the Amended Complaints in these consolidated cases differ substantially from the initial Complaints that were filed. First, the Amended Complaints name substantially fewer Defendants than the original Complaints had named. Rather than fourteen, sixteen, or twenty-two John Doe Defendants, the Amended Complaints charge only one or three John Does. This is the result of two developments in this litigation. First, on August 17, 2012, Malibu filed notices of voluntary dismissal, dismissing large numbers of John Doe Defendants from each case. (E.g. Notice of Voluntary Dismissal, ECF 23 in 12-2088) (dismissing Does 3, 4, 5, 7, 9, 11, 12, 15, and 16-22). Malibu claimed it was unable to coordinate service of process by the Rule 4(b) deadline but that after further investigation, it would "re-file and serve each Doe Defendant if it deems necessary." (Id.). Next, on October 3, 2012, this Court issued an Order directing that there be a bellwether trial against the John Does who had filed motions as of that point, John Does 1, 6, 13, 14 and 16, and staying the proceedings against all remaining Defendants. (Order for Expedited Proceedings Leading to Bellwether Trial, ECF 21 & 22 in 12-2078). Malibu subsequently filed Amended Complaints against Does 1, 6, 13, 14, and 16.

In addition to naming fewer Defendants, the Amended Complaints differ from the original Complaints in that they are no longer one-swarm-centric. Every Doe is now accused of participating in multiple swarms for multiple copyrighted videos. Additionally, the Amended Complaints contain no language on joint and several liability. The initial Complaints had included a "Joinder" paragraph, arguing that joinder under Fed. R. Civ. P. 20(a) was justified because the defendants were jointly and severally liable and because their actions stemmed from the same series of transactions. That

paragraph is now absent. Finally, the Amended Complaints contain only Direct Infringement Counts. The initial Complaints had charged each Defendant with both direct infringement and contributory infringement.

### ii.  Defendants' Contentions

Doe 13 argues the Amended Complaints should be dismissed under Fed. R. Civ. P. 12(b)(7) because they run afoul of Rule 19. First, it contends the Amended Complaints do not comply with Rule 19 because they name select defendants from various swarms, but do not join all of the members of any one swarm.  According to Doe 13, every member of a swarm is an indispensible party under Rule 19(b) because: (1) certain members of the swarm might have had authorization to circulate the work, which would call into question whether there was infringement by the group as a whole; and (2) any judgment obtained would be joint and several as to the whole swarm.

Second, Doe 13 contends the Amended Complaints violate Rule 19 because they fail to name the "initial seeders" from the swarms.  Initial seeders are indispensible parties, Doe 13 claims, because they might have been given legal privilege to distribute the copyrighted work at issue. If such is the case, the swarm may not have engaged in illegal activity after all.

Doe 13 also suggests that IPP, Ltd., the firm retained by Malibu to uncover the torrent hashes used to download its works, might have been the initial seeder for some or all of Malibu's infringed works. Doe 13 attaches documents from a dispute between an American company and IPP's predecessor, Guardaley Ltd., in which the American company accused Guardaley of seeding its works.  (John Doe 13's Motion to Dismiss, Ex. F, ECF 65 in 12-2088).

### iii.  Malibu's Contentions

Malibu makes two arguments for why joinder under Rule 19 is not compelled. First, Malibu points out that it is now suing each John Doe Defendant solely with direct infringement—it has dropped the contributory infringement claims. A direct infringement suit requires only the singular defendant. Accordingly, Malibu argues, the other members of the swarms are not essential to the litigation of its claims against each Doe.

Second, Malibu claims that even if the other members of the swarms involved in the Does' downloading activities were considered to be joint tortfeasors, the law is clear that joint tortfeasors are permissive parties under Fed. R. Civ. P. 20 but not necessary or indispensible parties under Fed. R. Civ. P. 19(a) and (b). This is a well-settled doctrine that has been acknowledged by the Supreme Court. Temple v. Synthes Corp., Ltd., 498 U.S. 5, 6 (1990) ("It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit. Nothing in the 1966 revision of Rule 19 changed that principle. The Advisory Committee Notes to Rule 19(a) explicitly state that 'a tortfeasor with the usual joint-and-several liability is merely a permissive party to an action against another with like liability.'").  Given that copyright infringement is a tort, the principle that joint-tortfeasors need not be joined under Rule 19 has been applied in copyright infringement lawsuits. Salton, Inc. v. Phillips Domestic Appliances & Pers. Care B.V., 391 F.3d 871, 877 (7th Cir. 2004) (Posner, J.) ("Under the principle of joint and several liability, which governs . . . the federal statutory tort of copyright infringement, the victim of a tort is entitled to sue any of the joint tortfeasors and recover his entire damages from that tortfeasor. The defendant may have a right to contribution (i.e., to a sharing of the pain) from the other tortfeasors, but the victim is not required to

sue more than one of his oppressors."); <u>Stabilisierungsfonds Fur Wein v. Kaiser Stuhl</u> <u>Wine Distribs. Pty. Ltd.</u>, 647 F.2d 200, 207 (D.C. Cir. 1981) ("Courts have long held that in patent, trademark, literary property, and copyright infringement cases, any member of the distribution chain can be sued as an alleged joint tortfeasor. Since joint tortfeasors are jointly and severally liable, the victim of trademark infringement may sue as many or as few of the alleged wrongdoers as he chooses; those left out of the lawsuit, commentary underscores, are not indispensable parties.").

Finally, Malibu argues that whether the initial seeders in the swarms had authorization to distribute Malibu's works is an evidentiary issue that can be explored during discovery and adjudicated at trial. There is no need to join the initial seeders as defendants under Rule 19.

