UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MALIBU MEDIA, LLC,<br><br>　　*Plaintiff*,<br>v.<br><br>JOHN DOES 1 – 16,<br><br>　　*Defendants.* | **CONSOLIDATED**<br>**CIVIL ACTION NO. 12-2078**<br><br>Consolidated from Cases:<br>2:12-cv-02078-MMB<br>2:12-cv-02084-MMB<br>5:12-cv-02088-MMB |
| MALIBU MEDIA, LLC,<br><br>　　*Plaintiff*,<br>v.<br><br>JOHN DOES 1 – 14,<br><br>　　*Defendants.* | CIVIL ACTION NO. 12-2084 |
| MALIBU MEDIA, LLC,<br><br>　　*Plaintiff*,<br>v.<br><br>JOHN DOES 1 – 22,<br><br>　　*Defendants.* | CIVIL ACTION NO. 12-2088 |

**ORDER**

Upon consideration of Non-Parties Comcast Cable Holdings, Inc. and Comcast

Corporation (collectively, "Comcast") Motion to Quash or, in the alternative, for a Protective

Order ("Motion"), any opposition thereto, and all matters in the record, it is hereby

**ORDERED** that the Motion is **GRANTED.**  And it is further

**ORDERED** that the three subject subpoenas *duces tecum* with accompanying notices of 30(b)(6) depositions on Comcast in two of the above-referenced actions (12-2088 and 12-2084) are hereby **QUASHED**.

Dated this ___ day of _____, 2013

_____
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MALIBU MEDIA, LLC,<br><br>    *Plaintiff*,<br>v.<br><br>JOHN DOES 1 – 16,<br><br>    *Defendants.* | **CONSOLIDATED**<br>**CIVIL ACTION NO. 12-2078**<br><br>Consolidated from Cases:<br>2:12-cv-02078-MMB<br>2:12-cv-02084-MMB<br>5:12-cv-02088-MMB |
| MALIBU MEDIA, LLC,<br><br>    *Plaintiff*,<br>v.<br><br>JOHN DOES 1 – 14,<br><br>    *Defendants.* | CIVIL ACTION NO. 12-2084 |
| MALIBU MEDIA, LLC,<br><br>    *Plaintiff*,<br>v.<br><br>JOHN DOES 1 – 22,<br><br>    *Defendants.* | CIVIL ACTION NO. 12-2088 |

**NON-PARTIES COMCAST CABLE HOLDINGS, INC. AND COMCAST
CORPORATION'S MOTION TO QUASH OR, IN THE ALTERNATIVE, FOR A
PROTECTIVE ORDER**

Non-Parties Comcast Cable Holdings, Inc. and Comcast Corporation (collectively

"Comcast") hereby move to quash three subpoenas *duces tecum* with accompanying notices of

30(b)(6) depositions (collectively, the "Subpoenas") (Exhibit A hereto, redacted to remove Doe

Defendants' actual names).  Plaintiff served the Subpoenas on Comcast on December 24, 2012,

1

pursuant to Fed. R. Civ. P. 45, in two of the three above-captioned consolidated actions (12-2084 and 12-2088).  Plaintiff asked Comcast to designate a witness by January 17, 2013, produce 15 categories of documents by January 25, 2013, and then appear for deposition on February 6, 2013 in Florham Park, New Jersey, to authenticate and discuss each of the 15 categories of documents.

Comcast timely objected to the Subpoenas pursuant to Rule 45(c)(2)(B), thus relieving Comcast of any obligation to produce documents, and invited Plaintiff to confer regarding its objections to determine if there could be an agreement reached on limited document compliance, witness subject matter areas and designation, and, if necessary, a limited appearance.  Plaintiff has not responded or otherwise indicated its intent either to pursue these Subpoenas or to relieve Comcast of appearing at deposition until after the document production issue is resolved, or even whether Plaintiff intends to file a motion to compel.  Thus, Comcast requests this Honorable Court to quash all subpoenas.

