EXHIBIT "B"



Suite 800
1919 Pennsylvania Avenue, NW
Washington, DC 20006-3401

**John D. Seiver**
**202.973.4212 Direct Telephone**
**202.973.4412 Direct Fax**
202-973.4200 Main Telephone
202.973.4499 Main Fax
johnseiver@dwt.com

January 7, 2013

**VIA EMAIL AND U.S. MAIL**

*cfiore@fiorebarber.com*
Christopher P. Fiore
Aman M. Barber, III
Fiore & Barber, LLC
425 Main Street, Suite 200
Harleysville, PA 19438

*klipscomb@lebfirm.com*
Michael Keith Lipscomb
Lipscomb Eisenberg & Baker PL
2 S. Biscayne Blvd.
Penthouse 3800
Miami, FL 33131

> Re: *Malibu Media, L.L.C. v. John Does 1, 13 and 14*
> Case No. 5:12-cv-02088-MMB (E.D. Pa.)
> -and-
> *Malibu Media, L.L.C. v. John Doe 6*
> Case No. 2:12-cv-02084-MMB (E.D. Pa.)
>
> **Subpoenas *Duces Tecum* with 30(b)(6)**
> **Depositions of Records Custodian for**
> **Comcast Cable Communications Holdings, Inc.**
>
> **John Does #1, John Doe #14 (2088); John Doe #6 (2084)**

Dear Messrs. Fiore and Lipscomb:

I am counsel to Comcast Cable Holdings, Inc. and Comcast Corporation (together, "Comcast"). This letter responds to the three subpoenas *duces tecum* with 30(b)(6) depositions (each a "Subpoena," collectively, "Subpoenas") served on Comcast on or about December 24, 2012, in the two above-referenced actions pending in the United States District Court for the

Christopher P. Fiore
Michael Keith Lipscomb
January 7, 2013
Page 2

Eastern District of Pennsylvania, and to the accompanying notices of 30(b)(6) corporate depositions of records custodian.

Your Subpoenas requested that, by January 17, 2013, Comcast designate one or more officers, directors, etc., as witness(es) for over a dozen extensive specified subject matters, and that by January 25, 2013, Comcast produce documents in a like number of categories, mostly pertaining to already identified Comcast subscribers, referred to as John Does #1 and #14 in No. 5:12-cv-02088-MMB (E.D. Pa.) ("2088") and John Doe #6 in No. 2:12-cv-02084-MMB (E.D. Pa.) ("2084"). The Federal Rules allow for non-parties such as Comcast to object within 14 days of service of a subpoena. Fed. R. Civ. P. 45(c)(2)(B). For the reasons set forth herein, Comcast objects to your three Subpoenas, and explains below why no documents will be produced, and Comcast thus expects that you will agree that no one will appear for deposition unless and until the objections are resolved and an agreement is reached on the scope of any production and testimony.

As a preliminary matter, there are several confusing elements in the Subpoenas that affect Comcast's approach to responding. First, the two 2088 Subpoenas instruct Comcast to designate the person(s) "who are the most knowledgeable about the subject matter categories set forth in Exhibit A," though there is no "Exhibit A" appended to either of the two Subpoenas that Comcast received in that case. There are, as identified elsewhere in those Subpoenas, "*Schedules* A and B," but no "Exhibit A." Moreover, the Schedule A attached to the Subpoenas does not set forth any subject matter categories, but rather identifies documents requested for production. Conversely, Schedule B sets forth subject matter categories. We accordingly assume that there is no "Exhibit A" and that the reference to Exhibit A (or Schedule A) with respect to subject matter categories should be "Schedule B." However, if there is an Exhibit A that happens to be left out, or this assumption is otherwise misplaced, please notify us immediately.

Second, the three Subpoenas' Schedules A and B refer to "Verizon Internet Services" and to documents pertaining to Verizon (and, thus, not to Comcast). Of course, Comcast would not have any documents relating to Verizon or its Internet Services, nor could there be any person(s) at Comcast knowledgeable about such Verizon documents. We assume these references to Verizon were intended to identify Comcast, and respond below accordingly. But if that is incorrect, there would be no documents produced, and no deponent identified, for the separate reason that Comcast would not have any responsive material(s) or information related to Verizon records.

More substantively, Comcast may not provide to any third party documents or information that include a subscriber's personally identifiable information ("PII") without first ensuring compliance with the requirements of Section 631(c) of the Communications Act, 47 U.S.C. § 551(c). That Section generally prohibits cable operators from disclosing such information without the subscriber's express written consent, and also imposes an affirmative obligation on a cable operator to "take such actions as are necessary to prevent unauthorized access to such information by a person other than the subscriber or cable operator." *Id.* § 551(c)(1). Section 631(c)(2) provides three exceptions to the general ban on disclosing PII

Christopher P. Fiore
Michael Keith Lipscomb
January 7, 2013
Page 3

without the subscribers' express consent. Only one is applicable to your requests as you have not included any signed consents from the subscribers. Specifically, Section 631(c)(2)(B) states that disclosure is permitted "pursuant to a court order authorizing such disclosure, if the subscriber is notified of such order by the person to whom the order is directed."

We note that at a prior stage of this case you obtained a court order authorizing disclosure of PII for the individuals identified and named in Schedules A and B to the Subpoenas. Indeed, the information gained in response to that earlier order allowed such identification of the subscribers in the present Subpoenas. But that court order only authorized disclosure of subscriber names and addresses, and MAC addresses. Schedules A and B to the present Subpoenas call for a great deal more than names and addresses; rather, they seek PII relating (among other things) to the DMCA record(s) for the identified subscribers, the identified subscribers' internet bandwidth usage, specific content watched or accessed by the subscribers, and bills and invoices relating to use of the service, which in turn would reveal the identified subscribers' viewing habits, service selections, costs paid, and other sensitive information. Moreover, some of the documents you seek also concern Comcast confidential and proprietary information on the operation of Comcast's network, and other document requests refer to subscriber service usage that Comcast does not track or monitor.

