# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
-----------------------------------------------------------X
                                            :
MALIBU MEDIA, LLC,                          :
                                            :        Civil Action No. 12-cv-2078
                         Plaintiff,         :
                                            :        Consolidated from Cases:
               vs.                          :        2:12-cv-02078-MMB
                                            :        2:12-cv-02084-MMB
JOHN DOES 1, 6, 13, 14, and 16,             :        5:12-cv-02088-MMB
                                            :
                         Defendants.        :
                                            :
-----------------------------------------------------------X
```

## JOINT MOTION TO CONTINUE TRIAL

Plaintiff, Malibu Media, LLC ("Plaintiff"), and Defendants, John Does 1, 13, 14 and 16, (collectively, "Defendants") move for entry of an order continuing the Bellwether Trial that is currently scheduled to commence on April 2, 2013 to a date no sooner than September 2013. Plaintiff files this memorandum in support.[1]

## I. Introduction

On October 3, 2012, this Court entered an order stating that the case would go forward against John Does 1, 6, 13, 14, and 16 and scheduled a Bellwether trial for April 2, 2013. *See* [CM/ECF 30]. Thereafter, Plaintiff obtained the John Doe Defendants' identities on October 19, 2012. Plaintiff served the Defendants between October 20, 2012 and October 25, 2012. Via a status report [CM/ECF 37] and at a status hearing held on November 28, 2012 [CM/ECF 40], Plaintiff's counsel advised the Court about its plan to conduct first and third party discovery, and set forth reasons why the trial date in this case would likely need to be continued. In response,

---

[1] Defendants are merely joining Plaintiff in seeking the relief requested herein. Plaintiff's counsel drafted this memorandum.

"[t]he Court anticipated there would be some delay in the actual deposition to allow for the third parties to consider the document requests and negotiate production of documents." *See* [CM/ECF 40] at ¶ 4. As explained below, it has not been possible to prepare for a trial in April of 2013.

Consequently, *to avoid a long trial by ambush*, where discovery is taken during trial, and where key witnesses may fail to appear in response to trial subpoenas, the parties respectfully request that the trial date be continued. As will be clear upon review of this memorandum, Plaintiff has been diligently working on this matter and is making good progress. Nevertheless, *more time to prepare for trial is absolutely necessary*. Indeed, the parties need more time so that they may continue conducting discovery, take depositions, evaluate their evidence, and then meet and confer about a pretrial stipulation, *voir dire* questions, verdict forms and jury instructions.[2]

## II.    Pleadings

In late November 2012, Defendants filed four motions to dismiss. *See* 2:12-cv-02084-MMB [CM/ECF 42] and 5:12-cv-02088-MMB [CM/ECF 55, 56, 57]. On December 5, 2012, through 67 pages of legal memoranda, Plaintiff responded to the motions to dismiss. *See* 2:12-cv-02084-MMB [CM/ECF 52] and 5:12-cv-02088-MMB [CM/ECF 63, 64, 65]. This Court denied Defendants' Motions to Dismiss on December 26, 2012 and issued an opinion to that effect on January 3, 2012. *See* [CM/ECF 51, 55]. Defendants also filed answers, affirmative defenses and counterclaims. *See* [CM/ECF 34, 58, 59]. Plaintiff, in response, through one-hundred eleven (111) pages of legal memoranda, filed three motions to dismiss and three motions to strike affirmative defenses. *See* [CM/ECF 42, 43, 76-79]. And, on February 22, 2012

---

[2] Plaintiff and John Doe 6 settled. *See* [CM/ECF 81]. John Doe 13 filed a Motion to File Under Seal which is currently pending. *See* [CM/ECF 78]. As the Court is aware, Plaintiff intends to call John Doe 13 to testify at trial. This testimony will sufficiently resolve Plaintiff's dispute against John Doe 13.

and February 25, 2012, Defendants Doe 1 & Doe 14 withdrew their counterclaims.  The Court has not yet ruled on the Motions to Strike or Plaintiff's Motion to Dismiss John Doe 16's Counterclaims.  Accordingly, there are four pending pleading motions.  *See* [CM/ECF 42, 43, 78, 79].

