# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MALIBU MEDIA, LLC,
                Plaintiff

vs.                          NO.: 2:12-CV-02078-MMB

JOHN DOES 1, 13, 14 AND 16
                Defendant

## DEFENDANT, JOHN DOE 16'S AMENDED COUNTERCLAIM

### Parties

1. Defendant/Counterclaim Plaintiff, JOHN DOE 16, is an adult individual residing in Pennsylvania.

2. On information and belief, Plaintiff/Counterclaim Defendant, MALIBU MEDIA, LLC., is a limited liability corporation located at 31356 Broad Beach Road, Malibu, CA 90265.

### Jurisdiction and Venue

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331, 1338, 1367, 2201, 2202.1. The counterclaims are related to the claims in the original action such that they form part of the same case or controversy and arise out of common facts, transactions, or occurrences as provided under Fed.R.Civ.P. 13 and 20.

4. Personal jurisdiction is proper over Plaintiff/Counterclaim Defendant, because Plaintiff/Counterclaim Defendant has purposefully availed itself to this Court's jurisdiction as a result of filing the original action.

5. Venue is proper pursuant to 28 U.S.C. 1391.

### Background

6. Defendant incorporates all allegations contained within Paragraphs 1 through 6 above as though full set forth herein at length.

7. This misguided lawsuit is one of several hundred lawsuits filed by Plaintiff, MALIBU MEDIA, LLC around the United States over the past year to profit purely from filing copyright infringement claims and exacting settlements as a business model. As a practice, MALIBU MEDIA, LLC, sues multiple anonymous John Does in the relevant jurisdiction, and then whittles down the anonymous Defendant list as they settle without litigating the claims on the merits.

8. Plaintiff's for-profit business model has been extensively documented in the news media.

9. Defendant, JOHN DOE 16, never downloaded a pornographic film through the internet or through the Bit Torrent network.

10. Defendant, JOHN DOE 16 has no knowledge of any other person or entity using his computer, router, or modem to download a pornographic film.

11. Plaintiff relies on questionable forensic evidence such as that from IPP Limited when pursing Defendants on Internet Protocol addresses alone to justify the expedited Discovery used to seek settlements from potential Doe Defendants.

12. In the Commonwealth of Pennsylvania, Plaintiff has filed dozens of lawsuits against several hundred Defendants and substantially less against any actual named and served Defendants. It appears that Defendant, JOHN DOE 16, is one of those examples to "encourage the others" into seeking settlements.

13. This business model is further complicated by the fact that the adult entertainment company's attorney is paid a portion of any settlements received, establishing a potentially champertous relationship that can be easily abused without an incentive for further scrutiny of date provided by the forensics investigators.

14. To further improve the likelihood that the targets will settle, it is Defendant's belief that Plaintiff's actively draw infringers to their films, and do so by uploading an archive containing a plurality of films to the internet for unsuspecting potential Defendants to access. This digital file often contains multiple registered works which Plaintiffs use to seek additional damages from Doe Defendants.

15. Once the digital file becomes used it is available to be searched and downloaded via Bit Torrent, the investigating company can track IP addresses that may or may not be associated with the Bit Torrent download. The tracking technology used by forensic investigation companies such as IPP Limited is not reliable and has resulted in "false positives" showing infringement by other devices such as a printer, router, or telephone device, which cannot perform the download alleged by plaintiffs. The software used by forensic investigation companies cannot necessarily distinguish between IP addresses that are purposely accessing the Bit Torrent tracker to download and distribute the file or people who mistakenly think the file name involves other content which may not necessarily be infringing. The software used by forensics investigation companies also cannot from Defendant's understanding provide an adequate time stamp to demonstrate that the alleged IP address downloaded an entire work that would constitute an act of copyright infringement for the purposes of this District nor distinguish from a party inadvertently accessing the work and ceasing the activity momentarily afterwards.

16. Upon collecting a sufficient number of IP addresses, a law firm working with the pornography studio and forensic investigator files a Federal lawsuit cleaning that multiple individuals, sometimes numbering in the thousands, downloaded the alleged pornographic work. The Complaint does not name individuals but instead identifies Defendants as "John Does" that are the subscribers to the IP addresses they seek information on. Plaintiffs also erroneously

claim in the Complaint without basis in that the subscriber to the IP address is the actual infringer. This statement is highly erroneous because it does not consider several common sense factors and relies on a lack of technical understanding of computer networking to be accepted.

