IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| MALIBU MEDIA, LLC, Plaintiff, v. JOHN DOES 1, 13, 14, and 16 Defendants. | CIVIL ACTION NO. 12-2078 |
|---|---|

Baylson, J.                                                                                                                                        March 6, 2013

**MEMORANDUM RE: MOTIONS TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES AND TO DISMISS DEFENDANTS' COUNTERCLAIMS**

The following motions to strike and to dismiss, filed by Malibu Media, LLC with respect to the Answers filed by John Does 1, 14, and 16 are before this Court:

| Malibu's Motions | Concerning Defendant | Response |
|---|---|---|
| Motion to Dismiss John Doe 16's Counterclaims for Failure to State a Claim (ECF 42) | Doe 16 (Answer is ECF 34, filed 11/8/12) | Response (ECF 44, filed 12/5/12) |
| Motion to Strike Answer or Summarily Dismiss John Doe 16's Affirmative Defenses (ECF 43) | Doe 16 | Response (ECF 45, filed 12/11/12) |
| Motion to Dismiss John Doe 1's Counterclaims (ECF 76) | Doe 1 (Answer is ECF 58, filed 1/9/13) | Stipulation as to Voluntary Dismissal (ECF 97, filed 2/22/13) |
| Motion to Strike or Summarily Dismiss John Doe 1's Affirmative Defenses (ECF 78) | Doe 1 | Response (ECF 92, 2/19/13) |
| Motion to Dismiss John Doe 14's Counterclaims (ECF 77) | Doe 14 (Answer is ECF 59, filed 1/9/13) | Stipulation as to Voluntary Dismissal (ECF 98, filed 2/22/13) |
| Motion to Strike or Summarily Dismiss John Doe 14's Affirmative Defenses (ECF 79) | Doe 14 | Response (ECF 90, 2/19/13) |

I.      **Factual and Procedural History**

The Amended Complaints in these consolidated cases allege Copyright Act violations by Defendants for downloading pornographic movies produced by Plaintiff, Malibu Media, LLC. By Order of December 26, 2012, this Court denied Defendants' Motions to Dismiss the Amended Complaints, holding that under Fed. R. Civ. P. 12(b)(1) (failure to state a claim), 12(b)(6) (standing), and 12(b)(7)(joinder of necessary parties), Malibu's Amended Complaints complied with all relevant pleading standards. (See ECF 51 & 55).[1]

Unlike Does 1, 6, 13, and 14, John Doe 16 did not move to dismiss the Amended Complaint but instead filed an Answer, Affirmative Defenses and Counterclaims on December 5, 2012. (ECF 34). Doe 16 raised ten affirmative defenses: failure to state a claim, fair use, invalid copyright, implied license, misuse of copyright, abandonment, good faith intent, first sale doctrine, Online Copyright Infringement Liability Limitation Act, and unclear hands. (Id.). Doe 16 also included four counterclaims: misuse of copyright, and requests for declaratory judgment of fair use, implied license, and non-infringement. On December 11, 2012, Malibu filed a

---

[1] In an earlier stage of this litigation, this Court denied Defendants' motions to quash third-party subpoenas filed by Malibu under Fed. R. Civ. P. 45 on the Internet Service Providers (ISPs) that had assigned IP addresses to Defendants. (See Order for Expedited Proceedings Leading to Bellwether Trial, at 10-13) (ECF 21 & 22). Third-party subpoenas are routinely filed on ISPs in BitTorrent cases, as plaintiffs seek to obtain identifying information for John Doe Defendants otherwise represented by IP addresses. District courts have parted ways in their resolutions of such motions. Compare Raw Films, Ltd. v. John Does 1-15, 2012 WL 1019067, at *5-8 (E.D. Pa. Mar. 26, 2012) (denying defendants' motions to quash); and Malibu Media, LLC v. John Does 1-15, 2012 WL 3089383, at *5-11 (E.D. Pa. July 30, 2012) (Kelly, J.) (same); with In re BitTorrent Adult Film Copyright Infringement Cases, 2012 WL 1570765, at *6-10 (E.D.N.Y. May 1, 2012) (granting defendants' motions to quash); and Mary Pat Gallagher, Judges Limiting Subpoenas in Porn-Downloading Suits, New Jersey Law Journal, Mar. 5, 2013 (noting that "judges in the District of New Jersey are refusing to allow Internet service providers to be subpoenaed wholesale" out of a concern "that the alleged infringers are not necessarily the customers whose IP addresses were involved in the BitTorrent activity"). This Court determined the subpoenas were warranted under Fed. R. Civ. P. 45 because they would not cause an undue burden on Defendants, because there was good cause for ordering such discovery, and because Defendants' First Amendment rights to remain anonymous could be adequately protected by granting their request to proceed anonymously. (ECF 21).

