IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MALIBU MEDIA, LLC,**<br>          **Plaintiff,**<br><br>          v.<br><br>**JOHN DOES 1, 6, 13, 14, and 16**<br>          **Defendants.** | **CIVIL ACTION NO. 12-2078** |

Baylson, J.                                                                                                         May 8, 2013

### MEMORANDUM AND ORDER RE: EMERGENCY MOTION TO REOPEN DISCOVERY AND FOR THE ENTRY OF AN ORDER COMPELLING JOHN DOE 16 TO PERMIT PLAINTIFF ENTRY INTO JOHN DOE 16'S HOME FOR THE LIMITED PURPOSE OF MAKING FORENSIC COPIES OF JOHN DOE 16'S HARD DRIVES

Plaintiff, Malibu Media, LLC, is a producer of adult pornographic movies and alleges that the defendants have used certain software to download its movies and play them, in violation of the copyright laws. The case is on an expedited pretrial schedule leading up to a bellwether trial scheduled to start on June 10, 2013. Prior memoranda dated October 3, 2012 (ECF 21) and March 6, 2013, (ECF 117) will give a fuller background to this case.

On May 2, 2013, plaintiff filed an "Emergency Motion to Reopen Discovery and for the Entry of a Order Compelling John Doe 16 to Permit Plaintiff Entry to Joe Doe 16's Home for the Limited Purpose of Making Forensic Copies of John Doe 16's Hard Drives" (ECF 125). The Court received a response from counsel for John Doe 16 ("defendant") (ECF 128) and held recorded telephone conferences with counsel on May 3, and May 6, 2013.

The basis of the Motion, according to plaintiff, is that during discovery, defendant had produced a hard drive from defendant's computer to the plaintiff, which plaintiff alleges is unreadable. Plaintiff asserts that it needs to gain further access to the computer of defendant to determine the contents of the hard drive.

As a result of the defendant's response and the Court's inquiry during the May 3, 2013 telephone conference, the following chronology appears to be relevant to this dispute:

1. In late December, 2012, plaintiff requested hard drives from defendant, who has three computers. According to his attorneys' representations, defendant prepared a "composite" copy of the hard drives of all three computers which was then produced to plaintiff's counsel in early January, 2013.

2. Plaintiff's attorney asserts that plaintiff was searching for an appropriate expert and did not retain one until sometime in February, 2013, and the hard drive copy that had been received from defendant was forwarded to plaintiff's retained expert during the third week of February, 2013. Plaintiff had selected as an expert a firm called Computer Forensic LLC located in Boynton Beach, Florida, and specifically David Kleiman.

3. The Court is unaware of specific discussions between plaintiff or plaintiff's counsel and Kleiman from the third week in February until April, 2013. Kleiman died on April 26, 2013, which represented some difficulties for plaintiff because plaintiff's expert report was due to be served on defendant as of April 26, 2013, according to the Court's Scheduling Order. Plaintiff first became aware of David

Kleiman's illness on April 18, 2013, and then met with Kleiman's associate at the same firm, Patrick Paige.

4. Plaintiff asserts that Patrick Paige had garnered enough information from David Kleiman and has taken over as plaintiff's expert in this case.

5. The Court has received a copy of the Computer Forensics "examination report" which consists of seven pages signed by Patrick Paige with a conclusion that includes accurate identification of an IP address used to distribute data. A one page attachment asserts the hard drive received from defendant is not readable.

6. Plaintiff's Motion asserts that plaintiff did not learn that the hard drive received from defendant was unreadable until April 30, 2013. Plaintiff's attorney did not explain why this information was not conveyed to him from either Kleiman or Paige at an earlier time.

7. Plaintiff, in its Emergency Motion, asserts that he needs to have access to the three hard drives immediately to prepare for trial. Plaintiff is prepared to pay a forensic computer firm to review them to see if the three hard drives can be read. Plaintiff is willing to perform all of this at its own expense.

8. Defendant asserted that this is coming much too late, as he is getting ready for trial, and any kind of home intrusion would be unfair and violate defendant's right to privacy.

9. In the May 3, 2013 telephone conference, the Court raised the issue that assuming the Court did not give plaintiff access to the hard drives at this time, whether defendant had any intention of using his hard drives as part of his evidence in his defense. Although his counsel did not during the phone conference explicitly respond as to

evidentiary intent, the Court believes that this is an important issue.  Just as with any other document or piece of evidence, pretrial inspection of all trial exhibits by opposing counsel is essential, and "surprise" is not appropriate in a case of this nature.

Therefore, the Court posed to defendant's attorney a need to determine whether defendant would want to introduce the hard drives into evidence and, if so, he would have to make them available to the plaintiff in advance of trial.

10. When the telephone conference resumed on May 6, 2013, after detailed discussion, defendant reserved the right to introduce his hard drive at the trial.  It is unclear at this time whether the defendant will have any expert testimony about the hard drive.

The Court reiterated its view that there may be a factual issue between the parties as to whether the defendant's hard drive is "readable."  Counsel had some debates on this topic, and the Court indicated that this could be a factual issue for the jury, but the Court wanted to make sure that the relevant facts were available to both sides in advance of trial so that the issue would not cause a delay in the trial.  Also, any potential disputes over the pretrial examination of the hard drive must be eliminated by the time of trial.  The matter will be resolved in the following manner:

1. Plaintiff has **WITHDRAWN** its Emergency Motion (ECF125).

2. The Court concludes that this issue had been raised by plaintiff in a belated manner.  Defendant was entitled to know promptly that there was an alleged problem in reading the hard drive produced in January 2013.  Counsel for defendant had to incur a significant amount of time in preparing to defend against the relief requested in the Emergency Motion, including several telephone calls with the Court and filing a

4

response. The Court **ORDERS** attorneys' fees and costs of defendant's counsel be recovered from plaintiff. Defendant's counsel shall promptly submit a statement of the amount of time at his usual hourly rate, and any expenses from his receipt of the Emergency Motion until conclusion of the conference call May 6, 2013, which amount shall be paid by plaintiff to defendant's counsel within ten (10) days.

      3.      The Court **ORDERS** that plaintiff and defendant exchange the hard drives they currently have which they intend to use as exhibits at trial, for examination by each other (and/or their experts). The hard drives should be received by opposing counsel no later than Monday, May 13, 2013, and any report of the examination is to be furnished to opposing counsel no later than the close of business on Friday, May 17, 2013.

      4.      Counsel shall advise the Court by letter to Chambers by the close of business on Monday, May 20, 1013, whether factual disputes exist as to the "readability" of either hard drive, and, if so the Court will have an evidentiary hearing on **Wednesday, May 22, 2013 at 2:00 p.m. in Courtroom 3A.**

                      **BY THE COURT:**

                      /s/ Michael M. Baylson

                      _____
                      **MICHAEL M. BAYLSON, U.S.D.J.**