# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
---------------------------------------------------------------X
                                            :
MALIBU MEDIA, LLC,                          :
                                            :        Civil Action No. 2012-2078
                        Plaintiff,          :
                                            :        Consolidated from Cases:
                vs.                         :        2:12-cv-02078-MMB
                                            :        2:12-cv-02084-MMB
JOHN DOES 1, 6, 13, 14, and 16,             :        5:12-cv-02088-MMB
                                            :
                        Defendants.         :
                                            :
---------------------------------------------------------------X
```

## PLAINTIFF'S MOTION FOR SANCTIONS AGAINST JOHN DOE 16

### I.   INTRODUCTION

Sunday, November 11, 2012, John Doe 16 began fabricating a phony hard drive.  The date is not a coincidence.  Just three days before, on November 8, 2012, Plaintiff propounded a request for documents demanding John Doe 16 produce a complete copy of each of the hard drives of the computers in his house. On January 2, 2013, this Court entered an order compelling John Doe 16 to produce discovery (including the hard drive).   On December 27, 2013, by sending it to Plaintiff, John Doe 16 attempted to pass off the phony hard drive as the one he is or was using on the computer that he built.    Next, John Doe 16 consciously attempted to frustrate Plaintiff's ability to uncover his fraud by sending Plaintiff's counsel an unreadable hard drive. On March 11, 2013, during his deposition, John Doe 16 intentionally gave evasive answers about when he built his computer and other testimony obviously intended to corroborate his fraud. Finally, on May 2, 2013, John Doe 16 continued his attempt to frustrate Plaintiff's ability to uncover his fraud by opposing Plaintiff's motion for leave to create a forensically sound copy of his hard drive.

1

Under these facts, the most severe sanction is necessary to protect the integrity of the legal system and punish John Doe 16.   Accordingly, Plaintiff respectfully requests that the Court summarily adjudge that John Doe 16 is liable for infringing Plaintiff's copyrights, award Plaintiff its attorneys' fees and costs, including the fees charged by Plaintiff's expert, and permit the case only to go forward on the issue of damages.   Alternatively, should the Court not be inclined to enter summary judgment against John Doe 16 as to his liability, the Court should nevertheless award Plaintiff its attorneys' fees and costs and instruct the jury that it should draw an adverse inference from Defendant's intentional fabrication and spoliation of material evidence.

II.    **FACTS**

A. **Plaintiff's Discovery Request and Defendant's Response**

Plaintiff propounded its discovery requests to John Doe 16, including the production of documents and things on November 8, 2012.   Specifically, Document Request No. 1, states:  "A complete copy of the hard drive for each of the Computer Devices in your house, apartment or dwelling."  *See* Exhibit "A".

John Doe 16 had thirty (30) days to respond to discovery but failed to do so.  *See* [CM/ECF 49].   On December 20, 2013 John Doe 16 provided Plaintiff with responses to Plaintiff's Interrogatories and nothing else.

On December 21, 2012 Plaintiff moved to compel John Doe 16 to produce discovery.  *Id.* After receiving Plaintiff's motion to compel, John Doe 16 sent Plaintiff a computer storage drive that supposedly contained a copy of each of the hard drives from the computers in her and her husband's household, including a 1 terabyte hard drive from the desktop, 2 laptops, as well as a copy of the contents of a "cloud" based storage account – i.e. a non-tangible hard drive storage

space that is maintained through the Internet.   *See* Defendant's Discovery Response at 1, 9 and 11.

Included in the production of documents was a sales receipt labeled "[h]ard drive copies per request" for one 846212 Seagate 3TB 3.5 7200 ROM from Micro Center.  This was the storage drive that John Doe 16 purchased to place the copies of the hard drives on to send to Plaintiff.

On January 2, 2013, this Court ruled on Plaintiff's Motion to Compel and entered an order which states:

> AND NOW, this 28th day of December 2012, Plaintiff, having moved to compel responses to Interrogatories and Requests for Production propounded upon Defendants pursuant to Fed. R. Civ. P. 33 & 34 to which Defendants have not responded in timely fashion (ECF 49 in 12-2078, ECF 57 in 12-2084, and ECF 71 in 12-2088), the motions are GRANTED pursuant to Local Rule of Civ. P. 26.1(g). Defendants shall answer all interrogatories and produce all documents requested which are in their possession, custody or control, within 10 days, or sanctions may be considered.

*See* [CM/ECF 54].

**B.  Defendant's Deposition**

On March 11, 2013, Plaintiff took the deposition of the then John Doe 16 and John Doe 16's husband.  She testified:

**Q.**      You gave me a copy of a hard drive.  From which computer did that come?

**A.**      "We gave you copies of all the hard drives.  The device that we handed you was something we purchased to store all the copies of all the hard drives, and I think the Cloud Storage you requested.  Everything is in there."

- *Deposition of John Doe 16's wife at 42:21-25* (the "First Hard Drive").

She also testified:

**Q.**     Do you use the desktop [that John Doe 16's husband built]?  [Parenthetical added for context.]

**A.**     I have in the past.  Couldn't tell you when.

**Q.**     Often?

**A.**     No.

**Q.**     Does Mr. [REDACTED] use it often?

**A.**     He uses it essentially for gaming.  Computer games.

**Q.**     How often does he play computer games?

**A.**     I don't know.  I wouldn't say often.  I would say once a week.

**Q.**     Does he have a favorite game?

**A.**     Not that I am aware of.

**Q.**     How long does he play the games?  Like, if once a week he goes up there –

**A.**     A couple of hours.

- *Id. at  34:22-25 and 35:1-13.*

Plaintiff then took the deposition of John Doe 16's husband.  John Doe 16's husband testified:

**Q:**     Did you take any computer classes when you were getting your AA [from Penco Tech in Electronic Technology], your Associate's Degree?   [Parenthetical added for context from the answer to a previous question.]

