IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MALIBU MEDIA, LLC, : | |
| Plaintiff, : | |
| : | |
| vs. : | NO.: 2:12-CV-02078-MMB |
| : | |
| JOHN DOE 16, : | |
| Defendant. : | |
| : | |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANT JOHN
DOE 16'S COUNTERCLAIM AND AFFIRMATIVE DEFENSES**

Defendant, John Doe 16, by and through his/her undersigned counsel, hereby responds in opposition to Plaintiff's Motion for Summary Judgment as to John Doe 16's Counterclaim and Affirmative Defenses, stating as follows:

**I.   Introduction**

Plaintiff's Motion for Summary Judgment concerning John Doe 16's Counterclaim and Affirmative Defenses is without merit. The record evidence, and evidence to be adduced at trial, clearly establishes the requisite elements of the Counterclaim for Abuse of Process and the Affirmative Defenses. At minimum, there is a genuine issue of material fact such that summary judgment is inappropriate. Plaintiff's Motion for Summary Judgment should be denied.

**II.   Statement of Material Facts in Opposition**

1.   On April 19, 2012, Plaintiff filed the Complaint for alleged copyright infringement against sixteen anonymous defendants, including John Doe 16. [ECF 1]. The instant Complaint is just one of hundreds of complaints that Plaintiff has filed throughout the United States as part of an elaborate and lucrative scheme solely intended to embarrass, intimidate and coerce scores of innocent defendants into settlement. Plaintiff's scheme is well-

documented on numerous websites dedicated to defending meritless suits filed by "copyright trolls" such as Plaintiff.

2. Plaintiff does not possess ownership of valid copyright in its alleged works: (1) Anneli Leila Menage a Trois; (2) Carmen Poolside Striptease; (3) Silvie Eufrat Strip Poker; (4) Tiffany Sex with a Supermodel; and (5) Veronika Coming Home, because the works are obscene and not copyrightable.

3. Plaintiff admits that its work, Tiffany Sex with a Supermodel, does not contain a copyright notice. *See* Plaintiff's Undisputed Fact 2. This work was registered approximately nine months after its alleged date of publication. *See* Plaintiff's Motion at Exhibit B. Plaintiff's other works do not contain valid copyright notices because they bear the incorrect year of alleged first publication. And there is a genuine issue of material fact as to whether the videos of its works actually depicted the notice on the dates of alleged infringement. *Id*.

4. There is a genuine issue of material fact as to whether Plaintiff is the owner of X-Art.com, whether the notice is positioned in a manner and location as to give reasonable notice of the claim of copyright, and whether the website actually depicted the notice on the dates of alleged infringement. *See* screenshot attached to Plaintiff's Motion as Exhibit C.

5. There is a genuine issue of material fact as to whether Plaintiff deliberately disseminated its works or allowed its works to be disseminated to users of file-sharing services and bit torrent clients as part of its scheme to contrive copyright infringement claims and then embarrass, intimidate and coerce scores of innocent defendants into settlement.

6. There is a genuine issue of material fact as to whether Plaintiff's "investigator", Tobias Fieser of IPP, Limited, has the requisite experience and skill to accurately identify IP addresses that are being used with bit torrent clients, whether the software allegedly used by Mr.

Fieser, INTERNATIONAL IPTRACKER v1.2.1, is capable of accurately identifying IP addresses belonging to persons who have actually used a bit torrent stream to download or upload content, and whether the purported identification of an IP address associated with John Doe 16 is a false positive.

7. On October 3, 2012, this Court entered its Memorandum Re: Outstanding Motions, Expedited Discovery and Bellwether Trial, wherein the Court established a procedure for a prompt trial, and expressly stated: "In the event Plaintiff's allegations cannot be sustained, the five John Does will have adequate remedies to recover most, if not all, of these litigation expenses and/or damages from Plaintiff, such as…<u>a lawsuit for abuse of civil process</u>…" [ECF 21].

8. On November 2, 2012, Plaintiff filed an Amended Complaint against John Doe 16. Plaintiff alleged that John Doe 16 infringed Plaintiff's copyright by downloading certain video files on February 14, 2012, February 18, 2012 and February 19, 2012. [ECF 32].