### iv.  Analysis

The Court concludes the Amended Complaints comply with Rule 19 and the unnamed swarm members need not be joined as parties. Malibu is no longer pleading joint and several liability or contributory copyright infringement – it has dropped the Joinder paragraph and the Contributory Infringement Counts from the Amended Complaints. Instead, it is simply suing five John Doe Defendants with directly infringing its copyrights. To prevail against each Doe, Malibu needs to prove that each Doe downloaded its copyrighted material without authorization. The court will be able to adjudicate these matters and to "accord complete relief" whether or not the other members of the swarms, who allegedly also infringed Malibu's works, are present. <u>See</u> Fed. R. Civ. P. 19(a)(1)(A). Furthermore, even if Malibu's case *did* rest on a theory of joint and several liability, among the named Does and the unnamed and un-joined

members of the swarms, joint tortfeasors are neither necessary parties under Rule 19(a) nor indispensible parties under Rule 19(b).    See Temple, 498 U.S. at 6. And finally, Malibu is correct that questions surrounding the initial seeders can be explored during discovery and at trial – there is no necessity to join them as defendants under Rule 19.

### D.  Defendants' Other Arguments in Favor of Dismissal

#### i.  Failure to Obtain Certificate of Authority from Pennsylvania

Does 1, 6 and 14 argue the Amended Complaints should be dismissed because Malibu is a foreign corporation that did not obtain a necessary Certificate of Authority from the Commonwealth of Pennsylvania before availing itself of the courts here.

Malibu Media is an LLC incorporated and headquartered in California. Under Section 4141 of the Pennsylvania Business Corporations Law: "A nonqualified foreign business corporation doing business in this Commonwealth . . . shall not be permitted to maintain any action or proceeding in any court of this Commonwealth until the corporation has obtained a certificate of authority." 15 Pa. C. S. A. § 4141(a). This requirement extends to foreign LLCs. Id. § 8587(a).  Defendants claim that "a review of publicly available records with the Pennsylvania Department of State reveal that neither Malibu nor Collins has registered with the Commonwealth, nor obtained a certificate of authority." (John Doe 6's Motion to Dismiss at 9, ECF 43 in 12-2084). Accordingly, they argue that Malibu's action should be dismissed.

Malibu responds that the LLC is in fact registered with the Pennsylvania Department of State. That registration occurred on November 20, 2012. (Plaintiff's Memorandum in Opposition to Defendant John Doe 1's Motion to Dismiss at 11 & Ex. A, ECF 63 in 12-2088). Although the registration was executed after Malibu initiated the

present lawsuit, compliance with Section 4141(a) "during the pendency of the litigation" is sufficient. TES Franchising, LLC v. Dombach, 2010 WL 3946274, at *6 (E.D. Pa. Oct. 7, 2010) ("Plaintiffs can easily remedy this issue by complying with Pennsylvania's corporation registration statute during the pendency of the litigation."); Dague v. Huddler, 2008 WL 4444266, at *6 (E.D. Pa. Oct. 2, 2008) (same).

The Court concludes Defendants' argument regarding the Certificate of Authority is unavailing. The case law is clear that a foreign LLC can comply with Section 4141(a) by registering with the Department of State in Pennsylvania during the pendency of litigation. Malibu did so here.

### ii. Paragraph 53 and Exhibit F of the Amended Complaint

Doe 13 contends Paragraph 53 and Exhibit F of the Amended Complaint in civil action 12-2088 should be struck under Fed. R. Civ. P. 12(f). Additionally, Doe 13 argues the inclusion of Paragraph 53 in the Amended Complaint merits sanctions by the Court, because it shows that Malibu violated the Court's Order of October 3, 2012.

Paragraph 53 of the Amended Complaint states: "IPP Limited informed Plaintiff that John Doe 13 infringed, IPP Limited's other customer, Nucorp Ltd.'s unregistered copyrights in the works set forth on Exhibit F of those dates and time set forth on Exhibit F. Plaintiff is not suing for infringement of these works, but said infringements are additional evidence that John Doe 13 was willfully infringing on Plaintiff's Works." (Amended Complaint, ECF 47 in 12-2088). Exhibit F lists dates and times during which Doe 13 allegedly downloaded Nucorp's copyrighted works. Given that Nucorp is not a party to this action, Doe 13 contends Paragraph 53 and Exhibit F are "scandalous and impertinent" and should be struck under Rule 12(f). See Fed. R. Civ. P. 12(f) (stating a

court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter").

Furthermore, Doe 13 contends that Paragraph 53 and Exhibit F prove that Malibu violated the Court's Order from October 3, 2012. The Order stated that "[t]he results of discovery may only be used for purposes of this case." At the time the Order was issued, "this case" involved 22 John Doe Defendants accused of infringing "Tiffany – Sex with a Supermodel." Defendant argues that Malibu has used the discovery process to churn up evidence of Defendant's infringements of Nucorp's copyrights, as averred in Paragraph 53. This, Doe 13 claims, violates the October 3 order and merits sanctions.

After consideration, the Court finds no need to strike Paragraph 53 or Exhibit F of the Amended Complaint in 12-2088 or to issue sanctions. Malibu has included this material in order to show a pattern or practice of infringement by Doe 13. It is not suing upon these infringements; it is making an allegation which may become evidence to support its claim to relief.

***

For the reasons set forth above, the Motions to Dismiss are DENIED.

O:\CIVIL 12\12-2078 Malibu Media v. John Does 1-16\memorandum mtd.doc

23