Alternatively, if the Court does not quash the Subpoenas, and determines that compliance with the Subpoenas in some form is appropriate, or orders compliance after Plaintiff files any motion to compel, Comcast seeks a protective order.  Such protective order should provide Comcast with a more reasonable time to respond and appear for any deposition (if even necessary), limit   the scope of any examination of Comcast witnesses or additional categories of documents to the issue of authentication by affidavit, expressly order Comcast to comply as required by 47 U.S.C. § 551(c) (2)(B), and direct Plaintiff to reimburse Comcast for the reasonable costs of appearing at any deposition (if needed) and complying with any document requests.

As grounds for this motion, and as fully set forth in the letter Comcast served on Plaintiff objecting to the Subpoenas (copy attached as Exhibit B) and the Memorandum of Law that

accompanies this motion, Comcast states that the three Subpoenas should be quashed because

they are overbroad and unduly burdensome, seek irrelevant information, require a specific order

for compliance from this Court before personal information on Comcast subscribers may be

produced, and seek information that is highly confidential or proprietary to Comcast.  Discussion

and authentication of the subject matters described in the 15 categories of issues and documents

will require multiple witnesses.

 **WHEREFORE**, Comcast respectfully requests that the Subpoenas be quashed.  In

the alternative, if compliance with the Subpoenas is deemed appropriate, Comcast respectfully

requests that the Court enter a protective order allowing for a reasonable time for Comcast

to comply, and directing Plaintiff to reimburse Comcast for the cost of complying with the

Subpoenas.  Finally, the Court should award Comcast costs and attorney's fees associated

with this Motion.

Dated:  January 25, 2013                             Respectfully submitted,

                              __s/ Corey Osborn_____
                              Corey Osborn
                              Pa. Id. 309913
                              Tucker Law Group
                              One Penn Center at Suburban Station
                              1617 John F. Kennedy Blvd., Suite 1700
                              Philadelphia, PA 19103
                              cosborn@tlgattorneys.com
                              215-875-0069

                              *Counsel for Non-Party Comcast*

                              *Of Counsel:*
                              John D. Seiver
                              Ronald G. London
                              Leslie G. Moylan
                              **DAVIS WRIGHT TREMAINE LLP**
                              1919 Pennsylvania Ave., N.W., Suite 800
                              Washington, DC 20006
                              (202) 973-4200

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MALIBU MEDIA, LLC, | **CONSOLIDATED** |
|      *Plaintiff*, | **CIVIL ACTION NO. 12-2078** |
| v. | Consolidated from Cases: |
| | 2:12-cv-02078-MMB |
| JOHN DOES 1 – 16, | 2:12-cv-02084-MMB |
| | 5:12-cv-02088-MMB |
|      *Defendants.* | |
| | |
| MALIBU MEDIA, LLC, | |
|      *Plaintiff*, | CIVIL ACTION NO. 12-2084 |
| v. | |
| JOHN DOES 1 – 14, | |
|      *Defendants.* | |
| | |
| MALIBU MEDIA, LLC, | |
|      *Plaintiff*, | CIVIL ACTION NO. 12-2088 |
| v. | |
| JOHN DOES 1 – 22, | |
|      *Defendants.* | |

**MEMORANDUM OF LAW IN SUPPORT OF NON-PARTIES
COMCAST CABLE HOLDINGS, INC. AND COMCAST CORPORATION'S
MOTION TO QUASH OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**

Non-Parties Comcast Cable Holdings, Inc. and Comcast Corporation (collectively

"Comcast") submit this memorandum in support of its Motion to Quash or, in the alternative,

for a Protective Order ("Motion").