Furthermore, even if a court order were to issue that would require disclosure of that wealth of PII, Comcast could not disclose it until after the subscriber is notified of the court order and given a reasonable opportunity to object, and a suitable protective order is entered to protect Comcast information from public disclosure, or use any of the documents that are confidential or proprietary. Those steps plainly could not be completed by the time specified in the Subpoena for production of the documents requested. Unless and until a valid order issues allowing any of the disclosures your Subpoena seeks, such notice cannot be given to subscribers pursuant to 47 U.S.C.551, and no disclosure of any PII may be made. *Please be advised Comcast will, however, continue to preserve any data that it currently possesses that is relevant to the Subpoenas for 90 days from the date of receipt, in the event such an order could be secured.*

There is real reason to doubt whether such an order would issue, however, given the breadth of what the Subpoenas demand. Comcast objects in this regard that the Subpoenas' essentially identical document requests, and in turn the subject matter categories identified for depositions, are overly broad and unduly burdensome, and seemingly irrelevant as well. For example, even apart from the subscriber PII issue, Schedule A requests documents *you can access directly online*, such as Comcast subscriber agreements, terms of use, privacy policies, DMCA notices and policies, and user guides for Comcast-provided router devices. It is accordingly an undue burden to demand that Comcast produce them in response to Subpoenas, rather than you simply accessing them online directly. It is also hard to fathom the relevance to this case, for example, of the programming displayed on a subscriber's television over Comcast's cable system that, in any event, is not something that Comcast tracks or retains records of except for general categories of service and any PPV or VOD events that might appear on any bill. And document requests and deposition categories seeking information on bandwidth usage of Comcast customers generally, or for the subscriber identified in the Subpoena's Schedules, comprises proprietary and highly confidential Comcast information protected by F.R.C.P.

Christopher P. Fiore
Michael Keith Lipscomb
January 7, 2013
Page 4

45(c)(3)(B)(i). *See, e.g., In re ANC Rental Corp.*, 2002 WL 34729302, at *2 (E.D. Pa. June 20, 2002).

      Comcast also objects to the request that a 30(b)(6) corporate representative appear for a deposition about the documents requested in your Rule 45 Subpoena. The "subject matter categories" identified in Schedule B only seek, in fact, "discussion" of documents requested in Schedule A. If the documents need authenticating (assuming the above hurdles can be cleared to production), that can easily be achieved without an in-person deposition. *See, e.g., Hussey v. Chase Manhattan Bank*, 2005 WL 1787458, at *1 n.3 (E.D. Pa. July 26, 2005). Moreover, if and when the various impediments to requiring production are removed, given the nature of the documents requested, they will speak for themselves, and should not require any in-person or other "discussion" or "explanation" via deposition. A deposition would not seem to provide you any information relevant to your claims, and would thus be an undue burden.

      In this regard, Federal Rule 45 provides that "an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded." Indeed, "nonparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of costs of a litigation to which they are not a party." *United States v. Columbia Broadcasting Sys. Inc.*, 666 F.2d 364, 371-72 (9th Cir. 1981). Courts have consistently held that nonparties should be compensated for their time and labor in producing requested documents.[1] We will thus need to agree on a schedule of time and costs for reimbursement for document production and attendance at a deposition if and when we proceed.

      Based on the foregoing, Comcast will not designate any witness by January 17, nor will it produce the documents requested in the Subpoenas by January 25, 2013. Those documents that do not contain PII requiring a court order or proprietary and confidential information are available to you online. If and when you seek and then properly obtain an order that complies with the Cable Communications Act, and deals with any required protective order, we will revisit the issues concerning time for compliance and the scope and cost of any production. Because document production certainly cannot occur as early or as quickly as the Subpoenas anticipate, there is no point to holding any deposition on February 6, 2013. If you do not agree to adjourn the deposition pending a resolution of your document requests, please advise me prior to January 11, 2013 so we may move for a protective order. Corey Osborn of the Tucker Law Group in Philadelphia will be our local counsel.

---

[1] *See Linder v. Adolfo Calero-Portocarrero*, 251 F.3d. 178, 182 (D.C. Cir. 2001) (nonparty should be compensated for half the reasonable copying and labor costs); *In re Midlantic Corp. Shareholder Litigation*, 1994 WL 750664, at *6 (D.D.C. Oct. 24, 1994) (nonparty must be compensated for reasonable copying and labor costs); *Exxon Valdez*, 142 F.R.D. 380, 384 (D.D.C. 1992) (requiring requesting party to pay a portion of discovery costs); *Mycogen Plant Science, Inc. v. Monsanto Co.*, 1996 U.S. Dist. LEXIS 2264, * 16 (E.D. Pa. 1996) (nonparty should be compensated for time and labor in producing documents); *Compaq Computer Corp., v. Packard Bell Electronics, Inc.*, 1995 U.S. Dist. LEXIS 20549, *24-25 (N.D. Cal. 1995) (nonparty witness is entitled to be compensated at a reasonable hourly rate for producing documents); *In re Letters Rogatory*, 144 F.R.D. 272, 278-79 (E.D. Pa. 1992) (reimbursement for production costs).

Christopher P. Fiore
Michael Keith Lipscomb
January 7, 2013
Page 5

    If there are any questions, or you wish to discuss this matter, please contact me or Mr. Osborn directly.

Very truly yours,

*[signature]*

John D. Seiver

cc:    Comcast
        Corey Osborn
        Leonard J. French
        Charles Thomas, Jr.
        A. Jordan Rushie
        Thad M. Gelsinger