### III.    Paper Discovery

(A)    <u>First Party Paper Discovery</u>

On November 7, 2012, Plaintiff propounded requests for documents and interrogatories on the Defendants.   Defendants failed to timely respond.  So, on December 21, 2012, Plaintiff filed a Motion to Compel.  *See* CM/ECF 49.  On January 2, 2013, this Court granted Plaintiff's Motion to Compel. *See* CM/ECF 54. And, between December 21, 2012 and January 2, 2013 each of the Defendants produced written discovery responses.  Several of the Defendants' discovery responses contained objections with which Plaintiff's counsel did not agree.  Consequently, in January 2013, counsel for the parties corresponded several times about the objections and otherwise had good faith meet and confer conferences.  In large part, these meet and confer conferences and the exchanges of paper discovery were successful in resolving the parties' discovery disputes without the necessity of Court intervention.

(i)    The Entry of a Stipulated Protective Order is Necessary to Facilitate the Exchange of Discovery

John Doe 14 objected to producing the hard drives for the computers in his household on the basis that the hard drives contain confidential medical information that is protected by HIPPA.   The parties agreed that upon the entry of a protective order, wherein the medical information could be marked Confidential Attorneys' Eyes Only, John Doe 14 would produce the hard drives for the computers in that house.  Accordingly, currently pending before the Court is the parties' Joint Motion for Entry of a Stipulated Protective Order [CM/ECF 87].  The entry

of this protective order is also a necessary condition to Comcast and Verizon complying with a third party subpoena.

The entry of a stipulated protective order is also necessary for Plaintiff to comply with discovery.  On November 15, 2012, Defendants propounded three sets of interrogatories and three sets of requests for documents.  On December 17, 2012, Plaintiff timely responded to this paper discovery.  Following good faith conferences, the parties negotiated the exchange of discovery from Plaintiff without the necessity of Court intervention.  Plaintiff requires the entry of a stipulated protective order so that it may provide Defendants' counsel with its 18 U.S.C. §2257 records identifying the actors and actresses in each of the movies involved in this case. Plaintiff has culled these records and is ready to make them available for Defendants review. However, Plaintiff cannot provide them to Defendants until the Court enters the protective order because each record contains highly sensitive and private information protected under law.

      (B)     Third Party Paper Discovery

Plaintiff propounded a third-party subpoena *duces tecum* for a 30(b)(6) deposition on Comcast and Verizon.  The ISPs' response to this discovery and their testimony is critical for Plaintiff to be able to prove its case.  To explain, Plaintiff must lay the foundation for the introduction of the correlation of the IP Addresses to Defendants for purposes of use at trial (i.e., Plaintiff must lay the foundation that the correlating documents produced by the ISPs are admissible business records.)  Plaintiff has also sought additional discovery regarding information about the reliability of the ISPs' correlating technique.  The reliability of the correlating techniques is important to address any potential argument by a Defendant that he or she was misidentified by the ISP.  Plaintiff's subpoena further seeks any DMCA notices and if applicable six strike notices sent to the Defendants.  These notices would have provided the

Defendants with actual knowledge that their internet was being used to illegally commit copyright infringements.  Since they are constantly distributing data, BitTorrent users use more bandwidth than the average internet users.  Accordingly, Plaintiff also requested that the ISPs provide Plaintiff with information about Defendants' bandwidth usage.  Plaintiff also seeks information about the content viewed by Defendants at or around the time of infringement.  This information may show that Defendant was at home watching TV at the relevant times.  Finally, Plaintiff sought information from the ISPs about certain content which Peer Media identified as having been stolen by Defendants so that Plaintiff can demonstrate that the Defendants are fans of certain stolen content.

Plaintiff also served Subpoenas Duces Tecum for a 30(b)(6) Deposition on the Internet search engines Google, AskJeeves, Yahoo, Bing, and Dogpile.  Each of the search engines, except for Dogpile, has objected to Plaintiff's subpoenas.  Dogpile provided Plaintiff with a declaration stating it did not have any of the records.  For the remaining search engines, Plaintiff has had, or attempted to have, good faith conferences and has agreed to narrow the scope of its subpoena. In due course, Plaintiff will file motions to compel the search engines' compliance if they continue to object.