17. An error rate of at least 30% has been cited for the forensics investigation companies such as IPP Limited. In a case out of the Southern District of New York, Plaintiff's counsel estimated "that 30% of the names turned over by IPSDs are not those of individuals who actually downloaded or shared copyrighted material." Opin and Oder, Digital Sin, Inc. vs. John Does 1-176, 2012 W.L. 263491, 12-CV-00126 (S.D.N.Y. Jan. 30, 2012) at p. 5. Even more concerning is that the Plaintiffs are willing to rely on dubious information when attempting to encourage Defendants to settle the action without a review of the strength of the individual claim.

18. A prosecutor bringing similar actions for say access to obscenity or child pornography in the context of federal criminal prosecution using forensics investigation techniques with a 30% or above error rate would be brought up on charges of criminally actionable prosecutorial misconduct and/or abuse of process. Moreover, no civil litigator would file lawsuits with an error rate of 30% without having to consider the consequences under Federal Rules of Civil Procedure Rule 11 and 28 U.S.C. 1927.

19. The pornographic film company acting as Plaintiff's represents to the courts in their Complaints that the Do Defendants are all liable for the downloading in question, that the acts of infringement occurred using only the Doe Defendant's IP addresses, and that the ISP can accurately correlate the IP address to the Doe Defendant's true identify (rather than a subscriber). The Plaintiff film company makes these claims in spite of knowledge that the actual identity, conduct, and intent of any of the alleged Defendants are unknown to the Plaintiffs.

20. Moreover, the statements are made to the court despite knowledge that the IP addresses being represented do not always represent the proper person or Defendant accused of infringing activity. IP addresses may be assigned or attached to many other devices capable of operation through a router or modem. Several federal courts have affirmed this idea. *See, e.g., In re Bit Torrent Adult Film,* supra, 2:11-cv-03995, May 1, 2012, at p. 6; *Malibu Media LLC v. John Does 1-10,* 2:12-cv-3623, Order, June 27, 2012.

21. Plaintiff's statements are made to the Court without consideration of the various factors that could be exculpatory to a particular subscriber or alleged Defendant. Plaintiffs in these actions have the knowledge that the alleged act of infringement could have been performed by a third party with a different computer connected to the IP address without the subscriber's knowledge or consent. With the proliferation of wireless networks and consumer wireless networking technology, the alleged infringing activity could be performed by any person with a computer within a wireless network's range, a fact that Plaintiffs are well aware of. The activity could also have been performed remotely by a hacker who has gained access to the subscriber's computer or even an individual spooking an IP address. These mitigating factors are not accounted for by the International IP tracker software used by Plaintiff in the present action or any of the forensic investigation companies such as IPP Limited.

22. Defendant's cause of action arises under the Copyright Laws of the United States for a declaratory judgment of non-infringement pursuant to the Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202, to the extent that an actual controversy exists between Defendant and Plaintiff.

## PARTIES

23. Malibu Media, LLC claims copyright ownership of the works entitled Anneli Leila Menage a Trois (the "WORK").

24. Defendant Doe is an individual who subscribed to an internet service provider at his/her residence.

## NO INFRINGEMENT

25. Malibu Media, LLC, has incorrectly asserted in its claim that Defendant Doe has willfully infringed its copyright in the WORK.

26. Plaintiff's alleged claims are neither well grounded in fact nor warranted by existing law or a good-faith argument for the extension, modification or reversal of existing law.

27. Defendant Doe asserts that he/she has never used Bit Torrent nor owned a computer that was connected to Bit Torrent from his/her residence at the time of the alleged infringing activity.

28. Despite being placed on notice that Defendant Doe did not engage in any infringing activity, the Plaintiff still has persisted in their suit against Defendant.

29. On information and belief, Plaintiff's only evidence to support their claims against Defendant Doe is a listing of an internet protocol address attached to the Compliant as an Exhibit, allegedly from a peer to peer file sharing program.

30. Defendant subscribed to high-speed internet access from Verizon Internet Services, hereinafter referred to as "Defendant's ISP". Defendant's ISP provided account holders with dynamic IP addresses using Dynamic Host Configuration Protocol ("DHCP"), a technology that assigns a different IP address to each subscriber each time the user accesses the internet via the ISP.

31.     DHCP assignment of an IP address by Defendant's ISP does not actually indicate who was accessing the internet or which computer was used to access the internet. Several other factors including an open wireless network or use of malicious computer software that controls a subscriber's computer and access to the internet are common alternate causations that explain infringing activity when a user lacks knowledge of the infringement or the protocols used to carry out infringing activity. Defendant Doe has never had a Bit Torrent application, does not have a computer wherein he/she could install a Bit Torrent application, and has never engaged in any acts of infringement described in Plaintiff's Complaint.