2

Motion to Strike the Affirmative Defenses (ECF 43) and a Motion to Dismiss the Counterclaims (ECF 42).

After this Court denied Defendants' Motions to Dismiss Malibu's Amended Complaint, by Order of December 26, 2012, John Doe 1 filed an Answer, Affirmative Defenses and Counterclaims on January 9, 2012. (ECF 58). Doe 1 included nine affirmative defenses: failure to state a claim, fair use, invalid copyright, implied license, misuse of copyright, abandonment, good faith intent, Online Copyright Infringement Liability Limitation Act, and unclear hands. (Id.). Doe 1 also included three counterclaims: abuse of process, intentional infliction of emotional distress, and invasion of property. (Id.). On February 4, 2012, Malibu filed a Motion to Strike or Summarily Dismiss the Affirmative Defenses (ECF 78) and a Motion to Dismiss the Counterclaims (ECF 76).

John Doe 14 also filed an Answer, Affirmative Defenses and Counterclaims on January 9, 2012. (ECF 59). Doe 14 raised eighteen affirmative defenses: failure to state a claim, statute of limitations, lack of subject matter jurisdiction for failure to register, lack of originality, invalidity or unenforceability of copyright, fair use, estoppel, unclean hands, waiver, authorized use, license, failure to mitigate damages, forfeiture and abandonment, misuse of copyright. Innocent intent, unconstitutionality of excessive damages, bar to statutory damages, and bar to injunctive relief. (Id.). Doe 14 included the same three counterclaims as those alleged by Doe 1: abuse of process, intentional infliction of emotional distress, and invasion of property. (Id.). On February 4, 2012, Malibu filed a Motion to Strike or Summarily Dismiss the Affirmative Defenses (ECF 79) and to Dismiss the Counterclaims (ECF 78).

On February 22, 2013, Malibu along with Does 1 and 14 filed Stipulations to Dismissal, agreeing to voluntarily dismiss Doe 1 and Doe 14's Counterclaims without prejudice. (ECF 97 & 98).

Doe 13 has not yet filed an Answer to Malibu's Amended Complaint.

Doe 6 has been voluntarily dismissed and is no longer a party to this case. (ECF 82).

## II.   Legal Standards

### A.  Motions to Strike Affirmative Defenses

Plaintiff moves to strike Defendants' affirmative defenses pursuant to Fed. R. Civ. P. 12(f). Rule 12(f) provides: "The court may strike from a pleading an insufficient defense of any redundant, immaterial, impertinent, or scandalous matter." As a general matter, motions to strike are disfavored and should only be granted when "the insufficiency of the defense is 'clearly apparent.'" Cipollone v. Liggett Grp., Inc., 789 F.2d 181, 188 (3d Cir. 1986); Vurimindi v. Fuqua Sch. of Bus., 2011 WL 3803668, at *2 (E.D. Pa. Aug. 29, 2011). "The underpinning of this principle rests on a concern that a court should restrain from evaluating the merits of a defense where, as here, the factual background for a case is largely undeveloped." Cipollone, 789 F.2d at 188.

The Third Circuit has yet to opine on whether the pleading standards under Twombly and Iqbal apply to the pleading of affirmative defenses, but the majority of district courts in this Circuit to address the issue have concluded they do not. E.g., Weed v. Ally Fin. Inc., 2012 WL 2469544, at *3 (E.D. Pa. June 28, 2012) ("[M]any courts, including the majority of district courts in this Circuit, have persuasively argued that *Twombly* and *Iqbal* does not apply [to the pleading of affirmative defenses]."); Tyco Fire Prods. LP v. Victaulic Co., 777 F. Supp. 2d 893, 896 (E.D. Pa. 2011) (concluding Iqbal's pleading requirements do not apply to affirmative defenses); Bayer

4

CropScience AG v. Dow AgroSciences LLC, 2011 WL 6934557, at *1-2 (D. Del. Dec. 30, 2011) ("[T]his Court agrees with those courts have found *Twombly/Iqbal* inapplicable to affirmative defenses."). The reason courts have drawn the distinction between the pleading of claims and counterclaims and the pleading of affirmative defenses is that the Federal Rules *themselves* draw a distinction: while claims and counterclaims are governed by Fed. R. Civ. P. 8(a)(2), which requires that "claim[s] for relief" contain "a short and plain statement of the claim showing that the pleader is entitled to relief," affirmative defenses are governed by Rule 8(c)(1), which provides that defendants need only "affirmatively state any avoidance or affirmative defense." As Rule 8(c)(1) makes clear, affirmative defenses are used to preserve a defendant's potential arguments at trial by providing notice to the other party of issues to be raised. Requiring a defendant to comply with Iqbal's plausibility standard at such an early stage of a lawsuit would be unrealistic and unfair to defendants. See Creative Consumer Concepts, Inc. v. Kreisler, 563 F.3d 1070 (10th Cir. 2009).