**A:**     The focus of the AA was on the hardware.  We did take a 2-3 month period of that studying rudimentary programming.

- *Deposition Transcript of John Doe 16 at 13:22-25 and 14:1-2.*

**Q:**     Are you pretty good at computers?

**A:**      I like to think I'm competent.

- *Id. at 14:3-4.*

**Q:**      What kind of computers are in the house?

**A:**      I have a desktop system.

- *Id. at 15:13-15*

**Q.**      You're the primary user of that [desktop]?  [Parenthetical added for context.]

**A.**      I'm the primary user of it.

**Q:**      What kind of desktop is it?

**A:**      I built it. I could describe it. It doesn't really have a specified individual name description. I can't give a make and model for any  - - it's not like - - it's not like it's a Dell X, Y, Z for instance.  Sorry. Not gonna work.

**Q.**      Is it the first computer that you've built?

**A.**      It's the last one I built in several years.

**Q.**      Did you have the computer in 2010 when you married [redacted.]

**A.**      I don't know.

**Q.**      Where were you when you built it?

**A.**      I don't remember.

- *Id. at 15:19-25 and 16:1-13.*

**Q:**      You like games, computer games?

**A:**      Some.

- *Id. at 20:13-14.*

**Q:**      What do you play?

**A:**       I play first-person adventure games.

- *Id. at 20:15-17.*

**Q:**     When was the last time you played a video game?

**A:**     Approximately two weeks ago.

- *Id. at 21:10-12.*

**Q:**     The desktop that you built, is it a powerful computer?

**A:**     It's okay.

- *Id. at 28:23-25.*

**Q:**     How big is the hard drive?

**A:**     It has a one terabyte storage drive, and a --.

- *Id. at 29:14-16*

**Q:**     Is it built for games?

**A:**     It plays games well.

- *Id. at 29:1-2.*

After taking the Deposition of the then John Doe 16 and John Doe 16's husband, and with stipulation by each, on March 19, 2013, Plaintiff substituted John Doe 16's husband for Defendant, John Doe 16.  See [CM/ECF 110].  Plaintiff did this because John Doe 16's husband was the infringer and proper Defendant in this case.

### C.  Plaintiff's Emergency Motion and Expert Report

Plaintiff's forensic computer expert, Patrick Paige, examined the First Hard Drive provided by John Doe 16 in order to determine whether the First Hard Drive contained evidence implicating that John Doe 16 infringed Plaintiff's copyrights.   After examination, on May 1, 2013, Patrick Paige submitted a report stating:

I was given a hard drive for examination by Lipscomb, Eisenberg & Baker, PL. The HDD (hard disk drive) was marked with a note stating "DOE 16 Atty Ronald Smith".

The HDD was found to be a 3TB Seagate serial number W1F1GX0Q enclosed in a Thermaltake external USB3 hard drive enclosure. The HDD was removed and connected to a Tableau write blocking device. The Tableau write blocking device allows the data on the HDD to be viewed without the function of writing. Examination of the HDD contents using EnCase forensic software revealed the HDD contained an unreadable file format. The hard drive was connected to both windows and Mac operating systems with negative results. Based on my examination of this hard drive I could locate no relevant data. It appears the HDD was improperly formatted.

Additionally, Patrick Paige submitted the following declaration regarding the First Hard Drive (Exhibit B):

1.     All work which was performed on the First Hard Drive was done on the forensically sound copy.  *Declaration of Patrick Paige at ¶ 6.*

2.     EnCase Forensic is able to open and analyze almost every type of operating system used to run a personal computer.  *Id*. at ¶ 9.

3.     I used the EnCase Forensic software to attempt to open and analyze the First Hard Drive.  EnCase Forensic software was unable to open or read the First Hard Drive.  *Id*. at ¶ 11.

4.     Subsequently, I used a software program called Active Partition Recovery. Active Partition Recovery is a program used by computer forensic professionals to recover data from a hard drive that is not formatted or partitioned correctly.  *Id*. at ¶ 12.

5.     [T]he report generated by Active Partition Recovery indicated that there were a large number of "poor" partitions. When a hard drive has "poor" partitions, the files on it are usually not recoverable.  *Id*. at ¶ 14.

6.     Ultimately, in late April 2013, I concluded that the First Hard Drive was completely or very nearly completely unreadable because it was not partitioned correctly.  *Id*. at ¶ 15.

To explain, the First Hard Drive can be analogously compared to a clear glass box.  In this clear glass box, Defendant placed copies of hard drives for four computers.  Plaintiff's

expert was able to look through the clear glass box and see these four hard drives. However, the box lacked any opening for Plaintiff's expert to touch or analyze the four hard drives.

On May 2, 2013, Plaintiff filed an Emergency Motion to Reopen Discovery and for the Entry of an Order Compelling Defendant John Doe 16 to Permit Plaintiff Entry into John Doe 16's Home for the Limited Purpose of Making Forensic Copies of John Doe 16's Hard Drive. *See* [CM/ECF 125]. At described above by Plaintiff's expert, the First Hard Drive provided by Defendant was unreadable.

On May 2, 2013, John Doe 16 filed a memorandum in opposition. *See* [CM/ECF128]. On May 3, 2013 this Court held a hearing wherein counsel for John Doe 16 asserted that John Doe 16 had a copy of the First Hard Drive and that it was readable.

On May 6, 2013, this Court held another hearing. Based upon this Court's assurance that John Doe 16 would not be allowed to introduce a hard drive which had not been provided to Plaintiff (in a readable form), and John Doe 16's counsel's assurance that John Doe 16 had a copy of the First Hard Drive that was readable, Plaintiff withdrew its Emergency Motion. The Court then ordered:

> [P]laintiff and defendant exchange the hard drives they currently have which they intend to use as exhibits at trial, for examination by each other(and/or their experts). The hard drives should be received by opposing counsel no later than Monday, May 13, 2013, and any report of the examination is to be furnished to opposing counsel no later than the close of business on Friday, May 17, 2013.