9. On December 21, 2012, Plaintiff filed its Notice of Expert Witness Disclosure identifying Patrick Paige <u>and</u> David Kleiman as its expert witnesses. Plaintiff represented to this Court that it had "retained <u>both</u> experts for the purpose of (a) opining about IPP Limited's software, and (b) reviewing the John Doe defendants' computers and hard drives and opining about anything they may discovery." [ECF 50].

10. On December 27, 2012, John Doe 16's counsel mailed a HDD (hard disk drive) to Plaintiff's counsel via FedEx Standard Overnight delivery. The HDD was labeled "DOE 16 Atty Ronald Smith" and contained copies of the hard drives on the computers in John Doe 16's home (the "First Hard Drive").

3

11. On March 11, 2013, Plaintiff's counsel deposed John Doe 16 and John Doe 16's spouse. During the deposition of John Doe 16's spouse (approximately two and a half months after John Doe 16 produced the First Hard Drive to Plaintiff), Plaintiff's counsel admitted that the First Hard Drive was "currently with an expert. <u>I haven't looked at it</u>." *See* Depo of John Doe 16's Spouse at 42:19 to 43:2.

12. John Doe 16 testified that he/she did not download the content as alleged by Plaintiff. *See e.g.* Depo. Transript of John Doe 16 at 34:3-9. John Doe 16's spouse also testified that John Doe 16 and he/she did not download the content as alleged by Plaintiff. *See* Depo. of John Doe's Spouse at 73:2-5.

13. John Doe 16 testified that he/she has never viewed "Tiffany: Sex With A Super Model." *See* Depo. of John Doe 16 at 41:12-14.

14. John Doe 16 testified that during the period of alleged infringement, he/she had not created and was not using a unique password that would prevent third parties from accessing his/her wireless router. *See* Depo. of John Doe 16 at 18:25 to 19:13.

15. John Doe 16 testified that during the period of alleged infringement he/she was using the stock or default password for access to his/her wireless router which is easily accessible to a third-party user. *See* Depo. of John Doe 16 at 18:25 to 19:13.

16. John Doe 16's spouse testified that friends, co-workers and family members of John Doe 16 and his/her spouse accessed the wireless router using both John Doe 16's computers and their own electronic devices. *See* Depo. of John Doe 16's Spouse at 30:3-10.

17. John Doe 16's spouse testified that the houses directly adjacent to John Doe 16's house are very close. Neighboring houses are located directly across a residential street.

4

Apartments and town homes are located directly behind John Doe 16's house. *See* Depo. of John Doe 16's Spouse at 76:19 to 78:25.

18. John Doe 16 and John Doe 16's spouse testified that a guest, neighbor or other third-party could have accessed the wireless router. *See* Depo. of John Doe 16 at 18:25 to 19:13; *see also* Depo. of John Doe 16's Spouse at 73:17-20.

19. John Doe 16 testified that he/she changed the password to the wireless router around the spring of 2012 after reading an article describing how easily a stock or default password could be cracked allowing third-parties to access the internet connection. *See* Depo. of John Doe 16 at 18:25 to 19:13

20. John Doe 16 testified that he/she does not know any people who use bit torrents. *See* Depo. of John Doe 16 at 25:2-4.

21. John Doe 16 and John Doe 16's spouse testified that they have never used Napster, Limewire, Grokster or any other file-sharing service. *See* Depo. of John Doe 16 at 26:15-24; *See* Depo. of John Doe 16's Spouse at 48:11-17.

22. John Doe 16 testified that they subscribe to Hulu to legally view television, movie and other entertainment content via the internet. *See* Depo. of John Doe 16 at 27:13-17.

23. On April 18, 2013, this Court entered its Order <u>denying</u> Plaintiff's Motion to Dismiss John Doe 16's Amended Counterclaims. This Court specifically held that "<u>As to the Counterclaim for abuse of process, the Counterclaim asserts fact about Plaintiff's handling of this case which may, if Plaintiff's claims are unsuccessful, entitle Defendant to recover damages</u>." [ECF 120]

24. On May 1, 2013, the Court held a telephone conference with counsel wherein the Court stated that this case would be set for trial in June 2013. [ECF 124].