1

## INTRODUCTION AND BACKGROUND

In this action, Plaintiff Malibu Media, LLC ("Plaintiff" or "Malibu") alleges certain John Doe Defendants allegedly infringed its copyrights by downloading certain audiovisual works. Am. Compl. [ECF No. 32] ¶ 23.  Comcast is not a defendant in this action, nor has Plaintiff alleged that Comcast has any liability for the alleged infringement of Plaintiff's copyrights. Comcast is a non-party that is, among other things, an Internet service provider ("ISP"), and is not liable for its subscribers' alleged "Bit Torrent protocol" transfers that may infringe any copyright.[1]  Because Plaintiff did not have the identities of the alleged infringers, but only their IP addresses, Plaintiff sought leave to serve subpoenas on various ISPs to obtain the infringers' identifying information.

On May 18, 2012, this Court issued an Order ("May 18 Order") granting Plaintiff's April 24, 2012 motion for leave to serve third-party subpoenas prior to a Rule 26(f) conference ("April 24 Motion").  The May 18 Order was limited to Plaintiff's request to serve third-party subpoenas on ISPs, and allowed Plaintiff's subpoenas to seek only the names, addresses, and Media Access Control (MAC) addresses of the Doe Defendants in this action.  Comcast did not have the opportunity to participate in the Court's consideration or ultimate grant of Plaintiff's April 24 Motion. Pursuant to the May 18 Order, Plaintiff served subpoenas seeking subscriber names, addresses, and MAC addresses on Comcast, and Comcast complied with those subpoenas and provided all requested subscriber information in its records as Ordered by the Court.

On or about December 24, 2012, Plaintiff served three more subpoenas *duces tecum* with accompanying notices of 30(b)(6) depositions (collectively, the "Subpoenas") on Comcast in two

---

[1]  *See* 17 U.S.C. § 512(a) (codifying in part the Digital Millennium Copyright Act ("DMCA")). Indeed, Comcast respects and supports the rights of copyright owners to bring valid actions against alleged copyright infringers.  However, Comcast also requires these actions to be brought in accordance with all applicable procedural and other legal requirements.

of the above-referenced actions (12-2088 and 12-2084) (all three Subpoenas attached as Exhibit

A to Comcast's Motion with subscriber names redacted).  These Subpoenas request that, by

January 17, 2013, Comcast designate one or more officers, directors, etc., as witness(es) to

discuss and authenticate  fifteen specified distinct categories of documents and related subject

matter.  They also request that, by January 25, 2013, Comcast produce documents in a like

number of categories, mostly pertaining to already identified Comcast subscribers (referred

to as John Does #1 and #14 in Case No. 12-2088, and John Doe #6 in Case No. 12-2084),

and then appear for a deposition on the topics coinciding with the document requests (not

just authentication) on February 6, 2013, in Florham Park, New Jersey.

Complying with the Subpoenas will be unduly burdensome.  The Subpoenas seek a great

deal more than just names and addresses as allowed by the May 18 Order. Rather, they seek

personally identifiable information ("PII") relating to  (among other things) any DMCA record(s)

Comcast has for the identified subscribers, the identified subscribers' internet bandwidth usage,

specific video programming and/or other content watched or accessed by the subscribers, and

bills and invoices relating to use of the service, which in turn would reveal viewing habits,

service selections, costs paid, and other sensitive information, all of which is specifically

protected by 47 U.S.C. § 551 which requires an Order and notice to subscribers before

disclosure.  Moreover, some of the documents sought concern Comcast's confidential

and proprietary information on the operation of Comcast's network, while others refer to

subscriber service usage that Comcast does not track or monitor.  Further, neither the May 18

Order nor the Subpoenas themselves provide for the reimbursement of a substantial amount

of the costs Comcast will incur in responding to the Subpoenas.  Finally, the large number of

requests for deposition topics could require as many as 10 different people to testify.  Comcast

timely objected to the Subpoenas by letter dated January 7, 2013 (copy attached as Exhibit B to Comcast's Motion).

For these reasons, the Court should quash the Subpoenas or, in the alternative, enter a protective order limiting the scope of information sought, allowing for a reasonable time for Comcast to comply, limiting document production and topics, and setting the amounts to be reimbursed by Plaintiff to Comcast.