Each of the search engines are requiring Plaintiff to either get a court order or Defendants' consent to comply with the subpoenas.  Accordingly, Plaintiff prepared a narrowed consent form for Defendants to sign.  Through signing this form, the Defendants consent to the search engines releasing search records for certain key words and their search history for the time periods surrounding the infringements.  The list of key words is several pages long.  And, Plaintiff worked hard on narrowing the subpoena, the consent form, and is working hard on obtaining the Defendants consent.  Defense counsel have advised Plaintiff that they do not

expect to object to the search records being released but are reviewing the consent form with Defendants.  Absent such consent, a court order compelling the search engines to comply will absolutely be necessary.  And, even with the consent, some of the search engines may require a court order compelling them to comply.

    *(i)*     *Internet Service Providers*

       (a) Comcast

On December 21, 2012, Plaintiff sent Comcast a third party subpoena.  On January 7, 2013, Comcast responded, objecting to the subpoena.  And, Comcast filed a motion to quash and a motion for a protective order.  *See* CM/ECF 72.    Subsequently, the parties have talked extensively and resolved the objections.  Pursuant to Section 551 of the Cable Act, Comcast objected to complying absent a court order.  Accordingly, Plaintiff filed a motion for entry of an order authorizing Comcast to comply.  *See* CM/ECF 88.    That motion is pending.  Assuming that the order authorizing Comcast to comply is entered by the end of March, Plaintiff is planning on taking Comcast's deposition in late April.

       (b) Verizon

On December 28, 2012, Plaintiff sent Verizon a third party subpoena.  On January 15, 2013 Verizon objected to the subpoena.  Since then, Plaintiff has engaged in numerous good faith conversations with Verizon in an attempt to reconcile its objections.  Plaintiff is hopeful that Verizon and it will be able to agree on the scope of the subpoena moving forward.  Nevertheless, pursuant to Section 551 of the Cable Act, Verizon objected to complying absent a court order.  Accordingly, Plaintiff filed a motion for entry of an order authorizing Verizon to comply.  *See* CM/ECF 88.    That motion is pending.  Assuming that the order authorizing Verizon to comply is entered by the end of March, and that Verizon drops its other objections, Plaintiff is planning on taking Verizon's deposition in late April.

Even after the order authorizing Verizon to comply is entered, Plaintiff may be forced to file a motion to compel Verizon to respond to the subpoena in the Northern District of Texas[3].  If that is the case, Plaintiff will not be able to receive the requested information from Verizon necessary for its case until the Northern District of Texas issues an order.  Plaintiff expects to take Verizon's deposition in late April or May depending on whether it will be necessary for Plaintiff to move to compel and the timing of the entry of any such order compelling Verizon to comply.

*(ii)    Search Engines*

Plaintiff seeks discovery from Internet search engines for two purposes.  First, Plaintiff's goal is to identify Internet searches by Defendants' IP addresses which led to search results with links to download the infringing content.   Second, Plaintiff seeks a general search of the Defendants' search records at or around the time of infringement in order to tie Defendants to the infringements.  Plaintiff served a subpoena on each of the following search engines and each search engine objected.  As stated above, Plaintiff narrowed the scope of its subpoena and prepared a written notice of consent form for Defendants.  Presently, Plaintiff is attempting to obtain the consent from the Defendants to allow the search engines to provide Plaintiff with the records.

(a) Ask Jeeves

On January 4, 2013, Plaintiff sent Ask Jeeves a third party subpoena for deposition and to produce documents on Defendants' search history and results.   On January 9, 2013 Ask Jeeves objected to the subpoena.  After a conference call with Ask Jeeves counsel, Ask Jeeves agreed it would consider providing the information if Plaintiff limited the scope of its subpoena and Plaintiff received the Defendants' consent.

---

[3] Verizon's headquarters are located within the Northern District of Texas.

(b) Google

On January 3, 2013, Plaintiff sent Google a third party subpoena for deposition and to produce documents on Defendants' search history and results.  Google objected on January 10, 2013.  Plaintiff has made numerous calls and attempts to reach Google's legal department to discuss these objections but has been unable to teleconference.  A motion to compel may be necessary.

(c) Bing

On January 3, 2013, Plaintiff sent Bing a third party subpoena.  On January 10, 2013, Microsoft responded objecting to the subpoena and requesting Plaintiff limit the scope of the subpoena.  Plaintiff has had good faith conferences with Microsoft in which it will consider providing the records once Plaintiff limits the scope of the subpoena and receives Defendants' consent.