32.     On information and belief, the purpose of the lawsuit filed against Defendant Doe is not to seek appropriate relief from the Courts. Rather the lawsuit against Defendant Doe and other Does is intended to send a message of intimidation to Bit Torrent users using the Courts.

33.     Defendant Doe hereby incorporates by reference all affirmative defenses not Ordered to be Stricken or Amended in Defendant's original Answer and Counterclaim previously filed.

## FIRST CAUSE OF ACTION
### Declaration of No Infringement of Copyright

34.     Defendant Doe hereby incorporates by reference all allegations contained within Paragraphs 1 through 34 of this Counterclaims as though the same were set forth more fully herein at length.

35.     Malibu Media, LLC has incorrectly asserted in its claim that Defendant Doe has willfully infringed its copyright in the work via alleged downloading using Bit Torrent.

36.     Defendant has not infringed any of Plaintiff's exclusive rights under 17 U.S.C. §106(1)-(6).

37. Defendant has not infringed Plaintiff's copyright in the Work and is entitled to a declaratory judgment of non-infringement to that effect.

## SECOND CAUSE OF ACTION
### Abuse of Process

38. Defendant Doe hereby incorporates by reference all allegations contained within Paragraphs 1 through 38 of this Counterclaims as though the same were set forth more fully herein at length.

39. Plaintiff has wrongly and improperly relied on the Federal Court System in an effort to extract money from Doe #16, the other individuals in the present action, and countless others for other infringement actions.

40. The present case was filed with the intent of generating the subpoenas which would provide the identifying information of the individual defendants and not for the purpose of litigating the matter.

41. At the time the present action was filed, Plaintiff lacked knowledge as to the identities of the various Doe Defendants and, as a result, Plaintiff could not accurately represent to this court that a reason to join all of the alleged infringers that fell under the joinder rules. Plaintiff's own Exhibit demonstrates that the acts in question occurred over a several week period of time and took place on separate distinct dates and times. Therefore, Defendant Doe should have been sued individually and each subpoena issued separately. By filing the present action using one filing fee instead of several, Plaintiff has saved itself several thousand dollars in filing fees which should have been paid to the Court.

42. Plaintiff's goal in these lawsuits appears to be quickly settling with a large number of subscribers as potential Defendants as a revenue generating model, and then pursuing

parties who fail to settle by either continued harassment, a default judgment, or an action against a Defendant based on questionable allegations of unlawful access to a pornographic work.

43. Although it is clear that Plaintiff will argue that the resulting nature of these actions is monetary compensation for infringement of copyrighted material against Defendants who wouldn't ordinarily pay for access to Plaintiff's work, Plaintiffs should utilize the Federal Court System in good faith and with clean hands. "The federal courts are not cogs in a Plaintiff's copyright-enforcement business model. The Court will not idly watch what is essentially an extortion scheme, for a case that Plaintiff has no intention of bringing to trial." *Malibu Media, LLC vs. Joe Does 1-10,* 2:12-cv-03623, Order, June 27, 2012, at p. 6. This Plaintiff has used the judicial system to intimidate several thousand victims into reaching a settlement totaling easily into the millions of dollars. As a result, Plaintiff's motives herein do matter.

44. Plaintiff's actions have damaged Defendant in his/her personal life and professional career. The present matter has caused substantial stress and embarrassment. Although he/she has attempted to minimize the damage to his/her reputation and professional career, the damage has been done and will be worsened were he/she to be identified and named as a Defendant in the present matter.

WHEREFORE, Defendant prays that this Honorable Court grant the following relief:

(a) Judgment in favor of Defendant denying Plaintiff's requested relief and dismissal of Plaintiff's Complaint with prejudice by this Court;
(b) Judgment in favor of Defendant and against Plaintiff on both of Defendant's Counterclaims;
(c) Defendant be awarded reasonable attorneys' fees, sanctions, costs, and other such awards that are available according to federal statute and state laws;
(d) Plaintiff be held liable for punitive and exemplary damages awarded to the maximum extent available according to federal statue and state laws;

(e)     That the Court award such other action that is just, proper and equitable in this matter.

BY: _____
RONALD A. SMITH, ESQUIRE

## VERIFICATION

I, RONALD A. SMITH, ESQUIRE, hereby state that I am the Attorney for Defendant, John Doe 16, in the within action, and verify that the facts set forth in the foregoing Amended Counterclaim are true and correct to the best of my knowledge, information and belief with the understanding that false statements herein are made subject to the penalties of 18 Pa.C.S.A. §4904, relating to unsworn falsification to authorities.

BY: _____
RONALD A. SMITH, ESQUIRE

DATED: 3/18/13