Accordingly, this Court will use a pre-Iqbal notice pleading standard to determine whether Defendants' affirmative defenses should be stricken under Rule 12(f). Under that standard, "[a]n affirmative defense need not be plausible to survive; it must merely provide fair notice of the issue involved. . . . [T]he requisite notice is provided where the affirmative defense in question alerts the adversary to the existence of the issue for trial. Providing knowledge that the issue exists, not precisely how the issue is implicated under the facts of a given case, is the purpose of requiring averments of affirmative defenses." Tyco, 777 F. Supp. 2d at 900-01. If notice pleading has been provided, the only reason to grant the motion to strike is if the Court finds the affirmative defense fails as a matter of law. Cameron v. Graphic Mgmt. Assocs., Inc., 817 F. Supp. 19, 22 (E.D. Pa. 1992) ("[T]he court may grant a motion to strike a legally

insufficient defense so the parties to the suit do not needlessly waste time and money in preparation of trial.").

### B. Motions to Dismiss Counterclaims

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual allegations that "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The same rule applies with respect to counterclaims. A complaint will satisfy this threshold test for facial plausibility if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. While all factual allegations must be accepted as true, Erickson v. Pardus, 551 U.S. 89, 94 (2007), this requirement does not apply to legal conclusions, which may be disregarded, Iqbal, 556 U.S. at 678.

When presented with a motion to dismiss under Rule 12(b)(6), a district court should conduct a two part analysis. First, it should separate the factual and legal elements of a claim and accept all of the well-pleaded facts as true. Second, it should determine whether the factual allegations are sufficient to show that the plaintiff has a "plausible claim for relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

### III. Discussion

#### A. Affirmative Defenses[2]

##### i. Failure to State a Claim (Doe 1, 14, 16)

---

[2] The discussion below encompasses all of the affirmative defenses Malibu has moved to strike and Defendants have not voluntarily consented to withdraw. Doe 14 consented to withdraw several of its affirmative defenses. (See Defendant John Doe 14's Memorandum in Opposition to Malibu's Motion to Strike, at 1-2) (ECF 90).

6

This Court, by order of December 26, 2012, denied Defendants' Motions to Dismiss Malibu's Amended Complaint on the basis of failure to state a claim under Fed. R. Civ. P. 12(b)(6). (See Order and Memorandum of Law) (ECF 51 & 55). The Court concluded Plaintiff had averred a sufficient prima facie case of copyright infringement under Rule 12(b)(6) to state a plausible claim to relief. Accordingly, the Court will strike Doe 1, 14, and 16's affirmative defense pertaining to failure to state a claim. The Court notes that Does 1 and 14 have consented to the striking of this defense.

### ii. Fair Use (Doe 1, 14, 16)

Section 107 of the 1976 Copyright Act provides for a "fair use" defense in a copyright infringement suit. Under Section 107: "[T]he fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means . . . for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of a copyright." 17 U.S.C. § 107. The statute sets forth several "factors" a court should consider in determining if defendant has made a "fair use" of a work: (1) "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes"; (2) "the nature of the copyrighted work"; (3) the "portion used in relation to the copyrighted work as a whole"; and (3) "the effect of the use upon the potential market" for the copyrighted work. Id. § 107(1)-(4).

Malibu argues the "fair use" defense should be stricken because Does 1, 14 and 16 have failed to specify why their use of Malibu's copyrights constituted "fair use" under Section 107. Defendants' affirmative defenses only state: "Defendant's use of the work in question, if it occurred at all, was a legally protected fair use of the allegedly infringed work." (ECF 34, 58, 59). Under the liberal standard of notice pleading that applies to affirmative defenses, the Court

7

finds Defendants' pleading to be sufficient to "aler[t] the adversary to the existence of the issue for trial." Tyco, 777 F. Supp. 2d at 900. The motion to strike is denied.[3]

### iii. Invalid Copyright (Doe 1, 14, 16)

Defendants' third affirmative defense is that of "invalid copyright." The claim that a copyright is invalid under federal law is an effective defense because ownership of a valid copyright is a necessary requirement to bringing an infringement suit in the first place. See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340 (1991) (affirming a grant of summary judgment in an infringement suit because there was no valid copyright). Defendants raise the invalidity defense here, stating, "Plaintiff's copyrights are invalid and/or unenforceable." (ECF 34, 58). Given the liberal standard of notice pleading that applies, the motion to strike is denied. See Tyco, 777 F. Supp. 2d at 903 ("[A]n affirmative defense must only provide the opponent fair notice of the issue involved. Under this standard, Defendant's affirmative defense is plainly satisfactory to the extent it avers 'invalidity.'"); see also Senju Pharm. Co., Ltd. v. Apotex, Inc., 2013 WL 444928, at *2 (D. Del. Feb. 6, 2013) (denying a motion to strike an affirmative defense which stated plaintiffs' patents were "invalid for failure to comply with one or more of the