CM/ECF 133 at ¶ 3.

On May 8, 2013, undersigned's office received the Second Hard Drive and immediately sent it Plaintiff's expert, Patrick Paige.

Plaintiff's expert provided a sworn declaration about his investigation of the Second Hard Drive which states, in part:

(a)     On May 9, 2013, I received a second three terabyte hard drive from LEB (the "Second Hard Drive.")  *Declaration of Patrick Paige at* ¶ 20.

(b)     All work which was performed on the second hard drive was done on the forensically sound copy.  *Id*. at ¶ 23.

(c)     The Second Hard Drive is not a copy of the First Hard Drive.  *Id*. at ¶ 25.

(d)     The images titled desktop-1tb.img and desktop-1tb.img.zip do not contain a copy of a working computer system.  The image desktop-1tb.img.zip is a copy of desktop-1tb.img that has been compressed.  *Id*. at ¶ 29.

(e)     The only images of a computer with a one terabyte hard drive on Hard Drive Two are desktop-1tb.img and desktop-1tb.img.zip. Since they are the same, for the remainder of this declaration, I will refer to the images of these two drives as the "1 Terabyte Hard Drive."  *Id*. at ¶ 30.

(f)     After analyzing the 1 Terabyte Hard Drive, I can state with one hundred percent (100%) certainty that it has so many files and folders missing from it that if it was installed into John Doe 16's physical computer it would not boot up. Instead, one would only see a blank screen.  *Id*. at ¶ 31.

(g)     This is because the 1 Terabyte Hard Drive is missing all of the files for Windows and all of the Program Files and User folders.  *Id*. at ¶ 32.

(h)     The Windows folder is not on 1 Terabyte Hard Drive. I know Windows was installed on the 1 Terabyte Hard Drive at some point because it has the core system files that correlate to Windows.  *Id*. at ¶ 33.

(i)      Windows is an operating system. Without an operating system, a computer will not function. The 1 Terabyte Hard Drive does not have <u>ANY</u> operating system. *Id.* at ¶ 34.

(j)      When Windows is first installed on a hard drive it installs the core system files needed to run the operating system. The core system files are hidden system files. *Id.* at ¶ 35.

(k)      The file creation date of the core system files including the Master File Table (MFT) indicate the First Hard Drive was formatted and first put into use on November 11, 2012.  See:

| | | Name | File Created |
|---|---|---|---|
| ☐ | 7 | MFT Allocation Bitmap | |
| ☐ | 8 | Volume Slack | |
| ☐ | 9 | $RECYCLE.BIN | 11/11/12 09:38:41AM |
| ☐ | 10 | Program Files (x86) | 11/11/12 11:17:20AM |
| ☐ | 11 | Downloads | 11/11/12 11:29:30AM |
| ☐ | 12 | Documents | 11/11/12 11:29:53AM |
| ☐ | 13 | Music | 11/11/12 11:30:28AM |
| ☐ | 14 | Videos | 11/11/12 11:30:39AM |
| ☐ | 15 | Pictures | 11/11/12 11:32:49AM |
| ☐ | 16 | $AttrDef | 11/11/12 12:03:41PM |
| ☐ | 17 | $Boot | 11/11/12 12:03:41PM |
| ☐ | 18 | $BadClus | 11/11/12 12:03:41PM |
| ☐ | 19 | $LogFile | 11/11/12 12:03:41PM |
| ☐ | 20 | $Secure | 11/11/12 12:03:41PM |
| ☐ | 21 | $MFTMirr | 11/11/12 12:03:41PM |
| ☐ | 22 | $MFT | 11/11/12 12:03:41PM |
| ☐ | 23 | $Bitmap | 11/11/12 12:03:41PM |
| ☐ | 24 | $UpCase | 11/11/12 12:03:41PM |
| ☐ | 25 | $Volume | 11/11/12 12:03:41PM |
| ☐ | 26 | $Extend | 11/11/12 12:03:41PM |
| ☐ | 27 | System Volume Informat... | 11/11/12 12:22:25PM |

*Id.* at ¶ 36.

(l)     Based upon the foregoing, I can state with 100% certainty: (a) the 1 Terabyte Hard drive was not in use prior to November 11, 2012; or (b) all of the data that had previously been on the 1 Terabyte Hard Drive had been erased prior to November 11, 2012. Put another way, the 1 Terabyte Hard Drive was either new or reconditioned to a like new state.  *Id*. at ¶ 38.

(m)     The only program that was installed on the 1 Terabyte Hard Drive is called Steam. See:



*Id*. at ¶ 39.

(n)     Steam is a program used for on-line gaming.  *Id.* at ¶ 40.

(o)     The only way Defendant could have used Steam is if he had the 1 Terabyte Drive connected to another computer that had a functioning operating system. *Id*. at ¶ 41.

(p)     When data is deleted from a computer running a Windows operating system, the data remains on the hard drive until the operating system overwrites that area.

The deleted data will then reside in an area of the hard drive commonly referred to as unallocated space. *Id*. at ¶ 42.

(q)     Approximately ninety-nine percent (99%) of the unallocated space on desktop-1tb.img contains zeros, i.e. no data. After reviewing the legible data in the unallocated space, all of it appears to relate to Steam. *Id*. at ¶ 43.

(r)     In a normal computer, the unallocated space would have deletions from search engines, such as Google, Bing, Ask Jeeves, etc., emails, Word documents, Window system file updates, pictures, etc. In short, in would be filled with all the data a normal computer user routinely deletes. The 1 Terabyte Hard Drive does not have any of this expected data. *Id*. at ¶ 44.

(s)     A typical computer which has been in use by a typical computer user for any substantial length of time would have much more than 1% of the unallocated space filled up by deleted data. *Id*. at ¶ 45.