5

25. On May 2, 2013, following the recorded telephone conference with counsel, this Court entered the Second Revised Scheduling Order setting this case for trial on June 10, 2013. [ECF 126].

26. On May 2, 2013, after months of employing an abusive and improper strategy of coercing anonymous defendants to settle without any intent of ever going to trial, Plaintiff realized that it did not have any reliable evidence to support its allegations against John Doe 16 at the impending trial. Plaintiff thus filed its Emergency Motion to Reopen Discovery (the "Emergency Motion"). [ECF 125].

27. In the Emergency Motion, Plaintiff alleged that on April 30, 2013 – <u>more than four months after John Doe 16 delivered the First Hard Drive to Plaintiff's counsel via FedEx Standard Overnight delivery</u> – Plaintiff learned that the First Hard Drive was unreadable. According to Plaintiff, one of its two experts, Mr. Kleiman, became ill in March 2013, Plaintiff became aware of his illness on April 18, 2013, Mr. Kleiman died on April 26, 2013, and the other expert, Mr. Paige, was unable to timely complete his report because of Mr. Kleiman's illness. [ECF 125].

28. Plaintiff has not explained why its counsel had not even looked at the First Hard Drive as of March 11, 2013 (*See* Depo of John Doe 16's Spouse at 42:19 to 43:2), why its counsel had not consulted with its experts until April 18, 2013 [ECF 125], why its expert, Mr. Paige, who was retained on December 21, 2012 for the same purpose as Plaintiff's other expert that unfortunately passed away did not inspect the First Hard Drive until April 30, 2013 [ECF 50] and [ECF 125], and why Plaintiff's Emergency Motion was not immediately filed on April 30th rather than after this Court pronounced its trial order. [ECF 124] and [ECF 126].

6

29. On May 3, 2013, in connection with Plaintiff's allegation that the First Hard Drive was unreadable and discovery should be reopened, Plaintiff represented to this Court that "plaintiff was searching for an appropriate expert and did not retain one until sometime in February, 2013." [ECF 133]. Plaintiff's representation to this Court was unquestionably false as Plaintiff had retained its two experts in December 2012. [ECF 50].

30. On May 9, 2013, Plaintiff's expert, Mr. Paige, returned the First Hard Drive to John Doe 16's counsel. On the same date, Mr. Paige also received a second HDD from John Doe 16 containing copies of the hard drives on the computers in John Doe 16's home (the "Second Hard Drive").

31. On May 22, 2013, after months of employing its abusive and improper strategy, obtaining clear exculpatory testimony from John Doe 16 and John Doe 16's spouse at their March 11, 2013 depositions, realizing in May 2013 that the data on the First Hard Drive exonerated John Doe 16, realizing in May 2013 that the date on the Second Hard Drive also exonerated John Doe 16, and recognizing that it did not have sufficient evidence to support its allegations of copyright infringement at the impending trial, Plaintiff resorted to filing a Motion for Sanctions alleging fabrication of evidence. [ECF 148].

32. Plaintiffs' basis for alleging John Doe 16 fabricated evidence is a sham. For example, John Doe 16 testified there were three computers in his/her house on the dates of alleged infringement including a desktop, an Acer laptop and the Apple laptop of John Doe 16's spouse. *See* Depo. of John Doe at 15:1 to 18:18.

33. John Doe 16 also testified that the desktop contained "a one terabyte storage drive" **and** "a 250, 240 gigabyte solid state drive, as well" – in other words, a one terabyte drive

7

for additional data storage and an approximate 250 gigabyte solid state drive to boot or operate the computer. *Id*. at 29:14-19.

34. Notwithstanding the foregoing testimony, and John Doe 16's production of hard drives to Plaintiff corresponding exactly with his/her testimony, Plaintiff was either willful or grossly negligent in representing to this Court "with one hundred percent (100%) certainty" that John Doe 16's desktop "computer would not boot up. Instead, one would only see a blank screen." [ECF 140-1].