## ARGUMENT

Federal Rule of Civil Procedure 26 requires a court to enter a protective order limiting discovery where "the discovery sought is unreasonably cumulative or duplicative" or where "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C). In the case of nonparty deponents, courts recognize that "[d]iscovery should be more limited to protect nonparty deponents from harassment, inconvenience or disclosure of confidential documents." *See e.g., Northeast Women's Ctr., Inc. v. McMonagle,* 1987 WL 6665, *5 (E.D. Pa. Feb.10, 1987) (citing *Dart Indus. Co. v. Westwood Chem. Co.,* 649 F.2d 646, 649 (9th Cir. 1980)). "[I]t should be more difficult to compel production from a non-party witness who has no personal interest in the matter." *McBride v. CBS Radio, Inc.*, 2011 WL 8072752, *1 (E.D. Pa. April 12, 2011) (citing *Commonwealth v. Bowden,* 838 A.2d 740, 754-55 (Pa. 2003)); *see also Small v. Provident Life and Accident Ins. Co.,* 1999 U.S. Dist. LEXIS 18930, at *4 (E.D. Pa. Dec. 8, 1999) ("Courts have imposed broader restrictions on the scope of discovery when a non-party is targeted.").

Courts have found that a third-party subpoena can be overbroad based on the "time and expense required" to respond, including "the volume of material requested, the ease of searching for the requested documents in the form presented, and whether compliance threatens the normal

operations" of the responding party. *Linder v. Calero-Portocarrero*, 180 F.R.D. 168, 175

(D.D.C. 1998). If responding would require "an inordinate amount of time and resources," this

Court may quash the subpoena or limit it. *Id*. Further, courts have held that nonparties should be

compensated for their time and labor in complying with a subpoena. *Mycogen Plant Science,*

*Inc. v. Monsanto Co.,* 1996 U.S. Dist. LEXIS 2264, * 16 (E.D. Pa. 1996) (nonparty should be

compensated for time and labor in producing documents); *In re Letters Rogatory*, 144 F.R.D.

272, 278-79 (E.D. Pa. 1992) (reimbursement for production costs). *See also Celanese Corp. v.*

*E.I. du Pont de Nemours & Co.*, 58 F.R.D. 606, 610, 612 (D. Del. 1973) (requiring subpoenaing

party to bear all reasonable expenses for responding to "very broad" subpoena).

## I.      This Court Should Quash the Subpoenas

The three Subpoenas should be quashed because they are overbroad, unduly burdensome,

seek irrelevant information, and seek information that is highly confidential and proprietary in

nature. Federal Rule of Civil Procedure 45(c)(3)(A) authorizes a court to quash or modify a sub-

poena if it subjects a person to an undue burden or if it requires the production of confidential

commercial information.[2] *Pepsi–Cola Metro. Bottling Co., Inc. v. Ins. Co. of N. Am., Inc.*, 2011

WL 239655, at *3 (E.D. Pa. Jan.25, 2011).

---

[2] There are several confusing elements that call into question the validity of the Subpoenas
altogether. First, the two 2088 Subpoenas instruct Comcast to designate the person(s) "who are
the most knowledgeable about the subject matter categories set forth in Exhibit A," though there
is no "Exhibit A" appended to either of the two Subpoenas that Comcast received in that case.
There are, as identified elsewhere in those Subpoenas, "*Schedules* A and B," but no "Exhibit A."
Moreover, the Schedule A attached to the Subpoenas does not set forth any subject matter
categories, but rather identifies documents requested for production. Conversely, Schedule B
sets forth subject matter categories. Second, the three Subpoenas' Schedules A and B refer to
"Verizon Internet Services" and to documents pertaining to Verizon (and, thus, not to Comcast).
Of course, Comcast would not have any documents relating to Verizon or its Internet Services,
nor could there be any person(s) at Comcast knowledgeable about such Verizon documents.