(d) Yahoo

On January 4, 2013, Plaintiff sent Yahoo a third party subpoena.  On January 25, 2013 Yahoo responded and objected to the subpoena on the basis that Plaintiff had not provided Yahoo with a username for the Defendants.  Plaintiff has had several conversations with Yahoo's legal department in an effort to explain that the Yahoo username is not necessary.  Plaintiff plans on rescheduling its deposition with Yahoo in order to move forward with its request for documents.

(iii)    *Peer Media: Third Party Scanning Company*

In early November, Plaintiff requested informal discovery from Peer Media, a BitTorrent scanning company that scans BitTorrent and reports infringement and issues DMCA notices on behalf of mainstream movie studios.  Plaintiff requested Peer Media provide Plaintiff with

records of any activity it recorded by Defendants' IP addresses.  On November 29, 2012 Peer Media sent Plaintiff informal discovery with a list of movies that the Defendants' IP addresses have downloaded through BitTorrent.  Peer Media provided Plaintiff with records demonstrating that John Doe 16's IP address was used to download 11 mainstream movies during the months of April, May, and June of 2012.  John Doe 1's IP address was used to download 5 movies between December 2011 and February 2011.  Plaintiff intends to take Peer Media's deposition in order to lay the foundation to introduce these records into evidence as business records.

IV.    Party Depositions

(i)    John Doe 1: General Background.

Through discovery, Plaintiff learned that John Doe 1 built his computer, used BitTorrent and other file sharing programs in the past, installed a BitTorrent Client onto his computer, had secure wireless internet router, only had one computer in his household, and was the dominant user of his the only computer in the household.  Allegedly, John Doe 1 had a dream that he would get caught stealing movies and so, he asserts, he stopped prior to the detection of the infringements in this suit.  Plaintiff doubts the veracity of this statement.  John Doe 1 identified three roommates and a brother that sometimes used his computer.  John Doe 1 and his roommates do not currently live together.  John Doe 1 recently provided Plaintiff with the telephone numbers of two of the three roommates.

John Doe 1 has also informed Plaintiff that he is being deployed to serve in the Armed Forces in Afghanistan for a year and plans on requesting a stay of trial.  Plaintiff has no objection to this stay but does plan on taking John Doe 1's deposition prior to his deployment.   Further, Plaintiff plans to proceed with third party discovery in his absence.

(ii)     John Doe 1 Deposition Schedule:

On March 12, 2013, Plaintiff is taking John Doe 1's deposition.

(iii)     Additional Discovery

Plaintiff is working on scheduling the depositions of the three roommates and John Doe 1's brother. Toward that end, Plaintiff has corresponded with two of the roommates and is attempting to correspond with the third roommate and John Doe 1's brother. Ultimately, to obtain the roommates' addresses, and compel them to testify, third party subpoenas to the roommates' cell phone companies may be necessary to identify their current addresses. Plaintiff is working on this issue right now.

(a) John Doe 14

John Doe 14 has objected to the majority of Plaintiff's discovery and has refused to provide his hard drives for inspection on the grounds that they contain protected information under HIPAA. Further, John Doe 14 claims to not be able to recall whether he had a secured wireless router and has refused to provide Plaintiff with the names of the individuals residing in his house. John Doe 14 has two neighbors that could possibly be in the range of his router. John Doe 14's router, however, is not known for not having a particularly strong range. It also has a number of security features and allows for easy enabling of wireless passwords. John Doe 14 has 3 desktop computers, 2 laptop computers, and 1 iPad in his residence.

(i)     John Doe 14's deposition schedule

On March 13, 2013 Plaintiff is taking John Doe 14's deposition.

(ii)     Additional discovery

Plaintiff intends to take the depositions of both of John Doe 14's neighbors. Plaintiff will also take the depositions of the other individuals residing in John Doe 14's household once John

Doe 14 provides this information to Plaintiff.    Plaintiff also needs to analyze all of the computers in John Doe 14's household.

(b) John Doe 16

Through discovery, Plaintiff has learned that John Doe 16 had a secured wireless router. John Doe 16 has two laptops and one desktop in her household, which at the time of infringement she shared only with her husband.  Plaintiff's investigator recorded John Doe 16's IP address infringing Monday, February 13, 2012 at 7:38pm, Saturday, February 18, 2012 at 11:22pm, and Sunday, February 19, 2012 at 12:52am until 1:23am.  Plaintiff intends to inspect not only the hard drive provided by John Doe 16 but also the two remaining hard drives in her household.