---

[3] Malibu argues the "fair use" affirmative defense must also fail as a matter of law because courts in other circuits have denied extending a "fair use" defense to parties that engaged in online file-sharing. See BMG Music v. Gonzalez, 430 F.3d 888, 889-92 (7th Cir. 2005) (holding that "downloading full copies of copyrighted material without compensation to authors cannot be deemed 'fair use'"); A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1014-1019 (9th Cir. 2001) (affirming the district court's finding "that plaintiffs will likely succeed in establishing that Napster users do not have a fair use defense"); Sony BMG Music Entm't v. Tenenbaum, Case 1:07-CV-11446-RWZ, at *35-37 (D. Mass. Dec. 7, 2009), aff'd on other grounds, 660 F.3d 487 (1st Cir. 2011) (rejecting defendant's fair use defense in a file-sharing case). But these decisions, denying the fair use defense, were reached at procedural phases of lawsuits quite different from the procedural posture here – namely, upon a motion for summary judgment after substantial discovery had been conducted, see Gonzalez, 430 F.3d at 889; Tenenbaum, Case 1:07-CV-11446-RWZ, at *1-2; or upon a request for a preliminary injunction that was followed by an extensive evidentiary hearing, see Napster, 239 F.3d at 1004. Malibu's motion to strike is being brought solely on the basis of Defendant's pleadings. It would be premature for the Court to make factual findings regarding whether Defendants engaged in the type of online downloading and file-sharing that led courts in the past to deny defendants a "fair use" defense. Accordingly, the affirmative defense cannot be stricken as a matter of law at this juncture.

8

provisions of Title 35 of the United States Code, including, but not limited to Sections 101, 102, 103 and/or 112").

### iv. Implied License (Doe 1, 14, 16)

Next, Does 1, 14 and 16 raise an affirmative defense of "implied license." An "implied license" shields a defendant from liability for copyright infringement because if it arises, it means a copyright holder has implicitly consented to the distribution of its copyrighted work by the defendant. There is no conclusive test for finding an "implied license" in the Third Circuit, but delivery of a copyrighted work to a recipient, with an intent that it be distributed, "is one factor that may be relied on in determining that an implied license has been granted." MacLean Assocs., Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc., 952 F.2d 769, 779 (3d Cir. 1991) (internal quotation marks and citation omitted); see also id. ("A nonexclusive license may arise by implication where the creator of a work at a defendant's request 'hands it over, intending that the defendant copy and distribute it.'") (citation omitted). Many courts follow the Seventh Circuit's three-part test set forth in I.A.E., Inc. v. Shaver for finding an implied license. That test provides that when: (1) the licensee requests the creation of a work; (2) the licensor delivers the work to the licensee; and (3) the licensor intends that the licensee copy and distribute the work, an implied license has been created. Shaver, 74 F.3d 768, 776 (7th Cir. 1996) (citing Effects Assocs., Inc. v. Cohen, 908 F.2d 555, 558-59 (9th Cir. 1990)); see Nat'l Ass'n for Stock Car Auto Racing, Inc. v. Scharle, 184 Fed. App'x 270, 275 (3d Cir. 2006) (citing the Shaver test); Atkins v. Fischer, 331 F.3d 988, 991 (D.C. Cir. 2003) (same); Beholder Prods., Inc. v. Catona, 629 F. Supp. 2d 490, 494-95 (E.D. Pa. 2009) (same).

Defendants plead an affirmative defense of implied license by averring: "Plaintiff authorized, impliedly or explicitly, Defendant's alleged infringing use of its works, and his

9

claims are therefore barred by the doctrine of implied license." (ECF 34, 58, 59). Once again, Defendants do not provide specific facts or details explaining how the implied license from Malibu to Defendants, to distribute its copyrighted films, arose. But Defendants' pleading puts Malibu on sufficient notice and the defense is not necessarily insufficient as a matter of law. The motion to strike is denied.[4]

### v. Misuse of Copyright (Doe 1, 14, 16)

Does 1, 14 and 16 also raise the affirmative defense of "misuse of copyright." This defense applies where a copyright holder "has engaged in some form of anti-competitive behavior" and thereby loses the benefit of the protection of copyright law. Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc., 342 F.3d 191, 204 (3d Cir. 2004). "Misuse is not cause to invalidate the copyright or patent, but instead 'precludes its enforcement during the period of misuse.'" Id. Does 1, 14 and 16 allege: "Plaintiff's claims are barred by the doctrine of misuse of copyright." (ECF 34, 58, 59).