To continue Plaintiff's analogy, where the First Hard Drive contained copies of four hard drives from John Doe 16's computers in a secured impenetrable glass box, the Second Hard Drive contained copies of four hard drives from John Doe 16's computers, and this time the glass box contained a lid that could be opened.

At issue in this motion is only the 1 Terrabyte Hard Drive from the desktop computer that John Doe 16 built himself.  When Plaintiff's expert opened the glass box to inspect the contents held on that 1 Terrabyte Hard Drive, Plaintiff's expert found:

(1)  All of the data on the 1 Terrabyte Hard Drive was created on or after November 11, 2013 – *three* days after Plaintiff served its request to inspect the Hard Drive.  Plaintiff's expert concluded this meant one of two things: (a) the 1 Terabyte Hard drive was not in use prior to

November 11, 2012; or (b) all of the data that had previously been on the 1 Terabyte Hard Drive had been erased prior to November 11, 2012.  *Id*. at ¶ 38.

(2)  The *only* program that was installed on the 1 Terabyte Hard Drive is called Steam. *Id*. at ¶ 39.  There was no operating system on the hard drive, however, to play Steam.  *Id*. at ¶ 41.

(3)  Approximately ninety-nine percent (99%) of the unallocated space on desktop-1tb.img contains zeros, i.e. no data.

## III.  <u>LEGAL STANDARD</u>

 "The courts derive their authority and obligation to monitor and control the conduct of litigation from many sources, including statutory (*e.g.,* 28 U.S.C. § 1927) and procedural (*e.g.,* Fed.R.Civ.P. 11(c), 16(f), 37(b), 41(b), 55), and various flexible and formidable sanctions have been devised to implement and enforce the rules of engagement." *Derzack v. Cnty. of Allegheny, Pa.*, 173 F.R.D. 400, 411 (W.D. Pa. 1996) *aff'd sub nom. Derzack v. Cnty. of Allegheny Children & Youth Servs.*, 118 F.3d 1575 (3d Cir. 1997).  "Neither statute nor the Federal Rules of Civil Procedure supplant, however, the implicit, inherent power of the court—perhaps the mother source of the authority and responsibility of the courts to control the conduct of litigation—to restrain excesses of the participants and to preserve the integrity of the judicial process."  *Id*. (*citing Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)).  "[C]ourts under their inherent powers have developed a wide range of tools to promote efficiency in their courtrooms and to achieve justice in their results."  *Eash v. Riggins Trucking Inc.*, 757 F.2d 557, 564 (3d Cir. 1985). "Federal Rule of Civil Procedure 37 vests a district court with inherent authority to impose sanctions where a party fails to make disclosures or cooperate in discovery."  *Capogrosso v. State Farm Ins. Co.*, 2010 WL 3404974 (D.N.J. Aug. 26, 2010) citing Fed. R. Civ. P. 37.

"Spoliation is 'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably for[e]seeable litigation.'"  *Capogrosso v. State Farm Ins. Co.*, 08-CV-2229 DMC0JAD, 2010 WL 3404974 (D.N.J. Aug. 26, 2010).   "Sanctions are appropriate when there is evidence that a party's spoliation of evidence threatens the integrity of this Court."  *Id.*  "Sanctions for spoliation range from an adverse jury instruction to judgment against the offending party."  *White v. Pulver Sys., Inc.*, 1998 WL 575123 (E.D. Pa. 1998).   "Where evidence is destroyed, sanctions may be appropriate, including … a jury instruction on the 'spoliation inference'.  This inference permits the jury to assume that 'the destroyed evidence would have been unfavorable to the position of the offending party.'"  *Bowman v. Am. Med. Sys., Inc.*, 1998 WL 721079 (E.D. Pa. 1998).

Fabrication of evidence is the "creation of false evidence".  § 28.03 FABRICATION OF EVIDENCE, DISCPR s 28.03 (2012).   Unlike spoliation, "there is _no_ situation in which fabrication of evidence is tolerated or excused, it is inherently more severe.  There is no good faith or accidental creation of false evidence[.]"  *Id.*   "In any proceeding, whether judicial or administrative, deliberate falsehoods 'well may affect the dearest concerns of the parties before a tribunal,' and may put the fact finder and parties 'to the disadvantage, hindrance, and delay of ultimately extracting the truth by cross examination, by extraneous investigation or other collateral means.'"  *ABF Freight Sys., Inc. v. N.L.R.B.*, 510 U.S. 317, 323, 114 S. Ct. 835, 839, 127 L. Ed. 2d 152 (1994) (internal citations omitted).  "It strikes us as elementary that a federal district court possesses the inherent power to deny the court's processes to one who defiles the judicial system by committing a fraud on the court."  *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989).

Accordingly, fabrication of evidence—which amounts to a fraud on the court—frequently results in a dismissal against the party that offers the fabricated evidence. *See e.g. Derzack v. County of Allegheny, Pa.*, 173 F.R.D. 400 (W.D. Pa. 1996) *aff'd sub nom. Derzack v. County of Allegheny Children & Youth Services*, 118 F.3d 1575 (3d Cir. 1997) ("the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to commit such conduct in the absence of such a deterrent"); *In re Theokary*, 468 B.R. 729, 750 (Bankr. E.D. Pa. 2012) (dismissing case as sanction); *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liab. Litig.*, 381 F. Supp. 2d 421 (E.D. Pa. 2005) (same); *Garcia v. Berkshire Life Ins. Co. Of Am.*, 569 F.3d 1174, 1179 (10th Cir. 2009) (same); *Shepherd v. Am. Broad. Companies, Inc.*, 62 F.3d 1469, 1472 (D.C. Cir. 1995) (same); *Pope v. Fed. Exp. Corp.*, 974 F.2d 982, 984 (8th Cir. 1992) (same); *Aptix Corp. v. Quickturn Design Sys., Inc.*, 269 F.3d 1369, 1374 (Fed. Cir. 2001) (affirming dismissal as a sanction for fabricating evidence). "No principle is better settled than the maxim that he who comes into equity must come with clean hands and keep them clean throughout the course of the litigation, and that if he violates this rule, he must be denied all relief whatever may have been the merits of his claim." *Root Ref. Co. v. Universal Oil Products Co.*, 169 F.2d 514, 534-35 (3d Cir. 1948) (vacating judgment).