### III. Argument

#### A. Legal Standard

In deciding a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007); *accord Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) ("a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence is to be believed and all justifiable inferences are to be drawn in his favor.") (internal quotation omitted). "Issues such as intent and credibility are rarely suitable for summary judgment." *Wishkin v. Potter,* 476 F.3d at 184. "The burden upon the movant is not an easy one and the court will not lightly deprive a party of its right to a trial on disputed material factual issues." *States Steamship Co. v. Stone Manganese Marine, Ltd.*, 371 F.Supp. 500, 503 (D.C.N.J. 1973).

### B. The Record Contains Substantial Evidence to Establish a Genuine Issue of Material Fact as to John Doe 16's Counterclaim for Abuse of Process. Thus, the Motion should be Denied.

"[T]o establish a claim for abuse of process under the law of Pennsylvania, it must be shown that the defendant (1) used a legal process against the plaintiff; (2) primarily to accomplish a purpose for which the process was not designed, and (3) that harm was caused to the plaintiff as a result." *Keim v. County of Bucks*, 275 F.Supp.2d. 628, 635 (E.D.Pa. 2003). The record contains ample evidence to create a genuine issue of material fact as to John Doe 16's claim for abuse of process.

Indeed, this Court has already held that **"[a]s to the Counterclaim for abuse of process, the Counterclaim asserts facts about Plaintiff's handling of this case which may, if Plaintiff's claims are unsuccessful, entitle Defendant to recover damages**." [ECF 120]; And on October 3, 2012: "In the event Plaintiff's allegations cannot be sustained, the five John Does will have adequate remedies to recover most, if not all, of these litigation expenses and/or damages from Plaintiff, such as…**a lawsuit for abuse of civil process**…" [ECF 21].

Other courts have expressed concern as to the abuse of process by Plaintiff and similar companies. For example, in *Malibu Media, LLC v. Doe*, 2013 WL 525352 (M.D.Fla. February 13, 2013), the district court stated:

> [A] number of courts have expressed concern that plaintiffs in this type of litigation have no interest in actually pursuing their legal claims, but instead are using the court system to obtain the identifying information and coerce settlement from putative defendants in lieu of being named in a lawsuit which alleges the illegal downloading of a pornographic film.

*Id.* at *6. In *Next Phase Distribution, Inc. v. John Does 1–27*, 284 F.R.D. 165 (S.D.N.Y. 2012), the district court stated:

> Aside from the obvious concerns associated with catching so many potentially uninvolved individuals in the wide net of this litigation, there is also the prospect

9

>that, even if a John Doe did not download the Motion Picture, he may feel compelled to settle the lawsuit confidentially in order to avoid the embarrassment of being named as a defendant in a case about the alleged illegal trading of a pornographic film.

*Id*. at 170; *accord Sunlust Pictures, LLC v. Does 1-75*, 2012 WL 3717768 at *5 (N.D.Ill. August 27, 2012) ("plaintiffs in these types of cases might unfairly threaten to disclose defendants' identities in order to improperly leverage settlement negotiations.)[1]

Plaintiff knew at the time of the filing of its Compliant that the IP address it collected gives a code to a device, not the identity of a human being, but it nevertheless falsely and knowingly represented to this Court that the IP address would definitively reveal the infringer. Indeed, as one judge observed in another identical Bittorrent case, "Plaintiffs counsel estimated that 30% of the names turned over to the ISP's are not those of the individuals who actually downloaded or shared copyrighted material." *Digital Sins, Inc. vs. Does 1 -176,2012* WL 263491, at *3 (S.D.N.Y. Jan. 30, 2012); see also *Hard Drive Productions, Inc. v. Does 1-130,2011* WL 553960, at *2 (N.D. Cal. 2011) ("Plaintiff concedes, in some cases that Subscriber and the Doe Defendant will not be the same individual"); *Pac. Century Int'l Ltd. V Does 1-101,2011* WL 5117424, at *2 (N.D. Cal. 2011).Plaintiff has provided no evidence to support Defendant's alleged infringement involving any of the works cited by Plaintiff at any time in the proceedings outside of the listing of an IP address and a date. Failing to plead sufficient facts related to a claim in the pleadings but reguesting damages therefrom in order to settle the claims alleged by Plaintiff is abuse of process.