As set forth above, at a prior stage of this action, Plaintiff obtained an order (the May 18

Order, ECF No. 8 in all 3 dockets) authorizing disclosure of PII for the individuals identified and

named in Schedules A and B to the Subpoenas.  Indeed, the information gained in response to

the May 18 Order allowed such identification of the subscribers in the present Subpoenas.  But

the May 18 Order only authorized disclosure of subscriber names and addresses, and MAC

addresses.  Schedules A and B to the present Subpoenas call for a great deal more than names

and addresses; rather, they seek PII relating to (among other things) the DMCA record(s) for the

identified subscribers, the identified subscribers' internet bandwidth usage, specific video

programming and/or other content watched or accessed by the subscribers, and bills and invoices

relating to use of the service, which in turn would reveal the identified subscribers' viewing

habits, service selections, costs paid, and other sensitive information.  Much of that information

is unavailable or would require extensive review to determine if it might possibly exist.

Moreover, some of the documents Plaintiff seeks also concern Comcast's confidential

and proprietary information on the operation of Comcast's network, and other document requests

refer to subscriber service usage that Comcast does not even track or monitor.   In addition, even

apart from the subscriber PII issue, Schedule A requests documents that Plaintiff can access

directly online, such as Comcast universal subscriber agreements, terms of use, privacy policies,

DMCA notices and policies, and user guides for Comcast-provided router devices.  It is accord-

ingly an undue burden to demand that Comcast produce them in response to the Subpoenas and

testify about them, rather than Plaintiff simply accessing them online directly, if they are even

relevant to any of the issues to be tried in these consolidated cases.

Indeed, it is hard to fathom the relevance to this case, for example, of the programming

displayed on a subscriber's television over Comcast's cable system when the allegations in

Plaintiff's complaints against the Does relates to alleged Internet downloading violations, not television viewing habits.  In any event, that is not something Comcast tracks or about which it retains records, except as to general categories of service, and for pay-per-view or video-on-demand events that might appear on any bill.  A party seeking discovery bears the initial burden of demonstrating the requested discovery is relevant to its claim or defense.  *Morrison v. Phila. Housing Auth.,* 203 F.R.D. 195, 196 (E.D. Pa. 2001).  Here, the Subpoenas are unduly burdensome because they seek information that is unlikely to lead to any admissible evidence supporting Plaintiff's claims at issue.  Further, document requests and deposition categories seeking information on bandwidth usage of Comcast customers generally, or for a subscriber identified in a Subpoena schedule, comprises proprietary and highly confidential Comcast information protected by F.R.C.P. 45(c)(3)(B)(i).  *See*, *e.g.*, *In re ANC Rental Corp.*, 2002 WL 34729302, at *2 (E.D. Pa. June 20, 2002).[3]

Accordingly, the Subpoenas should be quashed, given that the document requests, and in turn the subject matter categories identified for depositions, are overly broad and unduly burdensome, and seemingly irrelevant as well.  The Subpoenas should also be quashed because they seek proprietary and highly confidential information from Comcast, a non-party. At a minimum the Court should quash the Subpoenas to the extent they include Notices of Depositions of Comcast witnesses until such time as the documentary aspect of the Subpoenas is resolved.

---

[3] If compliance with the Subpoenas is ordered, the Court should enter a protective order to safeguard Comcast's information from public disclosure, or prevent the use of any of the documents that are confidential or proprietary.

II.     **In The Alternative, If Compliance With The Subpoenas Is Ordered, This Court Should Enter A Protective Order Allowing for a Reasonable Time for Comcast to Comply, and Setting the Amounts to be Reimbursed by Plaintiff to Comcast.**

A.     **The Court Should Enter a Specific Order on Compliance and Allow a Reasonable Time for Compliance**

Even if this Court does order compliance with the Subpoenas (though Comcast believes it should not), the Court should enter a protective order setting forth ample time for Comcast to notify its subscribers of the Subpoenas and give them a reasonable opportunity to object.