(i)      John Doe 16's deposition schedule

On March 11, 2013, Plaintiff is taking John Doe 16's deposition.

(ii)      Additional Discovery

On March 11, 2013, Plaintiff is also taking the deposition of John Doe 16's husband.

V.    Experts

Plaintiff's expert witnesses are currently in the process of Phase 1 of their report, which includes examining and extensively testing IPP's software in order to determine its reliability. Plaintiff anticipates that its experts will complete Phase 1 in about two weeks and begin to prepare its report.  Afterwards, Plaintiffs experts will examine each of Defendant's computers in order to determine whether the computers contain Plaintiff's movies, BitTorrent software, or evidence that files have recently been deleted.

At this point, Plaintiff's experts have received John Doe 1's hard drive and one of John Doe 16's hard drives.  Plaintiff expects that it will be necessary to examine all of John Doe 16's

hard drives as well as each of John Doe 14's hard drives.  This may require a motion to compel or additional time for the requisite copies to be made.     Plaintiff expects that the investigators reports will be finished, at the earliest, in the beginning of April.

VI.   IPP Limited

IPP, Limited is the scanning company that detected the Defendants' infringements.  It is located in Germany.  Plaintiff has preparing written deposition questions for IPP, Limited and expects to propound them over the next couple of weeks.  Plaintiff expects that Defendants will also submit questions.

VII.   Supplemental Discovery

Plaintiff anticipates after it completes its first round of discovery that supplemental discovery will needed.  As stated above, Plaintiff will need to examine additional hard drives which may lead to more deposition topics.   Additionally, the responses to the third party discovery may create additional deposition topics.  Plaintiff anticipates this process could extend from May 2013 to June 2013.

VIII.   Pretrial

Before trial, Plaintiff anticipates engaging in a cooperative pretrial process with the Defendants and their counsel.  Through this process, Plaintiff hopes the parties will agree to exchange witness lists, exhibit lists, proposed jury instructions, proposed verdict form, and attempt to stipulate to the admission of certain facts and to the entry into evidence of certain exhibits.   Absent any such agreement, Plaintiff will likely move for the entry of an order setting out a pretrial schedule which compels the parties to perform the above actions.  The foregoing actions are all necessary to prepare for a charging conference and to reduce the time needed for trial and trial preparation.  Further, Plaintiff may need to prepare motions *in limine*.  Without

engaging in this pretrial process, the trial would be considerably more complicated for the parties and the Court. Plaintiff anticipates this process will likely take place in July and August of 2013.

In light of all of the foregoing, the parties anticipate that they will be ready for trial by no earlier than September of 2013.[4] Setting the trial during or after September 2013 is in everyone's best interests.

IX.   Legal Argument

"[C]ontinuances are routinely granted for nothing more compelling than the convenience of the parties or the Court." *Linear Products, Inc. v. Marotech, Inc.*, 189 F. Supp. 2d 461, 468 (W.D. Va. 2002). In upholding the Eastern District of Pennsylvania's decision to grant a continuance of an evidentiary hearing, the Third Circuit found that absent "procrastination, dilatory tactics, neglect, or bad faith" a continuance was proper. *See Concerned Citizens of Bushkill Tp. v. Costle*, 592 F.2d 164, 172 (3d Cir. 1979). The Third Circuit has also considered whether "the granting of a continuance would . . . unduly prejudice[] the other parties." *Gaspar v. Kassm*, 493 F. 2d 964, 969 (3d Circ. 1974) (holding that continuance was proper absent "procrastination, bad planning or bad faith on the part of [Defendant] or his counsel.") The Circuit Court further held, "we can see no pressing necessity for haste". *Id.* Such is the case here, Plaintiff has been and is working really hard preparing this case for trial. From undersigned's experience, the average copyright case lasts between twelve months and two and half years. Here, the Defendants were only served in late October in this case. Despite substantial efforts, it has simply not been possible to collapse one to two years of work into four months.

---

[4] Plaintiff's counsel has a trial scheduled in an unrelated patent matter during the month of August and expects the pretrial process to last into July.