While not detailed or specific, this pleading is sufficient to put Malibu on notice of the issue to be raised at trial. The motion to strike is denied. See Bayer CropScience AG, 2011 WL 6934557 at *4 (denying a motion to strike a patent misuse defense where the defendant simply "alleged that [Plaintiff] was enforcing a patent it knew was invalid, unenforceable, and/or not

---

[4] Some courts have required a higher pleading standard for the affirmative defenses of implied license. See Isringhausen Import, Inc. v. Nissan North Am., Inc., 2011 WL 6029733, at *2 (C.D. Ill. Dec. 5, 2011) ("NNA's third affirmative defense of acquiescence does not sufficiently allege active consent or an affirmative word or deed conveying consent by Isringhausen and, therefore, must be stricken with leave to replead."); Sun Microsystems, Inc. v. Datram Corp., 1997 WL 50272, at *4 (N.D. Cal. Feb. 4, 1997) ("The legal conclusion that Sun customers have a license to use Dataram SIMMs is inadequate to provide "fair notice" of the defense. To properly plead a defense of implied or express license, Dataram must assert some factual allegations that demonstrate the existence of a license."). Nonetheless, the Court concludes that applying such a standard here would be at odds with how the majority of courts in this District and Circuit have proceeded – which is to require that affirmative defenses comply with a notice pleading standard.

10

infringed"); In re Gabapentin Patent Litig., 649 F. Supp. 2d 340, 349 (D.N.J. 2009) (holding a patent misuse affirmative defense requires "only allegations of conduct that had the effect of impermissibly extending the limited protection from competition afforded by the . . . patent").

### vi. Abandonment (Doe 1, 16)

Does 1 and 16 raise "abandonment" as an affirmative defense. Doe 14 initially included this defense but has since agreed to voluntarily withdraw it. (ECF 90).

Abandonment occurs when "'there is an intent by the copyright proprietor to surrender rights in his work.'" Dam Things from Den. v. Russ Berrie & Co., Inc., 290 F.3d 548, 560 (3d Cir. 2002) (citing 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.06 (2001)). "[I]t is undisputed that there must be either an act, or a failure to act, from which we can readily infer an intent to abandon the right." Id. Does 1 and 16 allege that "Plaintiff's claims are barred as a result of Plaintiff's abandonment of its intellectual property." (ECF 34, 58). While Malibu argues it "has never taken any act that would indicate abandonment" and it "provides copyright notice on its website X-art.com" (ECF 43), whether Plaintiff's conduct evidenced an intent to abandon its copyrights is a question of fact to be determined at a later phase of this litigation. Cf. Capitol Records, Inc. v. Naxos of Am., Inc., 372 F.3d 471, 483-84 (2d Cir. 2004) (denying a motion for summary judgment on an abandonment claim because it was "a factual issue that require[d] further exploration"). The motion to strike is denied.

### vii. Good Faith Intent (Doe 1, 14, 16)

All three Doe Defendants claim "good faith intent" as an affirmative defense. They aver: "Plaintiff's claims are barred because Defendant acted in good faith and without any intent to infringe Plaintiff's work." (ECF 34, 58, 59). Defendants are drawing on what is termed the "innocent infringer" defense set forth at Section 504 of the Copyright Act. Section 504 provides:

11

"In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200." 17 U.S.C. § 504(c)(2).

Malibu contends Defendants' "innocent infringer" defense should be stricken as a matter of law because under Section 402(d) of the Copyright Act, the defense is unavailable in cases "where a copyright notice appears on an infringed work." (See ECF 43). Section 402(d) instructs: "If a notice of copyright . . . appears on the published phonorecord or phonorecords to which a defendant in a copyright infringement suit had access, then no weight shall be given to such a defendant's interposition of a defense based on innocent infringement." 17 U.S.C. § 402(d). Mailbu is correct that when a proper copyright notice appears on the face of the work – i.e., on the insider front cover of a book – courts will deny a defendant from invoking the innocent infringer defense. Schiffer Publ'g, Ltd. v. Chronicle Books, LLC, 2005 WL 67077, at *2 (E.D. Pa. Jan. 11, 2005).