Courts throughout the country routinely enter default judgments as a sanction in cases like the one before this Court where a defendant deliberately destroys and fabricates computer evidence in peer-to-peer copyright infringement cases. *See Atl. Recording Corp. v. Howell*, 2008 WL 4080008 (D. Ariz. Aug. 29, 2008) (court entered default judgment against defendant who deleted peer to peer program, deleted infringing files from his hard drive, and then gave false

copies of his hard drive to plaintiff's expert); *see also Columbia Pictures, Inc. v. Bunnell*, 2:06CV01093 FMC-JCX, 2007 WL 4877701 (C.D. Cal. Dec. 13, 2007) (entering default judgment against defendants when defendants operated a BitTorrent website and destroyed evidence of online postings and then lied to the court about it); *Arista Records, L.L.C. v. Tschirhart*, 241 F.R.D. 462, 466 (W.D. Tex. 2006) (granting default judgment when defendant wiped her hard drive and stating "defendant's conduct shows such blatant contempt for this Court and a fundamental disregard for the judicial process that her behavior can only be adequately sanctioned with a default judgment.")

The Third Circuit has set forth a balancing test to determine whether sanctions are appropriate for spoliation of evidence.   Specifically, the Third Circuit balances these three factors:

> (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.

*Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994).

When considering whether dismissal or default as a sanction is appropriate, the Third Circuit balances six factors, three of which overlap with its test for spoliation.  These factors are:

> (1) the extent of the *party*'s personal *responsibility;* (2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith;* (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions;* and (6) the *meritoriousness* of the claim or defense.

*Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984).

Further, when considering dismissal based on the fabrication of evidence courts in the Third Circuit have slightly modified the above *Poulis* factors to include "that 'prejudice' encompasses not only the prejudice to the litigants but also the impact on the judicial system and

the threat to the integrity of the courts which cannot command respect if they cannot maintain a level playing field amongst the participants." *Derzack v. Cnty. of Allegheny, Pa.*, 173 F.R.D. 400, 414 (W.D. Pa. 1996).

IV.     **LEGAL ARGUMENT**

    **A. Sanctions Are Appropriate**

When spoliation and fabrication of evidence are established, as here, sanctions are a forgone conclusion. "[I]t [is] surpassingly difficult to conceive of a more appropriate use of a court's inherent power than to protect the sanctity of the judicial process—to combat those who would dare to practice unmitigated fraud upon the court itself." *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1119 (1st Cir. 1989). Here, Defendant erased and fabricated evidence and this Court must hold Defendant accountable. "[T]his Court must protect the institution from those who would seek justice within its halls while, simultaneously, obstructing justice to their adversaries through abusive litigation tactics" *Derzack*, 173 F.R.D. at 418. Defendant's actions are grounds for summary judgment in Plaintiff's favor. Alternatively, at the very least an adverse inference and spoliation instruction is required.

    **1. Defendant is Personally Responsible for Destroying and Manufacturing Evidence**

Defendant is responsible for erasing and fabricating material evidnce. "When determining the degree of fault and personal responsibility attributable to the party that destroyed the evidence, the court must consider whether that party intended to impair the ability of the other side to effectively litigate its case." *Paramount Pictures Corp. v. Davis*, 234 F.R.D. 102, 111 (E.D. Pa. 2005). Here, Defendant deliberately deleted evidence in order to impair Plaintiff's ability to effectively litigate its case. "[W]here a litigant intentionally suppresses or destroys

pertinent evidence, an inference arises that such evidence would be unfavorable to his case." *In re Wechsler*, 121 F. Supp. 2d 404, 416 (D. Del. 2000).

As for Defendant's fabrication of false evidence, the Northern District of Illinois has examined factors such as motive, opportunity, and behavior in the litigation when examining the question of responsibility for fabricated documents. *See REP MCR Realty, L.L.C. v. Lynch*, 363 F. Supp. 2d 984, 1008 (N.D. Ill. 2005) *aff'd*, 200 Fed. Appx. 592 (7th Cir. 2006). Here, Defendant "more than any other individual, had the *motive* to benefit . . . if the fraud had succeeded." *Id.* Additionally, Defendant was the only one who "had the opportunity to fabricate" copies of his hard drive. *Id.* In answering the question "[a]re you pretty good at computers?" in his deposition, Defendant replied "I like to think I'm competent." *Deposition Transcript, 14:3-4.* Indeed, Defendant was competent enough to build his own desktop computer with a terabyte of memory. *Id at 15:23 and 29:15.* Further, Plaintiff took the deposition of John Doe 16's wife on March 11, 2013. She testified:

**Q:** You gave me a copy of a hard drive. From which computer did that come?

**A:** We gave you copies of all the hard drives. The device that we handed you was something we purchased to store all the copies of all the hard drives, and I think the Cloud Storage you requested. Everything is in there.

*Deposition of John Doe 16's Wife, 42:21-25.*

There is no question that Defendant is personally responsible for the destroyed and fabricated evidence. John Doe 16's wife's testimony demonstrates that she and John Doe 16 had the hard drive in their control and made the copies. Further, any claim of incompetence should fall on deaf ears because Defendant created three other forensically sound copies of the computers in his house. The only computer which has been fabricated is his personal desktop. It

simply does not make sense that a person can create three forensically sound copies of three irrelevant computers and then fail to do so on the only relevant computer.[1]   There is no one else that could be at fault for making the first hard drive unreadable, or for deleting the information from the second hard drive other than John Doe 16.   Instead, he was the only person with the ability, opportunity, and motive.