---

[1] *Next Phase Distribution, Inc. v. Does 1-138*, 2012 WL 691830 at *2 (S.D.N.Y. March 1, 2012)("often the true offender is the teenaged son, a neighbor in an apartment building that uses shared IP addresses or a neighbor in the dormitory that uses shared wireless networks."); *VPR Internationale v. Does 1-1017*, 2011 WL 8179128 (C.D.Ill. April 29, 2011) ("Where an IP address might actually identify an individual subscriber and address the correlation is still far from perfect, as illustrated in the MSNBC article. The infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment."); *Voltage Pictures, LLC v. Does 1-31*, 2013 WL 2181666 at *1 (S.D.Ga. May 20, 2013) ("And nearby neighbors (whether permitted or unauthorized) may also surf using a homeowner's wireless network.").

Plaintiff had a duty to engage in pre-filing inquiry, once it obtained the identifying information of the John Does, in order to determine whether they, as the subscribers who were associated with the IP address, were in fact the infringers and not merely victims of some other person's misconduct. Despite these clear directives, Plaintiff filed its pleadings- and Plaintiffs attorney signed them- knowing that the IP addresses it had proved nothing as far as Defendant's liability, and that in fact, nearly, if not more than, one-third of the individuals Plaintiff was suing did not download the pornographic works in question. Despite this knowledge, Plaintiff alleges as fact that Defendant engaged in "willful" and "intentional" violation of Plaintiffs copyright.

The same litigation tactics that the New York Court condemned as "inappropriate, abusive and unfair," Plaintiff has engaged in the instant matter. Defendant has offered access to Defendant's computers and electronic devices to demonstrate to Plaintiff that he could not have contributed to the alleged infringing activity that is the course of this lawsuit. Defendant has also offered to cooperate with any investigation into who might be responsible out of the individuals located nearby. Such behavior by Plaintiff supports Defendant's allegation that it is Plaintiff's intention to refuse any offer of exculpatory evidence. Instead, Defendant has been left with no choice but to fight it as is or settle under the terms proposed by Plaintiff. Thus, Defendant has not alleged some fanciful, theoretical model of abuse, but has offered facts in support of Plaintiff's pattern of abuse, not only across the nation, but here in Pennsylvania. Plaintiff's goal appears to remain willfully blind to all exculpatory evidence, which extend to Defendant, in order to leverage quick and profitable settlements.

Despite the fact that Plaintiff and its counsel is knowledgeable that an IP address does not necessarily represent an individual and does not, in fact, lead inevitably to the infringer, Plaintiff acts as if that is the case without doing any independent investigation or discovery; and in fact, as

noted above, affirmatively refuses to accept any exculpatory evidence from the individuals it has actually sued. This willful ignorance as to a defendant's guilt or innocence, where Plaintiff uses litigation as a weapon to intimidate innocent individuals into settling groundless claims, demonstrates an ulterior motive which is evidence of an abuse of process. The record clearly presents at minimum a genuine issue of material fact as to John Doe 16's Counterclaim for Abuse of Process.

### C. John Doe 16's Second Affirmative Defense for Fair Use.

John Doe 16 withdraws its Second Affirmative Defense for Fair Use.

### D. There is a Genuine Issue of Material Fact as to whether the Plaintiff has a Valid Copyright. Thus, the Motion should be denied as to John Doe 16's Third Affirmative Defense for Invalid Copyright.

This Court has acknowledged that "[t]he claim that a copyright is invalid under federal law is an effective defense because ownership of a valid copyright is a necessary requirement to bringing an infringement suit in the first place." *Malibu Media, LLC v. Does 1*, 2003 WL 1702549 at *4 (E.D.Pa. March 6, 2013). This Court has also acknowledged that "[n]either the Supreme Court nor the Third Circuit has addressed whether pornography is eligible for copyright protection." *Malibu Media, LLC v. John Does 1-16*, 902 F.Supp.2d 690, 701, n. 8 (E.D.Pa. 2012).

Article I, Section 8 of the United States Constitution, known as the Copyright Clause, empowers the United States Congress: "To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." Plaintiff's work is adult pornography that depicts obscene material. It does not promote the progress of science. It does not promote the useful arts. The work, "taken as a whole, appeals to the prurient interest in sex, portrays sexual conduct in a patently offensive

way, and which, taken as a whole, does not have serious literary, artistic, political, or scientific value." *Funayama v. Nichia America Corp*, 2011 WL 1399844 (E.D.Pa. April 13, 3011).