As a cable operator, Comcast must protect its cable, telephone, and Internet subscribers' privacy in compliance with federal law.  Comcast may not provide any subscriber's PII to a third party without first ensuring compliance with the requirements of Section 631(c) of the Communications Act, 47 U.S.C. § 551(c).  That Section generally prohibits cable operators from disclosing such information without the subscriber's express written consent, and also imposes an affirmative obligation on a cable operator to "take such actions as are necessary to prevent unauthorized access to such information by a person other than the subscriber or cable operator." *Id*. § 551(c)(1).

Section 631(c)(2) provides three exceptions to the general ban on disclosing PII without the subscriber's express consent.  Disclosure is permitted: (1) "when necessary to render, or conduct a legitimate business activity related to, a cable service or other service provided by the cable operator to the subscriber," *id*. § 551(c)(2)(A); (2) "pursuant to a court order authorizing such disclosure, if the subscriber is notified of such order by the person to whom the order is directed," *id*. § 551(c)(2)(B); and (3) in the form of aggregate customer name and address lists, as long as the cable operator has provided the subscriber the opportunity to prohibit or limit such disclosure and the lists contain no information regarding customers' viewing activities or other transactions.  *Id*. § 551(c)(2)(C).

The only exception applicable to the Subpoenas is contained in Section 631(c)(2)(B), which requires a court order and notice to the subscriber before disclosure of any PII may be made.  Even though the names of the subscribers have been released to Plaintiff, such notice must afford the subscribers who have been named (but are still unidentified to others) enough time to challenge any disclosure before it is made.  A decision otherwise would render the notice provision a nullity.  *See* Lyrissa Barnett Lidsky & Thomas F. Cotter, *Authorship, Audiences, and Anonymous Speech,* 82 Notre Dame L. Rev. 1537, 1598 (Apr. 2007) (advocating extending protections of Section 631 in other contexts to "guarantee the defendant has a chance to defend his right to speak anonymously ***before it is too late***") (emphasis added).

These protective measures plainly could not be completed by the time specified in the Subpoenas for production of the documents requested.  Accordingly, if the Court orders compliance with the Subpoenas, a protective order should be entered providing Comcast with a reasonable amount of time that would permit Comcast to respond to the subpoena within a timeframe that allows time to notify subscribers and for subscribers to object before any infor-mation is produced, and then set a time to appear for deposition for authenticating the documents so produced unless an affidavit is sufficient so as to eliminate any need for a deposition.

## B.    The Court Should Enter A Protective Order Requiring Plaintiff To Pay The Costs To Comply With The Subpoenas

The Court should enter a protective order directing Plaintiff to reimburse Comcast for the cost of complying with the Subpoenas.  Federal Rule 45 provides that "an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded."  Courts in this District have consistently held that nonparties should be compensated for their time and labor in producing requested documents, rationalizing that "[n]onparty witnesses are powerless to control the scope

9

of litigation and discovery, and should not be forced to subsidize an unreasonable share of costs

of a litigation to which they are not a party." *Mycogen Plant Science, Inc. v. Monsanto Co.,*

1996 U.S. Dist. LEXIS 2264, *16 (E.D. Pa. 1996) (nonparty should be compensated for time and

labor in producing documents) (citing *United States v. Columbia Broadcasting Sys. Inc.,* 666

F.2d 364, 371-72 (9th Cir. 1981)).  This Court has acknowledged that "[b]oth the Advisory

Committee Report and the *Practice Commentaries* are unequivocally clear that under Fed. R.

Civ. P. 45 this Court "shall" include in its order granting a subpoena to a non-party a provision

for "defraying the expenses that the production, inspection, copying, etc., may require." *In re*

*Letters Rogatory*, 144 F.R.D. 272, 278 (E.D. Pa. 1992) (citing *Practice Commentary,* C45–21,

28 U.S.C.A., Rule 45 at 389) (reimbursement for production costs).[4]  In particular, when a third-

party subpoena is overly broad, and when compliance would cause an undue burden, a district

court does not abuse its discretion by ordering the subpoenaing party to bear all costs.  *Spears v.*

*City of Indianapolis*, 74 F.3d 153, 158 (7th Cir. 1996) (affirming district court's decision to order

subpoenaing party to pay all costs); *accord Celanese Corp. v. E.I. du Pont de Nemours & Co.*, 58

F.R.D. 606, 610, 612 (D. Del. 1973) (requiring subpoenaing party to bear all reasonable

expenses for responding to "very broad" subpoena).