Further, the case truly is complicated.  To wit: there are numerous parties, third party witnesses, complex technological issues, outside testing of Plaintiff's investigator's scanning technology, examination and analysis of multiple computers' hard drives, and extensive discovery for each Defendant.

In the *Sutherland* case (*supra*), "[z]eal to dispose of pending litigation, [although] commendable in itself . . . resulted in deprivation of reasonable opportunity to make adequate preparation for trial."  *Id.*  And, the Circuit Court held that the lower Court "cannot ignore the fact that this was a patent infringement case which in its nature would involve *technical and elaborate presentation*."  *Id.* (Emphasis added).  *See also Corbett v. Free Press Ass'n*, 50 F.R.D. 179, 182 (D. Vt. 1970) (holding that "a continuance may readily be had for discovery purposes"); *Smith-Weik Mach. Corp. v. Murdock Mach. & Eng'g Co.*, 423 F.2d 842, 845 (5th Cir. 1970) (holding that continuance should have been granted in light defense counsel's inability to appear due to illness and the complexity of the case.)  Accordingly, in light of the technological issues involved in this case, and the other complexities, denial of a continuance would result in the "deprivation of reasonable opportunity to make adequate preparation for trial."

This Court ordered the Bellwether trial in order to test Plaintiff's resolve and its claims. The validity of the Bellwether trial process rests upon Plaintiff being given a fair opportunity to litigate these matters.  Respectfully, four months has proven to be an in an insufficient amount of time.  Accordingly, without a continuance Plaintiff will be severely prejudiced in its ability to prove its case.  Indeed, as demonstrated above, despite the extraordinary amount of time spent and hard work performed by Plaintiff to date, there is still a massive amount of work to be done. Requiring the Parties to hurriedly finish discovery, evaluate evidence, meet and confer about

pretrial stipulations, and compose voir dire questions, verdict forms, and jury instructions in the next month would severely inhibit all Parties' efforts.  It would result in a trial by ambush.  And, key third party witnesses may fail to appear thus potentially devastating Plaintiff's ability to prove its case.  No reasonable person who evaluated the quantum of work that has been done and is being done now would conclude that Plaintiff engaged in "procrastination, dilatory tactics, neglect, or bad faith."  Plaintiff has worked diligently and constantly through the progression of the litigation to this point.  Finally, no prejudice to the Defendants will result should the Court grant a continuance.  Indeed, all Parties have joined in this motion.

This Motion is made in good faith by all involved parties.  For the foregoing reasons, this Court should grant the subject motion.

WHEREFORE Plaintiff respectfully requests that the Court enter an order continuing the Bellwether trial to a date no sooner than September 2013.

Dated:  March 4, 2013

Respectfully submitted,

By: /s/ *M. Keith Lipscomb*
M. Keith Lipscomb (429554)
klipscomb@lebfirm.com
LIPSCOMB, EISENBERG & BAKER, PL
2 South Biscayne Blvd.
Penthouse 3800
Miami, FL 33131
Telephone: (786) 431-2228
Facsimile:  (786) 431-2229
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.   I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: */s/ M. Keith Lipscomb*

## SERVICE LIST

Leonard J. French, Esquire                                          *CM/ECF*
The Law Offices of Leonard J. French
P.O. Box 9125
Allentown, PA 18105
Email: ljfrench@leonardjfrench.com
*Attorney for Doe 1*

Jordan Rushie, Esquire                                          *CM/ECF*
2424 East York Street, Suite 316
Philadelphia, PA, 19125
Email: Jordan@FishtownLaw.com
*Attorney for John Doe 13*

Marc J. Randazza, Esquire                                          *CM/ECF*
Randazza Legal Group
6525 W. Warm Springs Rd., Ste. 100
Las Vegas, NV 89118
rlgall@randazza.com
*Attorney for John Doe 13 (pro hac vice pending)*

Thad M. Gelsinger, Esquire                                          *CM/ECF*
The Law Firm of Leisawitz Heller
2755 Century Boulevard
Reading, PA 19610
tgelsinger@LeisawitzHeller.com
*Attorneys for John Doe 14*

## <u>SERVICE LIST (CONTINUED)</u>

Ronald A. Smith, Esq.                                    *CM/ECF*
Ronald A. Smith & Associates
1617 JFK Boulevard
Suite 1240
Philadelphia, PA 19103
Email: ronaldasmithesq@aol.com
*Attorneys for John Doe 16*