However, it would be improper for the Court to strike the innocent infringer defense at this juncture because whether Malibu attached notices of copyright to its works is an open question. Malibu contends "a copyright notice plainly appears on Plaintiff's works, save one" and "Plaintiff's website states that its works are copyrighted." (ECF 78, at 11). These are allegations that remain to be proven. The motion to strike is denied.[5]

---

[5] The Court also notes that it is unsettled whether Section 402(d) of the Copyright Act even applies, thereby barring the "innocent infringer" defense, in a suit involving internet file-sharing. In Harper v. Maverick Recording Co., 598 F.3d 193 (5th Cir. 2010), the Fifth Circuit held that Section 402(d) *does* apply in cases involving the downloading of copyrighted materials. The court held that if a notice of copyright is placed on a "published phonorecord" and an individual downloads an audio file taken from that phonorecord, Section 402(d) blocks the individual from invoking the innocent infringer defense. Id. at 198-99. But in an opinion dissenting from the denial of certiorari, Justice Alito questioned whether this was a "sensible" reading of the statute. Maverick, 131 S. Ct. 590, 590-91 (2010) (Alito, J., dissenting

12

…

### viii. Online Copyright Infringement Liability Limitation Act (Doe 1, 16)

Does 1 and 16 invoke the Online Copyright Infringement Liability Limitation Act as an affirmative defense. They aver: "Defendant is not liable to Plaintiff pursuant to the 'Online Copyright Infringement Liability Limitation Act," as set forth at 17 U.S.C. § 512." (ECF 34, 58). Section 512 of the Digital Millennium Copyright Act, in turn, provides a limitation on liability to "service providers" for copyright infringement that occurs: (a) "by reason of the provider's transmitting, routing, or providing connections for, material through a system or network controlled or operated by or for the service provider"; (b) "by reason of the intermediate and transient storage of that material on a system or network controlled or operated by the service provider"; or (c) "by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider." 17 U.S.C § 512(k)(a)-(c). The statute defines the term "service provider" as either "an entity offering the transmission, routing, or providing of connections for digital online communications, between or among points specified by a user, of material of the user's choosing," or as "a provider of online services or network access, or the operator of facilities therefor." Id. § 512(k)(1).

Malibu contends the affirmative defense based on Section 512's safe-harbor provision should be stricken because it extends only to "service providers," which no Doe Defendant qualifies as under Section 512(k). Judging from the statutory text and the case law, Malibu is correct. The statute instructs that "service providers" are entities that either provide "transmission, routing [and] connections" services or that provide "online services or network access." 17 U.S.C. § 512(k)(1). Doe 1 contends he falls under this definition because he

---

from the denial of certiorari) ("There is a strong argument that § 402(d) does not apply in a case involving the downloading of digital music files."). The Court is aware of no relevant decision by the Third Circuit or by any district court in this Circuit or District. Accordingly, whether Section 402(d) applies in a case involving file-sharing appears to be a question of first impression.

"provided internet access for [his] residence which included providing access for others through Defendant's internet account." (ECF 92). Looking at the statute as a whole, however, it is clear that "service provider" is intended to refer to commercial entities that provide network services to subscribers or account holders. See 17 U.S.C. § 512(c)(2) (providing that the "limitations on liability established in this subsection apply to a service provider only if the service provider has *designated an agent* to receive notifications of claimed infringement"); id. § 512(i) (providing the limitations shall apply only to a service provider that "has adopted and reasonably implemented, and informs *subscribers and accounts holders of the service provider's system . . . a policy that provides for the termination in appropriate circumstances of subscribers and account holders . . .* who are repeat infringers). The court is aware of no case where Section 512's safe harbor provision was extended to a private individual offering internet access to members of his household. Contra Viacom Int'l, Inc. v. YouTube, Inc., 676 F.3d 19, 30-31 (2d Cir. 2012) (holding the DMCA safe harbor extended to Youtube as a "service provider"); Wolk v. Kodak Imaging Network, Inc., 840 F. Supp. 2d 724, 744 (S.D.N.Y. 2012) (holding "Photobucket," a host of an online site for sharing photos and videos, was a "service provider"); Hendrickson v. Amazon.Com, Inc., 298 F. Supp. 2d 914, 916 (C.D. Cal. 2003) (holding "Amazon qualifies as an ISP under the DMCA").

Accordingly, the Court concludes no affirmative defense under Section 512 of the DMCA is available to Defendants as a matter of law. The motion to strike this affirmative defense is granted.