### 2.   Defendant's Actions Caused Prejudice to Plaintiff and Impact the Integrity of the Judicial System

Plaintiff has suffered prejudice caused by Defendant's destruction and fabrication of evidence.   "[W]hen considering the degree of prejudice suffered by the party that did not destroy the evidence, the court should take into account whether that party had a meaningful opportunity to examine the evidence in question before it was destroyed."   *In re Wechsler*, 121 F. Supp. 2d 404, 416 (D. Del. 2000).   "Where material evidence has been suppressed without the opposing party having an opportunity to inspect and/or test it, the issue arises as to whether sanctions should be imposed under Pennsylvania's 'spoliation of evidence doctrine.'"   *Walters ex rel. Walters v. Gen. Motors Corp.*, 209 F. Supp. 2d 481, 490 (W.D. Pa. 2002).

Here, prejudice to Plaintiff resulted from Defendant's destruction and fabrication of material evidence.   Indeed, the destroyed and fabricated evidence withheld and/or destroyed by Defendant goes to the heart of Plaintiff's claim and would demonstrate (1) that Plaintiff's movies were on his hard drive and (2) that Defendant had used the BitTorrent protocol to infringe

---

[1] Defendant's wife primarily uses an Apple computer which Defendant never uses.   *Deposition of John Doe 16's Wife at 34:1-19*.   Defendant also has an Acer laptop that he has taken to work on occasion.   *Id. at 40:6-9.* In addition to the Apple and the Acer, Defendant's wife has another computer that was purchased "well after the infringement being discussed here."   *Deposition of John Doe 16 at 18:6-10.*   Defendant's wife does not use the desktop computer often.   *Deposition of John Doe 16's Wife at 34:22-25 and 35:1.*   Defendant uses his desktop essentially for playing computer games.   *Id. at 35:3-4.*   Defendant uses the desktop to play computer games about once a week for a couple hours at a time.   *Id. at 35:5-13.*

Plaintiff's movies.  The only way to obtain this evidence was from Defendant.  By deleting the information from his hard drive and fabricating a fake hard drive during this litigation, Defendant has permanently prevented Plaintiff from ever discovering material information for its case.

Defendant's discovery abuses have also prejudiced Plaintiff by forcing Plaintiff to expend additional time, money, and other resources.  Defendant's production of fabricated evidence also casts doubt on all of the evidence he presented.  *See Garcia v. Berkshire Life Ins. Co. Of Am.*, 569 F.3d 1174, 1180 (10th Cir. 2009).

> The submission of falsified evidence <u>substantially prejudices an opposing party by casting doubt on the veracity of all of the culpable party's submissions throughout litigation</u>. The prejudiced party is <u>forced either to attempt independent corroboration of each submission, at substantial expense of time and money</u>, or to accept the real possibility that those discovery documents submitted by the opposing party are inaccurate.

*Id.*  (Emphasis added).

Defendant's actions have vexatiously multiplied the proceedings in violation of 28 U.S.C. § 1927 by causing Plaintiff to file additional motions and taking up the Parties' and Court's time. The First Hard Drive provided by Defendant was unreadable.  Because the drive was unreadable, Plaintiff's expert was required to expend additional time attempting to "recover data . . . that [was] not formatted or partitioned correctly."  *Declaration*, ¶ 12.

In addition to causing prejudice to Plaintiff, Defendant's fraud undermines the integrity of the judicial system.

> [T]ampering with the administration of justice in the manner indisputably shown [submission of fabricated evidence] here involves far more than an injury to a single litigant. <u>It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society</u>. Surely it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants. The public welfare demands that the agencies of public justice be not so

impotent that they must always be mute and helpless victims of deception and fraud.

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944).  *See also Jimenez v. Madison Area Technical Coll.*, 321 F.3d 652, 657 (7th Cir. 2003) ("given the egregious nature of Jimenez's conduct . . . the filing of her baseless claim amounted to a veritable attack on our system of justice.")

Similarly here, Defendant's conscious choice to impede the administration of justice simply cannot be tolerated.  "Courts cannot lack the power to defend their integrity against unscrupulous marauders[.]"  *Aoude supra*, 892 F.2d at 1119 (1st Cir. 1989).  As Your Honor is likely aware, this Bellwether Trial is being closely monitored by judges, attorneys, and the general public.  Without an appropriate sanction for the Defendant's willful and egregious actions in this case, the entire judicial system and this Court's own integrity would be severely undermined.  The Court must send a clear message not just to Defendant, but also to the other Defendants and spectators nationwide that attempted fraud will be dealt with harshly.

### 3.   Defendant's Actions Throughout the Entirety of Discovery Have Been Deleterious and Abusive

As described above, Defendant has abused the discovery process from the start.  For the last five months, starting with Plaintiff's Motion to Compel until now, Defendant has made discovery difficult, misleading, and burdensome.  Defendant first produced an unreadable hard drive.  He then lied during the teleconference with the Court by stating that he had a readable copy of the hard drive sent to Plaintiff.  Based upon this representation, Plaintiff's Emergency Motion was withdrawn.  Defendant then produced a second hard drive to Plaintiff which contains a fabricated hard drive for his personal computer.  Defendant has been dishonest from the start.

#### 4.   Defendant Acted Willfully and in Bad Faith

There is no accidental fabrication of evidence.  Unlike spoliation, where evidence might be lost or deleted without fault, fabrication of evidence involves an intent to mislead.  *See e.g. Jimenez v. Madison Area Technical Coll.*, 321 F.3d 652, 657 (7th Cir. 2003) (plaintiff's presentation of falsified documents was a "willful and malicious . . . flagrant Rule 11 violation").  Here, Defendant copied the hard drives himself and presented them to Plaintiff for examination.  Defendant knew that his production was not genuine.  Defendant's Second Hard Drive was "either new or reconditioned to a like new state."  *Declaration* at ¶ 38.  Plaintiff's investigator determined this with 100% certainty.  *Id.*  "Because corrupt intent knows no stylistic boundaries, fraud on the court can take many forms . . . however, the present case is a near-classic example of the genre. [Defendant's] bad faith is manifest."  *Aoude*, 892 F.2d at 1118.