In sum, the work is not copyrightable. *See e.g.*, *Next Phase Distribution, Inc. v. John Does 1-27*, 284 F.R.D. 165 (S.D.N.Y. 2012)("if the Motion Picture is considered obscene, it may not be eligible for copyright protection."); *Devils Films, Inc. v. Nectar Video*, 29 F.Supp.2d 174, 176 (S.D.N.Y. 1998) ("Once a court has determined that copyrighted material is obscene, there seems no reason to require it to expend its resources on behalf of a plaintiff who it could as readily be trying for a violation of the federal criminal law."). And at minimum, questions as to whether or not a work is obscene are "essentially questions of fact." *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 507 (1984). The Motion should be denied.

>   E. **There is a Genuine Issue of Material Fact as to whether Plaintiff Granted John Doe 16 an Implied License. Thus, the Motion should be denied as to John Doe 16's Fourth Affirmative Defense for Implied License.**

This Court has acknowledged that "[a]n implied license shields a defendant from liability for copyright infringement because if it arises, it means a copyright holder has implicitly consented to the distribution of its copyrighted work by the defendant. There is no conclusive test for finding an implied license in the Third Circuit, but delivery of a copyrighted work to a recipient, with an intent that it be distributed, is one factor that may be relied on in determining that an implied license has been granted." *Malibu Media, LLC v. Does 1*, 2003 WL 1702549, *5 (E.D.Pa. March 6, 2013)(internal quotation omitted). "In determining whether an implied license exists, a court should look at objective factors evincing the party's intent." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 956 (11th Cir. 2009); *Gracen v. Bradford Exchange*, 698 F.2d 300, 303 (7th Cir. 1983) (the scope of an implied license may be proven through parol evidence). And failure by a copyright owner to object to reproduction of copyrighted works may provide the

13

basis for implying a nonexclusive license where the owner's silence is coupled with knowledge of the copying. *See Do It Best Corp. v. Passport Software, Inc.*, 2005 WL 743083 *5 (N.D.Ill. March 31, 2005); *Jacob Maxwell, Inc. v. Veeck*, 110 F.3d 749, 752 (11th Cir. 1997) (a license may be implied from conduct). John Doe 16 intends to demonstrate at trial that Plaintiff granted John Doe 16 an implied license by intentionally disseminating its works to bit torrent clients and others with the intent of allowing third-parties to download/share the works, and then employing its abusive and improper business model of filing unsubstantiated lawsuits and coercing anonymous defendants into quick settlements. The Motion should be denied.

> **F. There is a Genuine Issue of Material Fact as to whether Plaintiff Misused its Copyright. Thus, the Motion should be denied as to John Doe 16's Fifth Affirmative Defense for Misuse of Copyright.**

The Plaintiff misstates the law because "[t]he Court of Appeals for the Third Circuit, when it extended the patent misuse doctrine to copyright, noted that 'to defend on misuse grounds, the alleged infringer need not be subject to the purported misuse." *Microsoft Corp. v. Fredenburg*, 2006 WL 752985 at *1 (W.D.Pa. March 22, 2006). "The Court of Appeals also recognized that the defense could operate beyond its traditional anti-competition context." *Microsoft Corp. v. Fredenburg*, 2006 WL 752985 at *1. The record evidence establishes that Plaintiff has misused its alleged copyright against John Doe 16, numerous other anonymous defendants and this Court through its scheme of filing and pursuing meritless infringement actions solely intended to embarrass, intimidate and coerce scores of innocent defendants into settlement. John Doe 16 also intends to demonstrate at trial that Plaintiff has misused its copyright by intentionally disseminating its works to bit torrent clients and others with the intent of allowing third-parties to download/share the works, and then employing its abusive and improper business model of filing unsubstantiated lawsuits and coercing anonymous defendants

into quick settlements. There is clearly a genuine issue of material fact so the Motion should be denied.