  In this instance, requiring Plaintiff to pay all of Comcast's costs is reasonably related to

the actual cost of compliance with the Subpoena and is a reasonable preventive measure to curb

abusive discovery tactics.  Accordingly, if compliance with the Subpoenas is ordered, in order to

---

[4] *See also Linder v. Adolfo Calero-Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001) (nonparty should be compensated for half the reasonable copying and labor costs); *In re Midlantic Corp. Shareholder Litigation,* 1994 WL 750664, at *6 (D.D.C. Oct. 24, 1994) (nonparty must be compensated for reasonable copying and labor costs); *Exxon Valdez*, 142 F.R.D. 380, 384 (D.D.C. 1992) (requiring requesting party to pay a portion of discovery costs); *Compaq Computer Corp., v. Packard Bell Electronics, Inc.,* 1995 U.S. Dist. LEXIS 20549, *24-25 (N.D. Cal. 1995) (nonparty witness is entitled to be compensated at a reasonable hourly rate for producing documents).

protect Comcast from incurring unreasonable and significant expense, the Court should enter a

protective order to require Plaintiff to reimburse Comcast for the costs incurred in complying

with the Subpoenas.

## CONCLUSION

For the foregoing reasons, Comcast respectfully requests that the Subpoenas be quashed.

In the alternative, if compliance with the Subpoenas is ordered, Comcast respectfully requests

that the Court enter a protective order allowing for a reasonable time for Comcast to comply, and

to notify subscribers, and directing Plaintiff to reimburse Comcast for the cost of complying with

the Subpoenas.  Finally, the Court should award Comcast costs and attorneys' fees associated

with its motion.

Dated:  January 25, 2013                              Respectfully submitted,

                                                      __s/ Corey Osborn_____
                                                      Corey Osborn
                                                      Pa. Id. 309913
                                                      Tucker Law Group
                                                      One Penn Center at Suburban Station
                                                      1617 John F. Kennedy Blvd., Suite 1700
                                                      Philadelphia, PA 19103
                                                      cosborn@tlgattorneys.com
                                                      215-875-0069

                                                      *Counsel for Non-Party Comcast*

                                                      *Of Counsel:*
                                                      John D. Seiver
                                                      Ronald G. London
                                                      Leslie G. Moylan
                                                      **DAVIS WRIGHT TREMAINE LLP**
                                                      1919 Pennsylvania Ave., N.W., Suite 800
                                                      Washington, DC 20006
                                                      (202) 973-4200

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 25 day of January, 2013, true and correct copies of the

foregoing document were served via ECF upon all counsel of record.

Christopher P. Fiore, Esquire
Aman M. Barber, III, Esquire
Fiore & Barber, LLC
425 Main Street, Suite 200
Harleysville, PA 19438
*Attorney for Malibu Media, LLC*

Leonard J. French, Esquire
The Law Offices of Leonard J. French
P.O. Box 9125
Allentown, PA 18105
*Attorney for Doe 1*

Jordan Rushie, Esquire
2424 East York Street, Suite 316
Philadelphia, PA, 19125
*Attorney for John Doe 13*

Marc J. Randazza, Esquire
Randazza Legal Group
6525 W. Warm Springs Rd., Ste. 100
Las Vegas, NV 89118
*Attorney for John Doe 13*

Thad M. Gelsinger, Esquire
The Law Firm of Leisawitz Heller
2755 Century Boulevard
Reading, PA 19610
*Attorneys for John Doe 14*

              s/ Corey Osborn