### ix. First Sale Doctrine (Doe 16)

Doe 16 raises a "first sale" affirmative defense, averring that "Plaintiff's claims are barred subject to 17 U.S.C. 109, commonly known as the first sale doctrine, and also regularly

14

referred to as 'exhaustion.'" (ECF 34). Under Section 109: "[T]he owner of a particular copy or phonorecord lawfully made under this title, or any person authorized by such owner, is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy or phonorecord." The "first sale" doctrine bars claims by copyright holders related to the lawful resale of their products by initial purchasers; as the Supreme Court has explained, the doctrine provides that "once the copyright owner places a copyrighted item in the stream of commerce by selling it, he has exhausted his exclusive statutory right to control its distribution." Quality King Distribs. v. L'Anza Research Int'l, 523 U.S. 135, 152 (1998); see also Columbia Pictures Indus., Inc. v. Redd Horne, Inc., 749 F.2d 154, 159 (3d Cir. 1984) ("The first sale doctrine prevents the copyright owner from controlling the future transfer of a particular copy once its material ownership has been transferred.").

Malibu contends the "first sale" defense is legally unavailable to Defendants because "Plaintiff's entire suit is based on the unauthorized reproduction and distribution of unlawful copies of Plaintiff's movies." (ECF 43). This may ultimately be true, but it is too early for the Court to determine such at this point. Whether Malibu made first sales of its copyrighted materials to bona fide purchasers – and those purchasers made the videos available in a lawful manner on the internet – is a question of fact to be determined during discovery and/or trial.[6] The motion to strike is denied.

---

[6] The Court notes, however, that the "first sale" defense is unlikely to succeed based on the allegations presented thus far in Malibu's Amended Complaint and in Defendants' responsive pleadings. If Defendants are demonstrated to have downloaded Malibu's copyrighted materials in the manner alleged – through obtaining pieces of those works through a file-sharing host (BitTorrent), in which "initial seeders" supply the works and facilitate their limitless reproduction – the "first sale" doctrine is highly unlikely to absolve Defendants of liability for copyright infringement. In past cases involving the downloading of copyrighted materials through internet file-sharing systems, courts have held that the downloaders, uploaders, and even host-sites, were or could be liable for copyright infringement without pausing to consider the applicability of the first sale defense. Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 929 (2005) ("The argument for imposing indirect liability in this case is,

### x. Unclean Hands, Estoppel and Failure to Mitigate Damages (Doe 1, 14 and 16 as to Unclean Hands, and Doe 14 as to the rest)

Doe 1, 14 and 16 raise the affirmative defense of unclean hands, and Doe 14 additionally raises the defenses of estoppel and of Malibu's failure to mitigate damages. These are all equitable defenses that foreclose or limit a plaintiff's ability to recover from an injury due to its own misconduct. Defendants' pleadings need not be more detailed to comply with the applicable, liberal standard of notice pleading. The motion to strike is denied.

### B. Counterclaims

Doe 16 raises four counterclaims: (1) misuse of copyright; (2) declaratory judgment of fair use; (3) declaratory judgment of implied license; and (4) declaratory judgment of non-infringement.

The Court determines the counterclaims should be dismissed, although without prejudice and with leave to amend, because Doe 16 has failed to meet Iqbal and Twombly's pleading requirements for each counterclaim. The Court notes the symmetry between the counterclaims and some of the affirmative defenses. However, because the rules on pleading require more details in counterclaims than in affirmative defenses, see supra pages 4-6, Defendant must comply with Iqbal and Twombly.

---

however, a powerful one, given the number of infringing downloads that occur every day using StreamCast's and Grokster's software. When a widely shared service or product is used to commit infringement, it may be impossible to enforce rights in the protected work effectively against all direct infringers, the only practical alternative being to go against the distributor of the copying device for secondary liability on a theory of contributory or vicarious infringement."); In re Aimster Copyright Litig., 334 F.3d 643, 646-47 (7th Cir. 2003) (holding there was no question that direct infringement occurs when, without permission by the copyright holder, "[u]sers list on their computers the files they are willing to share" and "the purchase of a single CD could be levered into the distribution within days or even hours of millions of identical, near-perfect . . . copies of the music recorded on the CD"); Napster, 239 F.3d at 1014 ("Napster users who upload file names to the search index for others to copy violate plaintiffs' distribution rights. Napster users who download files containing copyrighted music videos violate plaintiffs' reproductive rights.").

Regarding misuse of copyright, Doe 16 avers that Malibu "made its unprotected works available via a torrent protocol it knew would lead to mass distribution of its works" and "affirmatively 'shared' its works via a torrent protocol to ensure that its works would be readily searched, indexed and accessed such that it would artificially create the basis of a copyright infringement claim." (ECF 34). This claim could theoretically offer Doe 16 grounds for relief – but the problem is Doe 16 has presented no facts demonstrating its claim is viable. For instance, there are no alleged facts showing Malibu provided its copyrighted works to BitTorrent hosts or otherwise facilitated the distribution of its works to non-paying users over the internet. Misuse of copyright arises when a copyright holder "has engaged in some form of anti-competitive behavior" and thus loses the benefit of the protection of copyright law. Video Pipeline, 342 F.3d at 204. Doe 16 fails to make any showing of "anti-competitive behavior" by Malibu.