#### 5.   Summary Judgment in Plaintiff's Favor is the Appropriate Sanction

"[I]n the fraud on the court context, at least that which rises to the extreme level that we see in this case, monetary sanctions may be inherently inadequate to remedy the harm to the public interest in preserving the integrity of the courts, and in deterring future misconduct on the part of other litigants."  *Derzack*, 173 F.R.D. at 417.  "Nor is the exclusion of the fabricated evidence always enough to deter discovery misconduct. 'Litigants would infer that they have everything to gain, and nothing to lose, if manufactured evidence merely is excluded while their lawsuit continues.'"  *Garcia v. Berkshire Life Ins. Co. Of Am.*, 569 F.3d 1174, 1180 (10th Cir. 2009) (quoting *Pope v. Federal Express Corp.,* 138 F.R.D. 675, 683 (W.D.Mo.1990)).  *See also Perna v. Elec. Data Sys., Corp.*, 916 F. Supp. 388, 400 (D.N.J. 1995) ("the assessment of costs and fees alone would be conveying a message to litigants that money could cure one's improper acts."); *In re Tutu Wells Contamination Litig.*, 162 F.R.D. 46, 78 (D.V.I. 1995) *opinion clarified,*

162 F.R.D. 81 (D.V.I. 1995) ("Monetary sanctions alone will not suffice to vindicate the court's authority and compensate the aggrieved parties for the prejudice suffered.").

Defendant's flagrant misconduct resulted in severe prejudice to Plaintiff. It was a deliberate attempt to undermine our system of justice. And, it shows that Defendant has no respect for this Court or our system of justice. This Court should not allow Defendant or any litigant to believe that purposeful fraud may result in mere exclusion of evidence or minor monetary sanctions. Instead, the Court should grant summary judgment in Plaintiff's favor and send the clear message that anyone who dares lie to this Court's face is unworthy of the protections of our justice system.

**6. Defendant Does Not Have a Meritorious Defense to Plaintiff's Claim**

This sixth and final factor weighs entirely in Plaintiff's favor. Defendant has no defenses to Plaintiff's infringement claims. Plaintiff's Motion for Summary Judgment as to Defendant's Counterclaim and Affirmative Defenses [CM/ECF 136] demonstrates that each of Defendant's asserted affirmative defenses is factually unsupported. Further, the evidence overwhelmingly establishes that he is liable for the alleged infringement. Defendant's deposition revealed that he built his own computer. *Deposition Transcript of John Doe 16 15:22-25 and 16:1-3.* Defendant is the primary user of the computer that he built. *Id. at 15:19-21.* He plays video games on his computer intermittently. *Id. at 21:2-6.* When he plays video games he's sometimes at the computer for three to four hours at a time. *Id. at 21:10-20.* His computer usage— "intermittently" for sometimes three to four hours at a time—is consistent with Plaintiff's investigator's "hits" which detected "intermittent" infringements of Plaintiff's works between February 14 and February 19, 2012 and also infringement of a third party's work on March 17, 2012. [CM/ECF 32] at Exhibit "C." He usually watches television shows on Hulu on one of the

laptops. *Deposition of John Doe 16 at 23:8-9.* He does not have cable. *Deposition of John Doe 16's Wife at 36:14-15.* His internet was always password protected. *Deposition of John Doe 16 at 18:19-24.* He knew about BitTorrent prior to this lawsuit. *Id. at 24:24-25 and 25:1.* He knew about Pirate Bay. *Id. at 28:12-17.* He admitted to using his computer to view adult movies. *Id. at 35:14-25.* He did not investigate the allegations of infringement when he received notice from Verizon. *Id. at 32:16:18.* He did not ask his wife if she committed the infringement. *Id. at 32:19-22.* He did not change his wireless password in reaction to the notice from Verizon. *Id. at 20:10-12.* The First Hard Drive he sent to Plaintiff was "completely or very nearly completely unreadable[.]" *Declaration of Patrick Paige,* [CM/ECF 140-1] ¶ 15. The "1 Terabyte Hard Drive . . . ha[d] so many files and folders missing from it that if it was installed into John Doe 16's physical computer, it would not boot up. Instead, one would only see a blank screen." *Id. at 31.* "[W]ith 100% certainty: (A) the 1 Terabyte Hard drive was not in use prior to November 11, 2012; or (b) all of the data that had previously been on the 1 Terabyte Hard Drive had been erased prior to November 11, 2012. Put another way, the 1 Terabyte Hard Drive was either new or reconditioned to a like new state." *Id. at 38.* "In a normal computer, the unallocated space would have deletions . . . The 1 Terabyte Hard Drive does not have any of this expected data." *Id. at 44.* "A typical computer which has been in use by a typical computer user for any substantial length of time would have much more than 1% of the unallocated space filled up by deleted data." *Id. at 45.*

### B. The Court Should Summarily Adjudge Defendant Liable

The foregoing analysis demonstrates that summary judgment in Plaintiff's favor is appropriate in this case. Defendant's attempt to perpetrate a fraud on this Court warrants such a

severe sanction.  In order to protect the integrity of the court and provide a sufficient deterrent to similar behavior in the future, no lesser sanction should issue.