### G. There is a Genuine Issue of Material Fact as to whether Plaintiff Abandoned its Copyright. Thus, the Motion should be denied as to John Doe 16's Sixth Affirmative Defense for Abandonment.

"Abandonment occurs when there is an intent by the copyright proprietor to surrender rights in his work." *Malibu Media, LLC v. Does 1*, 2003 WL 1702549 at *6 (E.D.Pa. March 6, 2013)(internal quotation omitted). "It is undisputed that there must be either an act, or a failure to act, from which we can readily infer an intent to abandon the right." *Id*. John Doe 16 intends to demonstrate at trial that Plaintiff abandoned its copyright by intentionally disseminating its works to bit torrent clients and others with the intent of allowing third-parties to download/share the works, and then employing its abusive and improper business model of filing unsubstantiated lawsuits and coercing anonymous defendants into quick settlements. The Motion should be denied.

### H. There is a Genuine Issue of Material Fact as to whether John Doe 16 is an "Innocent Infringer." Thus, the Motion should be denied as to John Doe 16's Seventh Affirmative Defense for Good Faith Intent.

Section 504 of the Copyright Act provides: "In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200." 17 U.S.C. § 504(c)(2). Contrary to the representations in Plaintiff's Motion, this Court has acknowledged that it is unsettled whether Section 402(d) of the Copyright Act applies in a suit involving alleged internet file-sharing. *Malibu Media, LLC v. Does 1*, 2003 WL 1702549 at *6 (E.D.Pa. March 6, 2013). And according to U.S. Supreme Court Justice Alito:

> There is a strong argument that § 402(d) does not apply in a case involving the downloading of digital music files…The theory of § 402(d) appears to be that a person who copies music from a material object bearing the prescribed copyright notice is deemed to have "reason to believe that his or her acts constituted an infringement," § 504(c)(2). But a person who downloads a digital music file generally does not see any material object bearing a copyright notice, and accordingly there is force to the argument that § 402(d) does not apply. In such a case, the question would simply be whether the infringer "was…aware and had…reason to believe," § 504(c)(2), that the downloading was illegal.

*Harper v. Materick Recording Company*, 131 S.Ct. 590 (U.S. 2010) (dissenting from the denial of certiorari).

Even if Plaintiff's allegations of infringement are correct (<u>which they are not</u>), Plaintiff has not presented any evidence that John Doe 16 observed a copyright notice on Plaintiff's website let alone ever viewed Plaintiff's website. Plaintiff has also not presented any evidence that the works allegedly downloaded by John Doe 16 contained a copyright notice or that John Doe 16 observed said copyright notice. As Justice Alito's rationale makes sense under the facts of this case, the Motion should be denied.

> **I. John Doe 16's Eighth Affirmative Defense for First Sale Doctrine.**

John Doe 16 withdraws the Eighth Affirmative Defense based upon the First Sale Doctrine.

> **J. There is a Genuine Issue of Material Fact as to whether Plaintiff has Unclean Hands. Thus, the Motion should be Denied as to John Doe 16's Tenth Affirmative Defense for Unclean Hands.**

The defense of unclean hands in a copyright infringement action is recognized when the plaintiff's transgression is of serious proportions and relates directly to the subject matter of the infringement action. *FMC Corp. v. Control Solutions, Inc.*, 369 F.Supp.2d. 539, 584 (E.D.Pa. 2005). The record evidence establishes that Plaintiff has committed transgressions against John Doe 16, numerous other anonymous defendants and this Court through its scheme of filing and

pursuing meritless infringement actions solely intended to embarrass, intimidate and coerce scores of innocent defendants into settlement. This Court should deny Plaintiff's Motion.

WHEREFORE, Defendant, John Doe 16, respectfully requests that this Honorable Court enter an Order denying Plaintiff's Motion for Summary Judgment and awarding such other relief deemed just and proper.

Respectfully submitted,

BY: /s/ Ronald A. Smith
RONALD A. SMITH, ESQUIRE
RonaldASmithEsq@aol.com
1617 John F. Kennedy Boulevard, Suite 355
Philadelphia, PA 19103
(215) 567-1200

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 29th day of May, 2013 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through CM/ECF.

BY: /s/ Ronald A. Smith
RONALD A. SMITH, ESQUIRE