Doe 16's "fair use" counterclaim is similarly conclusory. Defendant alleges his use of Malibu's copyrights was "fair" because he "did not profit or attempt to profit" from the works; because his access did not "adversely affected the value of" Malibu's works; because Malibu "lost no revenue as a result of" his activities; and because his conduct "had no effect on the market for, or any value of" Malibu's works. (ECF 34). Doe 16 presents no facts to support its contentions that Malibu did not suffer economic harm or lost sales as a result of his conduct. See Iqbal, 556 U.S. at 678 (holding "naked assertion[s] devoid of further factual enhancement" do not support a plausible claim to relief). Moreover, these allegations fail to plead with specificity *why and how* Defendant's use of the copyrighted works constituted "fair use" under the relevant statutory standards. See 17 U.S.C. § 107 ("[T]he fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching . . . scholarship, or research, is not an infringement of a copyright."); id. § 107(1)-(4) (providing factors a court should consider to

determine if there has been "fair use"); see also Warren Pub. Co. v. Spurlock, 645 F. Supp. 2d 402, 415 (E.D. Pa. 2009) (Baylson, J.) ("The four listed factors . . . are 'to be explored, and the results weighed together in light of the purpose of copyright.'") (citation omitted). Merely claiming he "did not profit or attempt to profit" from Malibu's works is not sufficient to make out a claim of "fair use," because the "commercial or noncommercial" nature of the use is only *one* factor in the "fair use" analysis, see id., and an absence of profits does even necessarily establish the use was noncommercial. See Napster, 239 F.3d at 1015 ("Direct economic benefit is not required to demonstrate a commercial use. Rather, repeated and exploitative copying of copyrighted works, even if the copies are not offered for sale, may constitute a commercial use."). In sum, Doe 16 cannot state a viable claim to relief under the "fair use" doctrine simply by averring that he did not profit from downloading Malibu's works.

Doe 16's counterclaim of "implied license" is also insufficiently pled. To support this claim, Doe 16 avers that Malibu "intentionally posted its allegedly copyrighted works on the Internet such that they would be searched and accessed by numerous torrent protocol users" and that it "takes no affirmative protective steps . . . to preclude the copying or unauthorized exploitation of its work." (ECF 34, at 12). Again, these allegations are conclusory. Doe 16 provides no factual support to its contentions that Malibu "inten[ded]" for its copyrighted works to be accessed without payment over the internet. Moreover, for an implied license to be inferred, a defendant must allege that a copyright holder has "handed over" or transmitted its copyrighted work to another party with the intent or knowledge that it will be redistributed. See MacLean Assocs., 952 F.2d at 779. Doe 16 presents no facts of such a handing over here.

Finally, Defendant's counterclaim of "declaratory judgment of non-infringement" is no more than a restatement of Defendant's general denial of liability. This is not a pleading that complies with Iqbal.

***

For the forgoing reasons, Malibu's Motions to Strike or Summarily Dismiss Defendants' Affirmative Defenses (ECF 43, 78,79) are DENIED in part and GRANTED in part. Namely, the motions are DENIED as to the affirmative defenses of fair use, invalid copyright, implied license, misuse of copyright, abandonment, good faith intent, first sale doctrine, unclean hands, equitable estoppel, and failure to mitigate damages.  The motions are GRANTED as to the affirmative defenses of failure to state a claim and the Online Copyright Infringement Liability Limitation Act.  All remaining affirmative defenses by Doe 14 that Doe 14 voluntarily withdrew (see ECF 90), are hereby acknowledged as withdrawn. Malibu's Motion to Dismiss Defendant John Doe 16's Counterclaims (ECF 42) is GRANTED IN PART, as the counterclaims are dismissed without prejudice and with leave to amend, so as to comply with the pleading requirements set forth in Iqbal and Twombly.[7]  The counterclaims filed by Does 1 and 14, which the parties stipulated to withdraw without prejudice (ECF 97 & 98), are hereby acknowledged as withdrawn without prejudice. An appropriate Order follows.

O:\CIVIL 12\12-2078 MALIBU MEDIA V. JOHN DOES 1-16\12CV2078.MEMORANDUM MOTION TO DISMISS COUNTERCLAIMS.3613.DOCX

---

[7] The Court notes that if Defendants successfully deny liability for downloading Malibu's copyrighted works, they may not have standing to raise counterclaims related to Malibu's misuse of its copyrights or to request declaratory judgments pertaining to fair use, implied license, or non-infringement.  However, resolving any such standing issues would be premature at the pleading stage, given that parties are free to plead in the alternative.