### C. In the Alternative, The Court Should Instruct the Jury to Make a Spoliation Inference

However, should this Court deem summary judgment unwarranted, at the very least a spoliation and adverse inference instruction should be given.  "An adverse inference, or the spoliation inference, is regarded as a 'far lesser sanction,' and is intended to level the playing field between the parties."  *TelQuest Int'l Corp. v. Dedicated Bus. Sys., Inc.*, 2009 WL 690996 (D.N.J. Mar. 11, 2009).  "The spoliation inference applies only where: (1) 'the evidence in question was within the party's control,' *Brewer,* 72 F.3d at 334; (2) 'there has been an actual suppression or withholding of the evidence,' *id.*; (3) 'the evidence destroyed or withheld was relevant to claims or defenses.'"  *Paramount Pictures Corp. v. Davis*, 234 F.R.D. 102, 112 (E.D. Pa. 2005).

In *Paramount Pictures Corp.* the Court found a spoliation inference appropriate when Defendant deliberately destroyed information on a hard drive containing evidence of copyright infringement through a P2P system, much like the case at hand.  *Id.*

> The spoliation inference sanction is appropriate in this case because, as discussed above, the information stored on the computer was within Davis' exclusive control, he destroyed that information by wiping his hard drive clean after receiving notice of this action, the information destroyed was relevant to Paramount's copyright infringement claim, and Davis knew or should have known that the information stored on his computer would later be necessary to confirm any copyright infringement or to demonstrate that he had not infringed on Paramount's copyright.

*Id.*

Just as in *Paramount*, here, the information on Defendant's computer was in his exclusive control.  He deleted the evidence and fabricated phony evidence to interfere with the interests of justice and he used his experience with computers to do so.  Going beyond the

conduct in *Paramount,* Defendant made the intentional decision to fabricate evidence instead of just wiping his hard drive clean.  Then, he lied about what he did in his interrogatories and depositions.  After Plaintiff realized he provided a bad copy of his hard drive, instead of allowing Plaintiff into his house to inspect his computers he objected to the reasonable request.  As discussed above, the evidence he destroyed is material.  Defendant's repeated acts of dishonesty demand a spoliation and adverse inference instruction, at minimum.

### D.  Attorneys' Fees and Costs Are Warranted Under Fed. R. Civ. P. 37

"A court may award fees and costs where a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Coleman-Hill v. Governor Mifflin Sch. Dist.*, 271 F.R.D. 549, 555 (E.D. Pa. 2010).  "In spoliation cases, monetary sanctions are used to compensate a party for 'the time and effort it was forced to expend in an effort to obtain discovery' to which it was otherwise entitled."  *TelQuest Int'l Corp. v. Dedicated Bus. Sys., Inc.*, 2009 WL 690996 (D.N.J. Mar. 11, 2009).  The Eastern District of New York has found monetary sanctions appropriate to both punish and compensate where fabricated evidence was presented.  *See Amerisource Corp. v. Rx USA Intern. Inc.*, 2010 WL 2730748 (E.D.N.Y. 2010) *aff'd sub nom. New York Credit & Fin. Mgmt. Group v. Parson Ctr. Pharmacy, Inc.*, 432 Fed. Appx. 25 (2d Cir. 2011).

> [I]t is prudent to compensate litigants who are vigilant in exposing litigation fraud. Moreover, Drucker's conduct was a flagrant abuse of the judicial system and the Court is compelled not only to punish and deter such conduct but to vindicate itself. Accordingly, for the intentional bad faith reliance on fabricated evidence throughout the course of this litigation, the Court sanctions RxUSA and Drucker in the amount of $50,000 payable to Amerisource and an additional $50,000 payable to the Clerk of this Court.

*Id.*

 Fed. R. Civ. P. 37(b) warrants the payment of expenses "[i]f a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to

26

obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a)."
The payment of expenses include that "the court must order the disobedient party, the attorney
advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by
the failure, unless the failure was substantially justified or other circumstances make an award of
expenses unjust." *Id*. On January 2, 2013 the Court issued an order compelling Defendant to
respond to Plaintiff's discovery. *See* [CM/ECF 54]. Defendant deliberately violated this Court
order.

Further, Fed. R. Civ. P. 37(d) warrants the payment of reasonable expenses as a sanction,
including attorney's fees, when "a party, after being properly served with interrogatories under
Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or
written response." Specifically, the rule provides that, "the court must require the party failing to
act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's
fees, caused by the failure, unless the failure was substantially justified or other circumstances
make an award of expenses unjust." *Id*. Here, there is simply no justification for Defendant's
actions. Plaintiff has put forth considerable expense to hire an expert to analyze Defendant's
hard drives. Plaintiff's expert has spent significant time putting together the pieces of
Defendant's fraud. Additionally, Plaintiff's counsel has put forth significant time and expense
preparing its Motion for Sanctions and working with its expert witness to understand the extent
of Defendant's actions. Plaintiff should be awarded all attorney's fees and costs, including the
cost of its expert, in connection with Defendant's fabrication and spoliation of evidence.

## V.   **CONCLUSION**

For the foregoing reasons Plaintiff respectfully requests the Court summarily adjudge
Defendant liable and require Defendant to pay Plaintiff's attorneys' fees and costs relating to

Defendant's spoliation and fabrication of evidence, or, at the very least, instruct the jury to make a spoliation inference.

Dated: May 22, 2013.

Respectfully submitted,

LIPSCOMB, EISENBERG & BAKER, PL

By:  /s/ *M. Keith Lipscomb*
M. Keith Lipscomb (Fla. Bar. No.429554)
klipscomb@lebfirm.com
LIPSCOMB, EISENBERG & BAKER, PL
2 South Biscayne Blvd.
Penthouse 3800
Miami, FL 33131
Telephone: (786) 431-2228
Facsimile:  (786) 431-2229
ATTORNEYS FOR PLAINTIFF

and,

Christopher P. Fiore, Esquire
Aman M. Barber, III, Esquire
425 Main Street, Suite 200
Harleysville, PA 19438
Tel:  (215) 256-0205
Fax:  (215) 256-9205
Email:  cfiore@fiorebarber.com
ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By:  /s/ *M. Keith Lipscomb*